ACCEPTED
13-15-00150-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
8/4/2015 5:45:39 PM
CECILE FOY GSANGER
CLERK

No. 13-15-00150-CV

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
8/4/2015 5:45:39 PM
CECILE FOY GSANGER
Clerk

## IN THE COURT OF APPEALS
## THIRTEENTH DISTRICT OF TEXAS
## CORPUS CHRISTI - EDINBERG

TRACIE MARIE SCHEFLLER F/K/A
TRACIE MARIE PARSON,                                          APPELLANT,

V

PAUL MICHAEL PARSON,                                          APPELEE.

On Appeal from the
81ST Judicial District Court of Wilson County, Texas
Trial Court. Cause No. 10-10-0579-CVW

### APPELLEE'S REPLY BRIEF

Respectfully Submitted,

Jason J. Jakob
State Bar No. 24042933
Diaz Jakob, LLC
115 E. Travis, Suite 333
San Antonio, Texas 78205
Telephone: 210-226-4500
Telecopier: 210-226-4502
Email: jjakob@diazjakob.com
*Attorneys for Paul Michael Parson, Appellee*

**ORAL ARGUMENTS REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

**Appelee's Counsel**

Jason J. Jakob
DIAZ JAKOB, LLC
115 East Travis Street, Suite 333
San Antonio, Texas 78205
(210) 226-4500
(210) 226-4502 (fax)
jjakob@diazjakob.com

**APPELEE**

Paul Michael Parson

**Appelant's Counsel**

Kirk Dockery
Donaho & Dockey, P.C.
P.O. Box 459
Floresville, Texas 78114
(830) 393-2700
(830) 393-3029 (fax)

**APPELLANT**

Tracie Marie Sheffler
f/k/a Tracie Marie Parson

# TABLE OF CONTENTS

**PAGE**

IDENTITY OF PARTIES AND COUNSEL.....................................................................-i-

TABLE OF CONTENTS...............................................................................................-ii-

INDEX OF AUTHORITIES..........................................................................................-iv-

STATEMENT OF JURISDICTION..............................................................................-vi-

ISSUES PRESENTED.................................................................................................-vii-

ABBREVATIONS & RECORD REFERENCES ........................................................-viii-

STATEMENT OF THE CASE.......................................................................................-1-

ARGUMENT AND AUTHORITIES ............................................................................-3-
    A.   Trial court did not Error in granting Appellee's Motion to Dismiss for Lack
    of Judgment........................................................................................... -3-
    B.   The Corrected Divorce Decree With DRO Was Entered Into By
    Agreement and lacks ambiguity.......................................................................-8-
    C.   The Trial Court Did Not Abuse its Discretion in Failing to Grant the Relief
    Requested By Appellant to Clarify the Valuation of Military Retirement in the
    Decree of Divorce ....................................................................... -10-
    D.   STANDARD OF REVIEW................................................................-12-

CONCLUSION............................................................................................................-13-

PRAYER......................................................................................................................-13-

CERTIFICATE OF SERVICE ...................................................................................-14-

CERTIFICATE OF COMPLIANCE ..........................................................................-14-

APPENDIX..................................................................................................................-16-

# INDEX OF AUTHORITIES

CASES                                                                                    PAGE

*Edascio, L.L.C. v. NextiraOne L.L.C.*, 264 S.W.3d 786, 796 (Tex.App.--Houston [1st
Dist.] 2008, pet. filed)................................................................-9-, -9-

*EXXCONMOBIL Corp. v. Valence Operating Co.,* 174 S.W.3d 303, 309 (Tex.App.--
Houston [1st Dist.] 2005, pet denied.
filed)................................................................-2-, -4-

*Garcia v. Alvarez,* 367 S.W.3d 784-88 (Tex. App—Houston [14th Dist.],
no pet.).)................................................................-8- 9-

*Garner v. Fidelity Bank,* N.A., 244 S.W.3d 855, 859 (Tex.App.--Dallas 2008, no pet.). -10-

*Gary E. Patterson & Associates, P.C. v. Holub,* 264 S.W.3d 180, 197 (Tex.App.--
Houston [1st Dist.] 2008, pet. denied)................................................................-10-

*Hagen v. Hagen,* 282 S.W.3d 899,907 (Tex. 2009).)................................................................,-7-,-8-

*ISG State Operations, Inc. v. National Heritage Insurance Company,* 234 S.W.3d 711,
719 (Tex.App.--Eastland 2007, pet. denied)................................................................-9-

*IAC, LTD. v. Bel Helicopter Textron Corp.,* 160 S.W.3d 191, 203 (Tex. App. —Fort
Worth 2005, no pet.)................................................................-7-

*Microsoft Corp. v. Manning,* 914 S.W.2d 602, 607 (Tex. App.— Texarkana 1995, writ
dism'd)................................................................-12-

*National Family Care Life Ins. Co. v Fletcher,* 57 S.W.3d 662, 667-668 (Tex. App.—
Beaumont 2001) (Distinguished on other grounds)................................................................-6-,-8-

*Padilla. v. La France,* 907 S.W.2d 454, 461 (Tex. 1995)................................................................-4-

*Pearson v. Fillingim,* 322 S.W.3d 361, 363 (Tex. 2011)................................................................,-7-, -9-,

*Walker v. Packer,* 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).........  -6-,-11-

STATUTES & RULES

TEX. R. CIV. P. 11......................................................................-2-,-4-

TEX. FAM. CODE. §9.007............................ .......-5-,,-7-,-8-,-9-,-10-,-11-,-13-

TEX. FAM. CODE. §9.103 ...............................................................-11-

TEX. FAM. CODE. §9.104 ..............................................................-5-,-11--

10 U.S.C. 1408............................................................ -11-,-12-

# ISSUES PRESENTED

1). The trial court did not error in granting Appellee's Motion to Dismiss for Lack of Jurisdiction.

2.) The trial court did not abuse its discretion in granting Appellee's Motion to Dismiss for Lack of Jurisdiction.

3.) The trial court ruled properly and within its discretion in dismissing the relief requested by Appellant to clarify the valuation of the military retirement in the decree of divorce and domestic relations order

## ABBREVIATIONS & RECORD REFERENCES

### Abbreviations:

Paul Michael Parson. (Appellee)....................................................Mr. Parson

Tracie Marie Sheffler (Appellant) ..............................................Mrs. Sheffler

Hon. Russell Wilson ..........................................Judge Wilson or the Trial Court

### Record References:

Cites to the Court's Record are in the form of (CR [page #]).

Cites to any document included in the Appendix attached hereto are in the form of (App. [appendix tab no.]).

No. 13-15-00150-CV

IN THE COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI - EDINBERG

TRACIE MARIE SCHEFLLER F/K/A
TRACIE MARIE PARSON,                                          APPELLANT,

V

PAUL MICHAEL PARSON,                                          APPELEE.

On Appeal from the
81ST Judicial District Court of Wilson County, Texas
Trial Court. Cause No. 10-10-0579-CVW

TO THE HONORABLE THE THRITEENTH COURT OF APPEALS:

Appellee, herein Paul Michael Parson, submits this his Reply Brief in opposition of Appellee's Brief and in support of the Trial Court's order dismissing the Appellee's Petition to Clarify the Division of Military Retirement and in support of affirming the Trial Courts dismissal for lack of jurisdiction.

STATEMENT OF THE CASE

A.    History

On or about January 6, 2015 Appelant, TRACIE MARIE (PARSON) SHEFFLER filed an Petition to Correct or Amend Domestic Relations Order for Military Retirement in district court claiming the following:

-1-

1)      Parties entered into an informal discussions, not Alternative Dispute Resolution, and Appellant purports that such Rule 11 Agreement was filed with the court (CR 92-94) (APP 1).[1] The Corrected Decree of Divorce nor the Domestic Relations Order in no manner incorporate the Rule 11 Agreement.

2)      Approximately three months later, on or about May 24, 2011, an amended Final Decree and Divorce was submitted and entered before the trial court along with a Domestic Relations Order signed by the parties and the attorneys and by the court but made retroactively effective as March 1, 2011 but signed by the court on May 24, 2011.

3)      A Motion to Modify Parent-Child Relationship was filed by Appellee on October 31, 2013 and Temporary Orders were entered on February 1, 2014. A Motion and Order granting mediation was November 18, 2014 by the trial court.

4)      After an unsuccessful mediation Appellant filed a Petition to Correct or Amend Domestic Relations Order For Military Retirement.

5)      After Respondent's January 6, 2015, pleading was filed, Petitioner filed a Petitioner's Plea to the Jurisdiction, Motion to Dismiss and Special Exceptions.

6)      On January 14, 2015 the Honorable Judge Russell Wilson granted a order re-setting the matter for arguments on Appellant (Respondent) and Appellee (Petitioner) competing motions and final trial with agreement of counsel due to a death in Appellant counsel's family to February 9, 2015.

---

[1] Note that the Rule 11 Agreement which has been produced to Appellant's Brief "It is not sufficient that a party's consent to a Rule 11 agreement may have been given at one time; consent must exist at the time that judgment is rendered. See, Exxon Corp. v. Valence Oper. Co., 174 S.W.3d 303, 309 (Tex.-App.—Houston [1st. Dist.] 2005, pet. denied).

7)    On February 9, 2015 the Honorable Judge Russell Wilson, Presiding Judge of the 218 Judicial District Court Wilson County, Texas, heard final trial on the Motion to Modify Parent-Child Relationship and partially heard arguments on the competing motions on whether the DRO should be corrected or dismissed for lack of jurisdiction, etc.

8)    After the court heard brief argument from Appellant and Appellee the court to a position that Appellant had brought no supporting documentation or case-law in support to substantiate appellant's position the court ordered that both parties legal counsel should submit a brief in support of their arguments for review.

The court sustained the motion to dismiss in favor of Appellee and against Appellee.

## ARGUMENT AND AUTHORITIES

**A. The Trial court did not Error in granting Appellee's Motion to Dismiss for Lack of Judgment.**

The trial court properly granted its dismissal of Appellant' "Respondent's Petition to Correct or Amend Domestic Relations Order". The DRO was entered into by the parties and the attorneys. Respondent counsel drafted the DRO as well as the Corrected Final Decree of Divorce and had opportunity to review and perform said calculation. Appellee's counsel points out to the court that many hand written changes were made on behalf of the parties on the Corrected Divorce Decree and that the Parties Approved

-3-

and Consented to The Corrected Decree of Divorce as to both Form and Substance. The parties entered into the agreement as noted by their signatures, both attorneys' signature and that of the court which supersedes any prior Rule 11 Agreement and is in of itself enforceable by contract made by and through the parties as not only a enforceable judgment but that of a contract of the parties. It is not sufficient that a party's consent to a Rule 11 agreement may have been given at one time; consent must exist at the time that judgment is rendered. See, *Exxon Corp. v. Valence Oper. Co.*, 174 S.W.3d 303, 309 (Tex.-App.—Houston [1st. Dist.] 2005, pet. denied).

Furthermore the Corrected Final Decree of Divorce incorporates language that dispels of an ambiguity to the meaning of the document Respondent is attempting to incorporate (a previous Rule 11 Agreement) filed prior to the First Final Decree of Divorce or that of the Corrected Final Decree of Divorce. The Corrected Final Decree of Divorce does not have merger language, does not reference or incorporate the previous Rule 11 Agreement in any manner. A Rule 11 Agreement is no longer binding and need not be reflected in the judgment if the Rule 11 Agreement has been rescinded or superseded at the time the judgment is signed. See *Padilla v. La France*, 907 S.W. 2d 454 (Tex. 1995). To interpret the Corrected Final Decree of Divorce based on incorporation by the Rule 11 Agreement would violate parole evidence rule, would not take into account the plain and unambigious language of the Corrected Final Decree of Divorce or that of the parties right of contract. Appellant relies on a defect being noticed and rejected by the DFAS when this order has not been sent to a plan administrator as is required.

-4-

Because this DRO cannot be paid directly by DFAS to the servicemember's ex-spouse who is married for less than ten (10) years. See TEX. FAM. CODE. §9.104.

Furthermore, in accordance with Tex. Fam. Code Chapter 9, titled, <u>Limitation on Power of the Court to Enforce</u>, section 007. A court may not amend or modify, amend or modify, alter, or change the division of property made or approved in the decree of divorce or annulment. To do so would alter or change the substantive division of property.

**1.      Texas Family Code § 9.007 Limitations on Power of Court to Enforce.**

Furthermore, in accordance with Tex. Fam. Code Chapter 9, titled, <u>Limitation on Power of the Court to Enforce</u>, section 007. "A court may not amend or modify, amend or modify, alter, or change the division of property made or approved in the decree of divorce or annulment". To do so would alter or change the substantive division of property. [Appendix No.1].

According to the Corrected Final Decree of Divorce, the subject of this suit, set forth:

Decree of Divorce husband is awarded:

> *All sums, whether mature or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, proceeds therefrom, and any and any other rights related to or as a result of PAUL MICHEAL PARON's service in the United States Navy, including any accrued unpaid bonuses, disability plan or benefits, Thrift Savings Plan, or other benefits*

*existing by reason of or as result of PAUL MICHAEL PARSON'S past, present, or future employment, except that portion of PAUL MICHAEL PARSON's U.S. military retirement that has been awarded in this decree to Tracie MARIE PARSON as more particularly specified in the domestic relations order signed in conjunction with this decree and incorporated verbatim in it by reference. Corrected Final Decree of Divorce, H-4, Page 23.*

In the same Corrected Final Decree of Divorce wife is awarded as follows:

*The sums, whether matured or umnatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, any other rights related to or as a result of PAUL MICHAELS PARSON's service in the United States Navy, including any accrued unpaid bonuses, disability plan or benefits, Thrift Savings Plan, or other benefits existing by reason of or as a result of PAUL MICHAEL PARSON's past, present, or future employment, except that portion of PAUL MICHAEL PARSON's U.S. military retirement that has been awarded in this decree to PAUL MICHAEL PARSON as more particularly specified in the domestic relations order signed in conjunction with this decree and incorporated herein by reference. Corrected Final Decree of Divorce, W-6, Page 24.*

The DRO was entered into by the parties and the attorneys. It is important to point out that Appellant's very legal counsel drafted the DRO as well as the Final Decree of Divorce and Corrected Final Decree of divorce and had opportunity to review and perform said calculation. Appellee's counsel points out to the court order had many hand written changes were made on behalf of the parties, superseding any Rule 11, Agreement, the parties entered into the agreement in the DRO and Corrected Decree of Divorce as noted by their signatures, both attorney's signature and that of the court. The Final Decree of Divorce incorporates language which dispels of any ambiguity to the meaning of the document Appellant is attempting to incorporate a previous to the Final Decree of Divorce Rule 11Agreement to interpret the meaning of the Rule II Agreement which is

barred by the parole evidence rule. Furthermore, in accordance with Texas Family Code, chapter 9, titled, Limitation on Power of the Court to Enforce, section 007 states as follows:

(a)    A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. An order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property.

(b)    An order under this section that anlends, modifies, alters or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable.

(c)    The power of the court to render further orders to assist m the implementation of or to clarify the property division is abated while an appellate proceeding is pending.

In _Pearson v. Fillingim_, The Texas Supreme Court held  " [T]he court that renders a divorce decree retains jurisdiction to clarify and enforce the property division within that decree.  If a decree is ambiguous, that court can enter a clarification order.  [But an unambiguous judgment finalizing a divorce and dividing marital property bar re-litigation of the property division, even if the decree incorrectly characterizes or divides the property." See, Pearson v. Fillingim, 322 S.W.3d 361, 363 (Tex. 2011). Moreover, in a Hagen v. Hagen. the Texas Supreme Court holds:

"In the case before us, the [couple's] original divorce decree did not award [W] amounts 'calculated on' [H's]  gross or even total retirement pay before deductions ... The [couples] decree plainly entitled [WJ only to part of the Army or military retirement pay [H] received,  if as, and when he received it. [S]uch military retirement pay did not include VA disability benefits [that H elected to receive post-divorce in lieu of retirement pay. The trail court did not modify

the [couples] decree; it only clarified the decree did not divide VA disability pay that was or might not become payable to [H] On the surface, it appears that [H's] post-divorce election to receive VA ben fits has worked an inequity on [W]. But the language used in divorce decrees is important, and we must presume the divorce court chose it carefully. See, *Hagen v. Hagen*, 282 S.W.3d 899,907 (Tex. 2009).

## B.   The Corrected Divorce Decree with DRO was entered into by agreement of the parties and lacks ambiguity.

When a divorce decree is a consent decree or agreed judgment and the court may

not amend modify, alter or change the decree of divorce. See TEX. FAM. CODE §9.007(a).

In *Garcia v. Alvarez*, 367 S.W.3d 784-88 (Tex. App—Houston [14th Dist.], no pet.).

"Agree divisions of marital property contained or incorporated into final divorce decrees

are treated as contracts and their legal force and meaning are governed by the law of

contracts". Here the parties have entered into an agreement as is evidenced by their

individual signatures. The divorce further has language that subjects the property award

verbatim by that of Domestic Relations Order which specifically enumerates the

percentage to be utilized. (CR 79-84) (Appendix No. 1).

The language specifically states:

According to the documents, the subject of this suit, set forth in the Corrected

Final Decree of Divorce husband is awarded:

*All sums, whether mature or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, proceeds therefrom, and any and any other rights related to or as a result of PAUL MICHEAL PARON's service in the United States Navy, including any accrued unpaid bonuses, disability plan or benefits, Thrift Savings Plan, or other benefits existing by reason of or as result of PAUL MICHAEL PARSON'S past,*

*present, or future employment, except that portion of PAUL MICHAEL PARSON's U.S. military retirement that has been awarded in this decree to Tracie MARIE PARSON as more particularly specified in the domestic relations order signed in conjunction with this decree and incorporated verbatim in it by reference. Corrected Final Decree of Divorce, H-4, Page 23.*

In the same Corrected Final Decree of Divorce wife is awarded as follows:

*The sums, whether matured or umnatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, any other rights related to or as a result of PAUL MICHAELS PARSON's service in the United States Navy, including any accrued unpaid bonuses, disability plan or benefits, Thrift Savings Plan, or other benefits existing by reason of or as a result of PAUL MICHAEL PARSON's past, present, or future employment, except that portion of PAUL MICHAEL PARSON's U.S. military retirement that has been awarded in this decree to PAUL MICHAEL PARSON as more particularly specified in the domestic relations order signed in conjunction with this decree and incorporated herein by reference. Corrected Final Decree of Divorce, W-6, Page 24.*

When the parties have concluded a valid, integrated agreement, the parol evidence rule precludes enforcement of a prior or contemporaneous inconsistent agreement. *Edascio, L.L.C. v. NextiraOne L.L.C.*, 264 S.W.3d 786, 796 (Tex.App.--Houston [1st Dist.] 2008, pet. filed); *ISG State Operations, Inc. v. National Heritage Insurance Company*, 234 S.W.3d 711, 719 (Tex.App.--Eastland 2007, pet. denied). The execution of a written contract presumes that all prior negotiations and agreements relating to the transaction have been merged into the written contract. *Edascio*, 264 S.W.3d at 796; ISG State Operations, 234 S.W.3d at 719. Consequently, the agreement will be enforced as written and cannot be added to, varied, or contradicted by parol evidence. *Edascio*, 264 S.W.3d at 796; ISG State Operations, 234 S.W.3d at 719. The parol evidence rule is particularly applicable when the written contract contains a recital that it contains the entire

agreement between the parties or a similarly-worded merger provision. *Edascio,* 264 S.W.3d at 796. Evidence that violates the rule is incompetent and without probative force, and cannot properly be given legal effect. *Garner v. Fidelity Bank,* N.A., 244 S.W.3d 855, 859 (Tex.App.--Dallas 2008, no pet.). Parol evidence may be admissible to show collateral, contemporaneous agreements that are consistent with the underlying agreement. *Gary E. Patterson & Associates, P.C. v. Holub,* 264 S.W.3d 180, 197 (Tex.App.--Houston [1st Dist.] 2008, pet. denied); *DeClaire,* 260 S.W.3d at 45. But this exception does not permit parol evidence that varies or contradicts either the express terms or the implied terms of the written agreement. *Gary E. Patterson,* 264 S.W.3d at 197; *DeClaire,* 260 S.W.3d at 45. These terms are expressed in the Corrected Divorce Decree. What Respondent is attempting to assert is the court violate the parol evidence rule and incorporate a prior and inconsistent Rule 11 Agreement to interpret the express language not to clarify but alter the division of property in and of itself.

If Appellant was allowed to recreate a DRO and Decree it would not only deprive Appellee's of the right of contract but also violate the parol evidence rule and offend elements and consistency in the rule of contract laws, and the Texas Family Code.


**C.    The Trial Court Did Not Abuse Its Discretion In Failing To Grant The Relief Requested By Appellant To Clarify The Valuation Of Military Retirement In The Decree Of Divorce And The Domestic Relations Order**


Because there previously has been a DRO entered in this case the Texas Family Code restricts when a DRO may be clarified and challenged to either correct the order or

clarify the order. See, TEX. FAM. CODE §9.103-104. Thereby, the DRO is this matter set forth has not been found defective in acceptance from a plan administrator. The law as cited states:

> *If a plan administrator or other person acting in an equivalent capacity determines that a domestic relations order does not satisfy the requirements of a qualified domestic relations order od similar order, the court retains jurisdiction over the parties and their property to the extent necessary to render a qualified domestic relations order See, TEX. FAM. CODE 104.*

This DRO has never been found defective by a plan administrator therefore how can it be found defective. The Department of Finance has given clear guidance on Acceptable DROs in GUIDANCE ON DIVIDING MILITARY RETIRED PAY GARNISHMENT OPERATIONS DEFENSE FINANCE AND ACCOUNTING SERVICE (DFAS) Attached and incorporated herein as "CR 79 –[Appendix No. 3]".

As is stated "The amount of a former spouse's award is entirely a matter of state law. However, in order for the award to be enforceable under the USFSPA, it must be expressed in a manner consistent with the USFSPA, and we must be able to determine the amount of the award. The USFSPA states that for a retired pay as property award to be enforceable, it must be expressed either as a fixed dollar amount or as a percentage of disposable retired pay". Citing 10 U.S.C. §1408(a)(2)(C). at page 8. Further the manual states "There is no magic language required to express a percentage or fixed dollar award" pg. 9. The guidance further goes on to demonstrate a myriad of ways to divide retirement pay unlike what is asserted in Respondent's Petition to Correct or Amend Domestic Relations Order for Military Retirement.

-11-

The Texas Family Practices Manual Form 25-31, attached and incorporated herein by reference [Appendix No. 3] provides several manners in which to divide military retirement. Respondent's assertion that there is only one manner is erroneous.

Furthermore, the Appellant does not qualify for direct payments and the QDRO cannot be tendered to DFAS for direct payment. For a division of retired pay as property award to be enforceable by direct payments under the USFSPA, the former spouse must have been married to the member for a period of 10 years or more during which the member performed at least 10 years of service creditable towards retirement eligibility.14 This requirement does not apply to the Court's authority to divide military retired pay, but only to the ability of the former spouse to enforce the award by direct payments from DFAS. This is a statutory requirement for direct payments, and not a personal right of the member that can be waived. See citation provided in military guidance at pg. 5, citing 10 U.S.C. § 1408(d)(2).The QDRO therefore is not defective and to change it for a percentage purpose would constitute a re-division of already divided property.

## D.    Standard of Review

A trial court abuses its discretion if it fails to properly apply the law to the undisputed facts, acts arbitrarily or unreasonably, or when its ruling is based on factual assertions unsupported by the record. *Microsoft Corp* v. *Manning,* 914 S.W.2d 602, 607 (Tex. App.-Texarkana 1995, writ dism'd). A trial court's application of legal principles is reviewed for an abuse of discretion separately from its resolution of factual disputes. *Walker v. Packer,* 827 S.W.2d 833, 839-840 (Tex.1992). The Trial Court has no

discretion to misinterpret or misapply the law. *Walker*, 827 S.W.2d at 840. Here the court gave Appellant every attempt to come to court and present its evidence and arguments the court based off that evidence given at time of argument and brief.

## CONCLUSION

To cause a change in an Agreed Corrected Decree of Divorce which language in unambiguous and specific language is utilized to incorporate the DRO "verbatim" into the decree would be a re-division of community property which is not permissible under the law. If the Appellate Court ruling rules in favor of Appellant's assertions that a new DRO the Petitioner would not only be deprived of the right of contract but also violate the parol evidence rule and offend elements and consistency in the rule of contract laws, and the Texas Family Code.

## PRAYER

Appellee, Paul Michael Parson prays that this affirm the ruling of the trail court; and for other and further relief as this Honorable Court deems fit and good.

Respectfully submitted,

Diaz*Jakob, LLC
The Historic Milam Building
115 E. Travis Street, Suite 333
San Antonio, Texas 78205
(210) 226-4500
(210) 226-4502 facsimile
Attorney for Petitioner Paul Michael Parson

-13-

By: _____

         JASON J. JAKOB
         State Bar No. 24042933
         Email: jjakob@diazjakob.com

## CERTIFICATE OF SERVICE

I do hereby certify that the foregoing document has been forwarded in accordance with the Texas Rules of Civil Procedure to all counsel of record as set out below, on this the 4th day of August, 2015 to:

The Law Offices of               VIA Email: kirkdockery@gmail.com
DONAHO & DOCKERY P.C.
Kirk Dockery, Esq.
P.O. Box 459
Floresville, Texas 78114
Telephone: (830) 393-2700
Telecopier: (830) 393-3029

_____
JASON J. JAKOB, ESQ.

## CERTIFICATE OF COMPLIANCE

I do hereby certify that the foregoing reply brief complies with the length limitations of TEX. R. App. P 9.4(i)(2)(B) as this brief consists of 3,677 words excluding the parts of the brief exempted by Tex. R. App. P. 9.4.i(1).

_____
JASON J. JAKOB, ESQ.

## APPENDIX TO BRIEF

This Appendix contains the following:

1.  Copy of Corrected Final Decree with DRO (Appendix No. 1)
2.  Copy of Texas Practices Manual Form 25-31(Appendix No. 2)
3.  Copy of Guidance On Dividing Military Retired Pay (Appendix No.3)
4.  A copy of Texas Rule of Civ. Procedure 11;
5.  A copy of Texas Family Code § 9.007;
6.  A copy of Texas Family Code § 9.103;
7.  A copy of Texas Family Code § 9.104;
8.  A copy of 10 USC §1408

In addition, Petitioner relies on the reporter's record taken in this matter.

-15-

# APPENDIX NO. 1



THE HISTORIC MILAM BUILDING
115 East Travis Street, Suite 333
San Antonio, Texas 78205
PHONE: 210-226-4500
FAX: 210-226-4502

NO. 10-10-0579-CVW

| | | |
|---|---|---|
| IN THE MATTER OF THE MARRIAGE OF | § § | IN THE DISTRICT COURT |
| TRACIE MARIE PARSON AND PAUL MICHAEL PARSON | § § § § § | 81ST JUDICIAL DISTRICT |
| AND IN THE INTEREST OF FALIN GALE PARSON AND ROGAN DOW PARSON, CHILDREN | § § § § | WILSON COUNTY, TEXAS |

## CORRECTED FINAL DECREE OF DIVORCE

On February 3, 2011 the Court heard this case.

*Appearances*

Petitioner, TRACIE MARIE PARSON, appeared in person and through attorney of record, Kirk Dockery, and announced ready for trial.

Respondent, PAUL MICHAEL PARSON, appeared in person and through attorney of record, Dawn M. Laubach, and announced ready for trial.

*Record*

The record of testimony was duly reported by the court reporter for the 81st Judicial District Court.

*Jurisdiction and Domicile*

The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed.

The Court further finds that, at the time this suit was filed, Petitioner had been a domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit was filed for the preceding ninety-day period. All persons entitled to citation were properly cited.

*Jury*

A jury was waived, and questions of fact and of law were submitted to the Court.

*Divorce*

IT IS ORDERED AND DECREED that TRACIE MARIE PARSON, Petitioner, and PAUL MICHAEL PARSON, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.

*Children of the Marriage*

The Court finds that Petitioner and Respondent are the parents of the following children:

Name: FALIN GALE PARSON
Sex: Female
Birth date: October 12, 2006
Home state: Texas
Social Security number: 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

Name: ROGAN DOW PARSON
Sex: Male
Birth date: January 15, 2009
Home state: Texas
Social Security number: 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

The Court finds no other children of the marriage are expected.

*Parenting Plan*

The Court finds that the provisions in this decree relating to the rights and duties of the parties with relation to the children, possession of and access to the children, child support, and optimizing the development of a close and continuing relationship between each party and the children constitute the parenting plan established by the Court.

*Conservatorship*

The Court, having considered the circumstances of the parents and of the children, finds that the following orders are in the best interest of the children.

IT IS ORDERED that TRACIE MARIE PARSON and PAUL MICHAEL PARSON are appointed Joint Managing Conservators of the following children: FALIN GALE PARSON and ROGAN DOW PARSON.

IT IS ORDERED that, at all times, TRACIE MARIE PARSON, as a parent joint managing conservator, shall have the following rights:

1.      the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

2.      the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

3.      the right of access to medical, dental, psychological, and educational records of the children;

4.      the right to consult with a physician, dentist, or psychologist of the children;

5.      the right to consult with school officials concerning the children's welfare and educational status, including school activities;

6.      the right to attend school activities;

7.      the right to be designated on the children's records as a person to be notified in case of an emergency; *Listed as father; not emergency contact*.

8.      the right to consent to medical, dental, and surgical treatment during an emergency

involving an immediate danger to the health and safety of the children; and

9. the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

IT IS ORDERED that, at all times, PAUL MICHAEL PARSON, as a parent joint managing conservator, shall have the following rights:

1. the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children; *and all extra-curricular activities* ,

2. the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

3. the right of access to medical, dental, psychological, and educational records of the children;

4. the right to consult with a physician, dentist, or psychologist of the children;

5. the right to consult with school officials concerning the children's welfare and educational status, including school activities;

6. the right to attend school activities;

7. the right to be designated on the children's records as a person to be notified in case of an emergency; *list as father; not emergency contact.*

8. the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

9. the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

IT IS ORDERED that, at all times, TRACIE MARIE PARSON and PAUL MICHAEL PARSON, as parent joint managing conservators, shall each have the following duties:

1. the duty to inform the other conservator of the children in a timely manner of significant information concerning the health, education, and welfare of the children; and

2. the duty to inform the other conservator of the children if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under Chapter 62 of the Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. IT IS ORDERED that this information shall be tendered in the form of a notice made as soon as practicable, but not later than the fortieth day after the date the conservator of the children begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. IT IS ORDERED that the notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE.

IT IS ORDERED that, during her periods of possession, TRACIE MARIE PARSON, as parent joint managing conservator, shall have the following rights and duties:

1. the duty of care, control, protection, and reasonable discipline of the children;

2. the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3. the right to consent for the children to medical and dental care not involving an invasive procedure; and

4. the right to direct the moral and religious training of the children.

IT IS ORDERED that, during his periods of possession, PAUL MICHAEL PARSON, as parent joint managing conservator, shall have the following rights and duties:

1. the duty of care, control, protection, and reasonable discipline of the children;

2. the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3. the right to consent for the children to medical and dental care not involving an invasive procedure; and

4. the right to direct the moral and religious training of the children.

IT IS ORDERED that TRACIE MARIE PARSON, as a parent joint managing conservator, shall have the following rights and duty:

1. the exclusive right to designate the primary residence of the children without regard to geographic location; *geographical restriction*/

2. the right, subject to the agreement of the other parent conservator, to consent to medical, dental, and surgical treatment involving invasive procedures;

3. the right, subject to the agreement of the other parent conservator, to consent to psychiatric and psychological treatment of the children;

4. the exclusive right to receive and give receipt for periodic payments for the support of the children and to hold or disburse these funds for the benefit of the children;

5. the right, subject to the agreement of the other parent conservator, to represent the children in legal action and to make other decisions of substantial legal significance concerning the children;

6. the right, subject to the agreement of the other parent conservator, to consent to marriage and to enlistment in the armed forces of the United States;

7. the right, subject to the agreement of the other parent conservator, to make decisions concerning the children's education;

8. except as provided by Section 264.0111 of the Texas Family Code, the independent right to the services and earnings of the children;

9. except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, the exclusive right to act as an agent of the children in relation to

the children's estates if the children's action is required by a state, the United States, or a foreign government; and

      10.    the exclusive duty to manage the estates of the children to the extent the estates have been created by community property or the joint property of the parent.

IT IS ORDERED that PAUL MICHAEL PARSON, as a parent joint managing conservator, shall have the following rights and duty:

      1.    the right, subject to the agreement of the other parent conservator, to consent to medical, dental, and surgical treatment involving invasive procedures;

      2.    the right, subject to the agreement of the other parent conservator, to consent to psychiatric and psychological treatment of the children;

      3.    the right, subject to the agreement of the other parent conservator, to represent the children in legal action and to make other decisions of substantial legal significance concerning the children;

      4.    the right, subject to the agreement of the other parent conservator, to consent to marriage and to enlistment in the armed forces of the United States;

      5.    the right, subject to the agreement of the other parent conservator, to make decisions concerning the children's education; and

      6.    except as provided by Section 264.0111 of the Texas Family Code, the independent right to the services and earnings of the children.

IT IS ORDERED that the following custodial account now held by the parties for the parties' children is placed under the sole and exclusive control of TRACIE MARIE PARSON, as Trustee, for the children, FALIN GALE PARSON and ROGAN DOW PARSON: Navy Federal Credit Union CD Account number 680001223915. PAUL MICHAEL PARSON is ORDERED to execute, have acknowledged, and deliver to TRACIE MARIE PARSON all documents necessary to effectuate TRACIE MARIE PARSON's sole and exclusive control of the account.

IT IS ORDERED that the following property now held by the parties for the parties' children is placed under the sole and exclusive control of TRACIE MARIE PARSON: Navy Federal Credit Union CD.

IT IS ORDERED that TRACIE MARIE PARSON shall have the exclusive right and duty to prepare and file income tax returns for the estates of FALIN GALE PARSON and ROGAN DOW PARSON. *She claims one child you claim one.*

IT IS ORDERED that PAUL MICHAEL PARSON shall furnish such information to TRACIE MARIE PARSON as is requested to prepare federal income tax returns for the children's estates within thirty days of receipt of a written request for the information, and in no event shall the information be furnished later than March 1 of that year. As requested information becomes available after that date, it shall be furnished within ten days of receipt.

*Possession and Access*

    1.    *Standard Possession Order*

IT IS ORDERED that each conservator shall comply with all terms and conditions of this Standard Possession Order. IT IS ORDERED that this Standard Possession Order is effective immediately and applies to all periods of possession occurring on and after the date the Court signs this Standard Possession Order. IT IS, THEREFORE, ORDERED:

(a)    Definitions

1.    In this Standard Possession Order "school" means the primary or secondary school in which the child is enrolled or, if the child is not enrolled in a primary or secondary school, the public school district in which the child primarily resides.

2.    In this Standard Possession Order "child" includes each child, whether one or more, who is a subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

(b)    Mutual Agreement or Specified Terms for Possession

IT IS ORDERED that the conservators shall have possession of the child at times mutually agreed to in advance by the parties, and, in the absence of mutual agreement, it is ORDERED that the conservators shall have possession of the child under the specified terms set out in this Standard Possession Order.

(c)    Parents Who Reside 100 Miles or Less Apart

Except as otherwise expressly provided in this Standard Possession Order, when PAUL MICHAEL PARSON resides 100 miles or less from the primary residence of the child, PAUL MICHAEL PARSON shall have the right to possession of the child as follows:

1.    Weekends -

*[handwritten: after school]* On weekends that occur during the regular school term, beginning at ~~6:00 p.m.,~~ on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday.

*[handwritten: after school]* On weekends that do not occur during the regular school term, beginning at ~~6:00 p.m.,~~ on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday.

2.    Weekend Possession Extended by a Holiday -

Except as otherwise expressly provided in this Standard Possession Order, if a weekend period of possession by PAUL MICHAEL PARSON begins on a student holiday or a teacher in-service day that falls on a Friday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday that falls on a Friday during the summer months when school is not in session, that weekend period of possession shall begin at ~~6:00 p.m.~~ on the immediately preceding Thursday. *[handwritten: 8:00 after school]*

Except as otherwise expressly provided in this Standard Possession Order, if a weekend period of possession by PAUL MICHAEL PARSON ends on or is immediately followed by a student holiday or a teacher in-service day that falls on a Monday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday that falls on a Monday during the summer months when school is not in session, that weekend period of possession shall end at ~~6:00 p.m.~~ on that Monday.

*8:00 pm*

3. Thursdays - On Thursday of each week during the regular school term, beginning at ~~6:00 p.m.~~ and ending at 8:00 p.m. PAUL MICHAEL PARSON must give TRACIE MARIE PARSON seven days written notice of any overnight stays ~~if prior to his weekend possession~~. *any Thursday*.

*After School*

4. Spring Vacation in Even-Numbered Years - In even-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at ~~6:00 p.m.~~ on the day before school resumes after that vacation. *8:00 pm*

5. Extended Summer Possession by PAUL MICHAEL PARSON -

With Written Notice by ~~April 1~~ *February 1* - If PAUL MICHAEL PARSON gives TRACIE MARIE PARSON written notice by April 1 of a year specifying an ~~extended period or periods of summer possession~~ for that year, PAUL MICHAEL PARSON shall have possession of the child for ~~thirty days~~ beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, with each period of possession beginning and ending at 6:00 p.m on each applicable day, as specified in the written notice. These periods of possession shall ~~begin and end at 6:00~~ p.m. on each applicable day. *8pm* *8:00 pm*

*half the summer*

Without Written Notice by April 1 - If PAUL MICHAEL PARSON does not give TRACIE MARIE PARSON written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, PAUL MICHAEL PARSON shall have possession of the child for thirty consecutive days in that year beginning at 6:00 p.m. on July 1 and ending at 6:00 p.m. on July 31.

Notwithstanding the Thursday periods of possession during the regular school term and the weekend periods of possession ORDERED for PAUL MICHAEL PARSON, it is expressly ORDERED that TRACIE MARIE PARSON shall have a superior right of possession of the child as follows:

1. Spring Vacation in Odd-Numbered Years - In odd-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

*Will always give notice*
*Get 39 days total taken in 3 increments*
*no more weekends*
*Remove*

2. Summer Weekend Possession by TRACIE MARIE PARSON - If TRACIE MARIE PARSON gives PAUL MICHAEL PARSON written notice by April 15 of a year, TRACIE MARIE PARSON shall have possession of the child on any one weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on the following Sunday during any one period of the extended summer possession by PAUL MICHAEL PARSON in that year, provided that TRACIE MARIE PARSON

picks up the child from PAUL MICHAEL PARSON and returns the child to that same place and that the weekend so designated does not interfere with Father's Day possession.

3. Extended Summer Possession by TRACIE MARIE PARSON - If TRACIE MARIE PARSON gives PAUL MICHAEL PARSON written notice by April 15 of a year or gives PAUL MICHAEL PARSON fourteen days' written notice on or after April 16 of a year, TRACIE MARIE PARSON may designate one weekend beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation, during which an otherwise scheduled weekend period of possession by PAUL MICHAEL PARSON shall not take place in that year, provided that the weekend so designated does not interfere with PAUL MICHAEL PARSON's period or periods of extended summer possession or with Father's Day possession.

(d) Parents Who Reside More Than 100 Miles Apart - Same

Except as otherwise expressly provided in this Standard Possession Order, when PAUL MICHAEL PARSON resides more than 100 miles from the residence of the child, PAUL MICHAEL PARSON shall have the right to possession of the child as follows:

1. Weekends - Unless PAUL MICHAEL PARSON elects the alternative period of weekend possession described in the next paragraph, PAUL MICHAEL PARSON shall have the right to possession of the child on weekends that occur during the regular school term, beginning at 6:00 p.m., on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday, and on weekends that do not occur during the regular school term, beginning at 6:00 p.m. on the first, third and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday.

Alternate Weekend Possession - In lieu of the weekend possession described in the foregoing paragraph, PAUL MICHAEL PARSON shall have the right to possession of the child not more than one weekend per month of PAUL MICHAEL PARSON's choice beginning at 6:00 p.m. on the day school recesses for the weekend and ending at 6:00 p.m. on the day before school resumes after the weekend. PAUL MICHAEL PARSON may elect an option for this alternative period of weekend possession by giving written notice to TRACIE MARIE PARSON within ninety days after the parties begin to reside more than 100 miles apart. If PAUL MICHAEL PARSON makes this election, PAUL MICHAEL PARSON shall give TRACIE MARIE PARSON fourteen days' written or telephonic notice preceding a designated weekend. The weekends chosen shall not conflict with the provisions regarding Christmas, Thanksgiving, the child's birthday, and Mother's Day possession below.

2. Weekend Possession Extended by a Holiday -

Except as otherwise expressly provided in this Standard Possession Order, if a weekend period of possession by PAUL MICHAEL PARSON begins on a student holiday or a teacher in-service day that falls on a Friday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday during the summer months when school is not in session, that weekend period of possession shall begin at 6:00 p.m. on the immediately preceding

Thursday

Except as otherwise expressly provided in this Standard Possession Order, if a weekend period of possession by PAUL MICHAEL PARSON ends on or is immediately followed by a student holiday or a teacher in-service day that falls on a Monday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday that falls on a Monday during the summer months when school is not in session, that weekend period of possession shall end at 6:00 p.m. on that Monday.

3.  Spring Vacation in All Years - Every year, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

4.  Extended Summer Possession by PAUL MICHAEL PARSON -

With Written Notice by April 1 - If PAUL MICHAEL PARSON gives TRACIE MARIE PARSON written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, PAUL MICHAEL PARSON shall have possession of the child for forty-two days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, with each period of possession beginning and ending at 6:00 p.m. on each applicable day, as specified in the written notice. These periods of possession shall begin and end at 6:00 p.m. on each applicable day.

*[handwritten margin note: Keep all else the same]*

Without Written Notice by April 1 - If PAUL MICHAEL PARSON does not give TRACIE MARIE PARSON written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, PAUL MICHAEL PARSON shall have possession of the child for forty-two consecutive days beginning at 6:00 p.m. on June 15 and ending at 6:00 p.m. on July 27 of that year.

Notwithstanding the weekend periods of possession ORDERED for PAUL MICHAEL PARSON, it is expressly ORDERED that TRACIE MARIE PARSON shall have a superior right of possession of the child as follows:

1.  Summer Weekend Possession by TRACIE MARIE PARSON - If TRACIE MARIE PARSON gives PAUL MICHAEL PARSON written notice by April 15 of a year, TRACIE MARIE PARSON shall have possession of the child on any one weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on the following Sunday during any one period of possession by PAUL MICHAEL PARSON during PAUL MICHAEL PARSON's extended summer possession in that year, provided that if a period of possession by PAUL MICHAEL PARSON in that year exceeds thirty days, TRACIE MARIE PARSON may have possession of the child under the terms of this provision on any two nonconsecutive weekends during that period and provided that TRACIE MARIE PARSON picks up the child from PAUL MICHAEL PARSON and returns the child to that same place and that the weekend so designated does not interfere with Father's Day possession.

2.  Extended Summer Possession by TRACIE MARIE PARSON - If TRACIE MARIE PARSON gives PAUL MICHAEL PARSON written notice by April 15 of a year, TRACIE MARIE PARSON may designate twenty-one days

beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, during which PAUL MICHAEL PARSON shall not have possession of the child, provided that the period or periods so designated do not interfere with PAUL MICHAEL PARSON's period or periods of extended summer possession or with Father's Day possession. These periods of possession shall begin and end at 6:00 p.m. on each applicable day.

(e)     Holidays Unaffected by Distance

Notwithstanding the weekend and Thursday periods of possession of PAUL MICHAEL PARSON, TRACIE MARIE PARSON and PAUL MICHAEL PARSON shall have the right to possession of the child as follows:

1.     Christmas Holidays in Even-Numbered Years - In even-numbered years, PAUL MICHAEL PARSON shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the ~~December 27~~ Christmas school vacation and ending at noon on ~~December 28,~~ and TRACIE MARIE PARSON shall have the right to possession of the child beginning at noon on December 28 and ending at ~~6:00 p.m. on the day before~~ school resumes after that Christmas school vacation. *8:00 pm 2 days before*

2.     Christmas Holidays in Odd-Numbered Years - In odd-numbered years, TRACIE MARIE PARSON shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on ~~December 28, and PAUL MICHAEL PARSON shall~~ *December 27* have the right to possession of the child beginning at noon on December 28 and ending at ~~6:00 p.m.~~ on ~~the day before~~ school resumes after that Christmas school vacation. *8:00 pm    2 days before*

3.     Thanksgiving in Odd-Numbered Years - In odd-numbered years, PAUL MICHAEL PARSON shall have the right to possession of the child beginning ~~at 6:00 p.m.~~ on the day the child is dismissed from school for the Thanksgiving holiday and ending ~~at 6:00 p.m.~~ on the Sunday following Thanksgiving. *after school* *8:00 pm*

4.     Thanksgiving in Even-Numbered Years - In even-numbered years, TRACIE MARIE PARSON shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

5.     Child's Birthday - If a parent is not otherwise entitled under this Standard Possession Order to present possession of a child on the child's birthday, that parent shall have possession of the child and the child's minor siblings beginning ~~at 6:00 p.m.~~ and ending at 8:00 p.m. on that day, provided that that parent picks up the children from the other parent's residence and returns the children ~~to that same place.~~ *halfway* *after school*

6.     Father's Day - PAUL MICHAEL PARSON shall have the right to possession of the child each year, beginning at 6:00 p.m. on the Friday preceding Father's Day and ending at 6:00 p.m. on Father's Day, provided that if PAUL MICHAEL PARSON is not otherwise entitled under this Standard Possession Order to present possession of the child, he shall pick up the child from TRACIE MARIE

PARSON's residence and return the child to that same place.

7. Mother's Day – TRACIE MARIE PARSON shall have the right to possession of the child each year, beginning at 6:00 p.m. on the Friday preceding Mother's Day and ending at 6:00 p.m. on Mother's Day, provided that if TRACIE MARIE PARSON is not otherwise entitled under this Standard Possession Order to present possession of the child, she shall pick up the child from PAUL MICHAEL PARSON's residence and return the child to that same place.

(f) Undesignated Periods of Possession

TRACIE MARIE PARSON shall have the right of possession of the child at all other times not specifically designated in this Standard Possession Order for PAUL MICHAEL PARSON.

(g) General Terms and Conditions

Except as otherwise expressly provided in this Standard Possession Order, the terms and conditions of possession of the child that apply regardless of the distance between the residence of a parent and the child are as follows:

1. The parties shall by mutual agreement in writing designate a location for the exchanges of possession at the end of each period of possession which is approximately one-half the distance between the residences of the parties. The designated location shall be redetermined each time one of the parties gives notice of a change of residential address.

2. Surrender of Child by TRACIE MARIE PARSON – TRACIE MARIE PARSON is ORDERED to surrender the child to PAUL MICHAEL PARSON at the beginning of each period of PAUL MICHAEL PARSON's possession at residence of TRACIE MARIE PARSON.

3. Return of Child by PAUL MICHAEL PARSON – PAUL MICHAEL PARSON is ORDERED to return the child to the place designated by mutual agreement of the parties at the end of each period of possession.

4. Surrender of Child by PAUL MICHAEL PARSON – PAUL MICHAEL PARSON is ORDERED to surrender the child to TRACIE MARIE PARSON, if the child is in PAUL MICHAEL PARSON's possession or subject to PAUL MICHAEL PARSON's control, at the beginning of each period of TRACIE MARIE PARSON's exclusive periods of possession, at the place designated in this Standard Possession Order.

5. Return of Child by TRACIE MARIE PARSON – TRACIE MARIE PARSON is ORDERED to return the child to PAUL MICHAEL PARSON, if PAUL MICHAEL PARSON is entitled to possession of the child, at the end of each of TRACIE MARIE PARSON's exclusive periods of possession, at the place designated in this Standard Possession Order.

6. Personal Effects – Each conservator is ORDERED to return with the child the personal effects that the child brought at the beginning of the period of possession.

7.     Designation of Competent Adult - Each conservator may designate any competent adult to pick up and return the child, as applicable. IT IS ORDERED that a conservator or a designated competent adult be present when the child is picked up or returned. *List Brandi*

8.     Inability to Exercise Possession - Each conservator is ORDERED to give notice to the person in possession of the child on each occasion that the conservator will be unable to exercise that conservator's right of possession for any specified period.

9.     Written Notice - Written notice shall be deemed to have been timely made if received or postmarked before or at the time that notice is due.

10.     Military Clause - If PAUL MICHAEL PARSON misses a weekend period of possession due to active military duty then the missed weekend shall be made up on the next available weekend, provided that PAUL MICHAEL PARSON gives TRACIE MARIE PARSON 30 days notice supported by documentation; provided further that if TRACIE MARIE PARSON has made prior plans for the following weekend, then the parties shall work together to determine an available period for a make-up period of weekend possession. *make up thursdays as well*

11.     Right of First Refusal During Summer Months Only - If PAUL MICHAEL PARSON needs to have daycare for the children for more than 4 hours a day, PAUL MICHAEL PARSON will allow TRACIE MARIE PARSON to have possession of the children. Both parties will meet ½ way at the designated drop off and pick up location in this standard possession order.

*Remove*

This concludes the Standard Possession Order.

2.     *Duration*

The periods of possession ordered above apply to each child the subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

3.     *Noninterference with Possession*

IT IS ORDERED that neither conservator shall take possession of the children during the other conservator's period of possession unless there is a prior written agreement signed by both conservators or in case of an emergency.

4.     *Termination of Orders*

The provisions of this decree relating to conservatorship, possession, or access terminate on the remarriage of TRACIE MARIE PARSON to PAUL MICHAEL PARSON unless a nonparent or agency has been appointed conservator of the children under Chapter 153 of the Texas Family Code.

*Child Support*

IT IS ORDERED that PAUL MICHAEL PARSON is obligated to pay and shall pay to TRACIE MARIE PARSON child support of $1,150.00 per month, with the first payment being due and payable on March 1, 2011 and a like payment being due and payable on the 1st day of each

month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

1. any child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;

2. any child marries;

3. any child dies;

4. the child enlists in the armed forces of the United States and begins active service as defined by Section 101 of Title 10 of the United States Code; or

5. any child's disabilities are otherwise removed for general purposes.

Thereafter, PAUL MICHAEL PARSON is ORDERED to pay to TRACIE MARIE PARSON child support of $920.00 per month, due and payable on the 1st day of the first month immediately following the date of the earliest occurrence of one of the events specified above for the other child and a like sum of $920.00 due and payable on the 1st day of each month thereafter until the next occurrence of one of the events specified above for the other child.

If the child is eighteen years of age and has not graduated from high school, IT IS ORDERED that PAUL MICHAEL PARSON's obligation to pay child support to TRACIE MARIE PARSON shall not terminate but shall continue for as long as the child is enrolled-

1. under Chapter 25 of the Texas Education Code in an accredited secondary school in a program leading toward a high school diploma or under Section 130.008 of the Education Code in courses for joint high school and junior college credit and is complying with the minimum attendance requirements of Subchapter C of Chapter 25 of the Education Code or

2. on a full-time basis in a private secondary school in a program leading toward a high school diploma and is complying with the minimum attendance requirements imposed by that school.

Statement on Guidelines

In accordance with Texas Family Code Section 154.130, the Court makes the following findings and conclusions regarding the child support order made in open court in this case on February 3, 2011:

1. The amount of child support ordered by the Court is in accordance with the percentage guidelines.

2. The net resources of PAUL MICHAEL. PARSON per month are $4,606.97.

3. The net resources of TRACIE MARIE PARSON per month are $2,500.00.

4. The percentage applied to the first $7,500 of PAUL MICHAEL PARSON's net resources for child support is 25 percent.

Withholding from Earnings

IT IS ORDERED that any employer of PAUL MICHAEL PARSON shall be ordered to withhold from earnings for child support from the disposable earnings of PAUL MICHAEL PARSON for the support of FALIN GALE PARSON and ROGAN DOW PARSON.

IT IS FURTHER ORDERED that all amounts withheld from the disposable earnings of PAUL MICHAEL PARSON by the employer and paid in accordance with the order to that employer shall constitute a credit against the child support obligation. Payment of the full amount of child support ordered paid by this decree through the means of withholding from earnings shall discharge the child support obligation. If the amount withheld from earnings and credited against the child support obligation is less than 100 percent of the amount ordered to be paid by this decree, the balance due remains an obligation of PAUL MICHAEL PARSON, and it is hereby ORDERED that PAUL MICHAEL PARSON pay the balance due directly to the state disbursement unit specified below.

On this date the Court signed an Order/Notice to Withhold Income for Child Support.

Payment

IT IS ORDERED that all payments shall be made through the state disbursement unit at TEXAS CHILD SUPPORT DISBURSEMENT UNIT, P.O. BOX 659791, SAN ANTONIO, TEXAS 78265-9791, and thereafter promptly remitted to TRACIE MARIE PARSON for the support of the children. IT IS ORDERED that each party shall pay, when due, all fees charged to that party by the state disbursement unit and any other agency statutorily authorized to charge a fee.

Change of Employment

IT IS FURTHER ORDERED that PAUL MICHAEL PARSON shall notify this Court and TRACIE MARIE PARSON by U.S. certified mail, return receipt requested, of any change of address and of any termination of employment. This notice shall be given no later than seven days after the change of address or the termination of employment. This notice or a subsequent notice shall also provide the current address of PAUL MICHAEL PARSON and the name and address of his current employer, whenever that information becomes available.

Clerk's Duties

IT IS ORDERED that, on the request of a prosecuting attorney, the Title IV-D agency, the friend of the Court, a domestic relations office, TRACIE MARIE PARSON, PAUL MICHAEL PARSON, or an attorney representing TRACIE MARIE PARSON or PAUL MICHAEL PARSON, the clerk of this Court shall cause a certified copy of the Order/Notice to Withhold Income for Child Support to be delivered to any employer.

*Health Care*

1. IT IS ORDERED that TRACIE MARIE PARSON and PAUL MICHAEL PARSON shall each provide medical support for each child as set out in this order as additional child support

for as long as the Court may order TRACIE MARIE PARSON and PAUL MICHAEL PARSON to provide support for the child under Sections 154.001 and 154.002 of the Texas Family Code. Beginning on the day TRACIE MARIE PARSON and PAUL MICHAEL PARSON's actual or potential obligation to support a child under Sections 154.001 and 154.002 of the Family Code terminates, IT IS ORDERED that TRACIE MARIE PARSON and PAUL MICHAEL PARSON are discharged from the obligations set forth in this medical support order with respect to that child, except for any failure by a parent to fully comply with those obligations before that date.

2. Definitions –

"Health Insurance" means insurance coverage that provides basic health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services, that may be provided through a health maintenance organization or other private or public organization, other than medical assistance under Chapter 32 of the Texas Human Resources Code.

"Reasonable cost" means the total cost of health insurance coverage for all children for which PAUL MICHAEL PARSON is responsible under a medical support order that does not exceed 9 percent of PAUL MICHAEL PARSON 's annual resources, as described by Section 154.062(b) of the Texas Family Code.

"Reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of a child" include, without limitation, any copayments for office visits or prescription drugs, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges. These reasonable and necessary health-care expenses do not include expenses for travel to and from the health-care provider or for nonprescription medication.

"Furnish" means:

a. to hand deliver the document by a person eighteen years of age or older either to the recipient or to a person who is eighteen years of age or older and permanently resides with the recipient;

b. to deliver the document to the recipient by certified mail, return receipt requested, to the recipient's last known mailing or residence address; or

c. to deliver the document to the recipient at the recipient's last known mailing or residence address using any person or entity whose principal business is that of a courier or deliverer of papers or documents either within or outside the United States.

3. Findings on Health Insurance Availability– Having considered the cost, accessibility, and quality of health insurance coverage available to the parties, the Court finds:

Health insurance is available or is in effect for the children through PAUL MICHAEL

PARSON's employment or membership in a union, trade association, or other organization at a reasonable cost.

IT IS FURTHER FOUND that the following orders regarding health-care coverage are in the best interest of the children.

4.      Provision of Health-Care Coverage -

As additional child support, PAUL MICHAEL PARSON is ORDERED to continue to maintain health insurance for each child who is the subject of this suit that covers basic health-care services, including usual physician services, office visits, hospitalization, laboratory, X-ray, and emergency services.

PAUL MICHAEL PARSON is ORDERED to maintain such health insurance in full force and effect on each child who is the subject of this suit as long as child support is payable for that child. PAUL MICHAEL PARSON is ORDERED to convert any group insurance to individual coverage or obtain other health insurance for each child within fifteen days of termination of his employment or other disqualification from the group insurance. PAUL MICHAEL PARSON is ORDERED to exercise any conversion options or acquisition of new health insurance in such a manner that the resulting insurance equals or exceeds that in effect immediately before the change.

PAUL MICHAEL PARSON is ORDERED to furnish TRACIE MARIE PARSON and the Office of the Attorney General Child Support Division a true and correct copy of the health insurance policy or certification and a schedule of benefits within 14 days of the signing of this order. PAUL MICHAEL PARSON is ORDERED to furnish TRACIE MARIE PARSON the insurance cards and any other forms necessary for use of the insurance within 14 days of the signing of this order. PAUL MICHAEL PARSON is ORDERED to provide, within three days of receipt by him, to TRACIE MARIE PARSON any insurance checks, other payments, or explanations of benefits relating to any medical expenses for the children that TRACIE MARIE PARSON paid or incurred.

Pursuant to Section 1504.051 of the Texas Insurance Code, IT IS ORDERED that if PAUL MICHAEL PARSON is eligible for dependent health coverage but fails to apply to obtain coverage for the children, the insurer shall enroll the children on application of TRACIE MARIE PARSON or others as authorized by law.

Pursuant to Section 154.183(c) of the Texas Family Code, the reasonable and necessary health-care expenses of the children that are not reimbursed by health insurance are allocated as follows: TRACIE MARIE PARSON is ORDERED to pay 50 percent and PAUL MICHAEL PARSON is ORDERED to pay 50 percent of the unreimbursed health-care expenses if, at the time the expenses are incurred, PAUL MICHAEL PARSON is providing health insurance as ordered.

The party who incurs a health-care expense on behalf of a child is ORDERED to submit to the other party all forms, receipts, bills, statements, and explanations of benefits reflecting the uninsured

She has to see anetwork provider

portion of the health-care expenses within thirty days after he or she receives them. The nonincurring party is ORDERED to pay his or her percentage of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the incurring party for any advance payment exceeding the incurring party's percentage of the uninsured portion of the health-care expenses within thirty days after the nonincurring party receives the forms, receipts, bills, statements, and explanations of benefits.

These provisions apply to all unreimbursed health-care expenses of any child who is the subject of this suit that are incurred while child support is payable for that child.

5. Secondary Coverage - IT IS ORDERED that if a party provides secondary health insurance coverage for the children, both parties shall cooperate fully with regard to the handling and filing of claims with the insurance carrier providing the coverage in order to maximize the benefits available to the children and to ensure that the party who pays for health-care expenses for the children is reimbursed for the payment from both carriers to the fullest extent possible.

6. Compliance with Insurance Company Requirements - Each party is ORDERED to conform to all requirements imposed by the terms and conditions of the policy of health insurance covering the children in order to assure maximum reimbursement or direct payment by the insurance company of the incurred health-care expense, including but not limited to requirements for advance notice to any carrier, second opinions, and the like. Each party is ORDERED to attempt to use preferred providers, or services within the health maintenance organization, if applicable; however, this provision shall not apply if emergency care is required. Disallowance of the bill by a health insurer shall not excuse the obligation of either party to make payment; however, if a bill is disallowed or the benefit reduced because of the failure of a party to follow insurance procedures or requirements, IT IS ORDERED that the party failing to follow the insurance procedures or requirements shall be wholly responsible for the increased portion of that bill.

7. Claims - Except as provided in this paragraph, the party who is not carrying the health insurance policy covering the children is ORDERED to furnish to the party carrying the policy, within fifteen days of receiving them, any and all forms, receipts, bills, and statements reflecting the health-care expenses the party not carrying the policy incurs on behalf of the children. In accordance with Section 1204.251 and 1504.055(a) of the Texas Insurance Code, IT IS ORDERED that the party who is not carrying the health insurance policy covering the children, at that party's option , may file any claims for health-care expenses directly with the insurance carrier with and from whom coverage is provided for the benefit of the children and receive payments directly from the insurance company. Further, for the sole purpose of Section 1204.251 of the Texas Insurance Code, TRACIE MARIE PARSON is designated the managing conservator or possessory conservator of the children.

The party who is carrying the health insurance policy covering the children is ORDERED to

submit all forms required by the insurance company for payment or reimbursement of health-care expenses incurred by either party on behalf of a child to the insurance carrier within fifteen days of that party's receiving any form, receipt, bill, or statement reflecting the expenses.

8.    Constructive Trust for Payments Received - IT IS ORDERED that any insurance payments received by a party from the health insurance carrier as reimbursement for health-care expenses incurred by or on behalf of a child shall belong to the party who paid those expenses. IT IS FURTHER ORDERED that the party receiving the insurance payments is designated a constructive trustee to receive any insurance checks or payments for health-care expenses paid by the other party, and the party carrying the policy shall endorse and forward the checks or payments, along with any explanation of benefits received, to the other party within three days of receiving them.

9.    WARNING - A PARENT ORDERED TO PROVIDE HEALTH INSURANCE OR TO PAY THE OTHER PARENT ADDITIONAL CHILD SUPPORT FOR THE COST OF HEALTH INSURANCE WHO FAILS TO DO SO IS LIABLE FOR NECESSARY MEDICAL EXPENSES OF THE CHILDREN, WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID IF HEALTH INSURANCE HAD BEEN PROVIDED, AND FOR THE COST OF HEALTH INSURANCE PREMIUMS OR CONTRIBUTIONS, IF ANY, PAID ON BEHALF OF THE CHILDREN.

10.    Miscellaneous Health Care Provisions -

Each parent will deliver the medications of the children to the other parent at the beginning of the other parent's parenting time, unless the medications have been divided by the pharmacist into two containers that provide appropriate dosages and administrations to cover the time with each parent or unless two prescriptions can be obtained.

*Miscellaneous Child Support Provisions*

Military Health Care and Commissary Privileges

The Court finds that PAUL MICHAEL PARSON is a member of the United States Armed Forces and that the children of this marriage are eligible to receive health care and other benefits as dependents of a United States Armed Forces member. Therefore, PAUL MICHAEL PARSON is ORDERED to keep and maintain in current status and deliver to TRACIE MARIE PARSON the identification cards and any other forms necessary for the children of this marriage to be provided health care through all facilities available to the children as dependents of a United States Armed Forces member. PAUL MICHAEL PARSON is FURTHER ORDERED to provide to TRACIE MARIE PARSON all additional verified applications for renewal of dependent identification cards at least thirty days before the expiration date of the identification cards, until the children are no longer eligible for these benefits.

No Credit for Informal Payments

IT IS ORDERED that the child support as prescribed in this decree shall be exclusively discharged in the manner ordered and that any direct payments made by PAUL MICHAEL PARSON to TRACIE MARIE PARSON or any expenditures incurred by PAUL MICHAEL PARSON during PAUL MICHAEL PARSON's periods of possession of or access to the children, as prescribed in this decree, for food, clothing, gifts, travel, shelter, or entertainment are deemed in addition to and not in lieu of the support ordered in this decree.

Support as Obligation of Estate

IT IS ORDERED that the provisions for child support in this decree shall be an obligation of the estate of PAUL MICHAEL PARSON and shall not terminate on the death of PAUL MICHAEL PARSON. Payments received for the benefit of the children, including payments from the Social Security Administration, Department of Veterans Affairs or other governmental agency or life insurance proceeds, annuity payments, trust distributions, or retirement survivor benefits, shall be a credit against this obligation. Any remaining balance of the child support is an obligation of PAUL MICHAEL PARSON's estate.

Termination of Orders on Remarriage of Parties but Not on Death of Obligee

The provisions of this decree relating to current child support terminate on the remarriage of TRACIE MARIE PARSON to PAUL MICHAEL PARSON unless a nonparent or agency has been appointed conservator of the children under Chapter 153 of the Texas Family Code. An obligation to pay child support under this decree does not terminate on the death of TRACIE MARIE PARSON but continues as an obligation to FALIN GALE PARSON and ROGAN DOW PARSON.

*Medical Notification*

Each party is ORDERED to inform the other party within 12 hours of any medical condition of the children requiring surgical intervention, hospitalization, or both.

Within 14 days after the Court signs this decree, each party is ORDERED to execute –

1. all necessary releases pursuant to the Health Insurance Portability and Accountability Act (HIPAA) and 45 C.F.R. Section 164.508 to permit the other conservator to obtain health-care information regarding the children; and

2. for all health-care providers of the children, an authorization for disclosure of protected health information to the other conservator pursuant to the HIPAA and 45 C.F.R. Section 164.508.

Each party is further ORDERED to designate the other conservator as a person to whom protected health information regarding the children may be disclosed whenever the party executes an authorization for disclosure of protected health information pursuant to the HIPAA and 45 C.F.R. Section 164.508.

*Information Regarding Parties*

The information required for each party by section 105.006(a) of the Texas Family Code is as

follows:

Name: TRACIE MARIE PARSON
 Social Security number:  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
 Driver's license number:  03877903  Issuing state: Texas
 Current residence address:  1914 Standish, Floresville, Texas 78114
 Mailing address:  P.O. Box 1365, Poth, Texas 78147
 Home telephone number:  210-391-2121
 Name of employer:  Southside ISD
 Address of employment:  1300 Delago Parkway, San Antonio, Texas 78221
 Work telephone number:  210-882-1609

Name: PAUL MICHAEL PARSON
 Social Security number:  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
 Driver's license number  33978960  Issuing state: Texas
 Current residence address:  1950 Universal City Boulevard, Apt. #1102, Universal City, Texas 78148
 Mailing address:  1950 Universal City Boulevard, Apt. # 1102, Universal City, Texas 78148
 Home telephone number:  361-548-6135
 Name of employer:  United States Navy
 Address of employment:  2263 Stanley Road, San Antonio, Texas 78234
 Work telephone number:  210-221-9257

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, DRIVER'S LICENSE NUMBER, AND WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500

FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Notice shall be given to the other party by delivering a copy of the notice to the party by registered or certified mail, return receipt requested. Notice shall be given to the Court by delivering a copy of the notice either in person to the clerk of this Court or by registered or certified mail addressed to the clerk at P.O. Box 812, Floresville, Texas 78114. Notice shall be given to the state case registry by mailing a copy of the notice to State Case Registry, Contract Services Section, MC046S, P.O. Box 12017, Austin, Texas 78711-2017.

NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.

WARNINGS TO PARTIES: FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.

FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

*Division of Marital Estate*

The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party and the children of the marriage.

<u>Property to Husband</u>

IT IS ORDERED AND DECREED that the husband, PAUL MICHAEL PARSON, is awarded the following as his sole and separate property, and the wife is divested of all right, title, interest, and claim in and to that property:

H-1.    One-half interest of the net proceeds from the sale of the following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

> 18 Acres of land in Wilson County, Texas out of John H. Mills Survey No. 36, Abstract 221, being portion of that certain 60.4 acre tract described in conveyance in Volume 867, Page 108, Official Records of Wilson County, Texas, also known as 2496 CR 104, Floresville, Texas.

H-2.    The following furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment:

a.    Queen sleigh bed
b.    Ottoman
c.    Laptop with External Hard Drive
d.    52" HD TV
e.    Coin Collection
f.    Ping pong table
g.    Color printer
h.    ~~Dining table~~ JP
i.    End table
j.    Kegarator
k.    2 wine racks
l.    Corn hole game
m.    Light oak bedroom suit
n.    Sofa with hide-a-bed
o.    Glass and wood coffee table
p.    Ceramic tile table
q.    Antique parlor chairs
r.    Washer/dryer
s.    Microwave
t.    Book shelves (3)
u.    ~~Small engine wood chipper~~ JP
v.    A one-half of the Wine Collection
w.    Red overstuffed chair

H-3.    The funds on deposit, together with accrued but unpaid interest, in the following banks, savings institutions, or other financial institutions:

a.    Navy Federal Credit Union,
      Account number XXXXX5700

H-4.    All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to or as a result of PAUL MICHAEL PARSON's service in the United States Navy, including any accrued unpaid bonuses, disability plan or benefits, Thrift Savings Plan, or other benefits existing by reason of or as

a result of PAUL MICHAEL PARSON's past, present, or future employment, except that portion of PAUL MICHAEL PARSON's U.S. military retirement that has been awarded in this decree to TRACIE MARIE PARSON as more particularly specified in the domestic relations order signed in conjunction with this decree and incorporated verbatim in it by reference.

H-5.    All policies of life insurance (including cash values) insuring the husband's life.

H-6.    The 2003 Chevrolet Suburban motor vehicle, vehicle identification number 3GNFK16ZX3G345091, together with all prepaid insurance, keys, and title documents.

Property to Wife

IT IS ORDERED AND DECREED that the wife, TRACIE MARIE PARSON, is awarded the following as her sole and separate property, and the husband is divested of all right, title, interest, and claim in and to that property:

W-1.    One-half interest of the net proceeds from the sale of the following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

> 18 Acres of land in Wilson County, Texas out of John H. Mills Survey No. 36, Abstract 221, being portion of that certain 60.4 acre tract described in conveyance in Volume 867, Page 108, Official Records of Wilson County, Texas, also known as 2496 CR 104, Floresville, Texas.

W-2.    The following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

> 0.37 acres of land within the city limits of Poth and out of the Luis Manchaca Grant, Abstract 18, Wilson County, Texas and being the land described in a conveyance to Geraldine L. Gorzell and Peggy S. Fiske of record in Volume 827, Page 480, Official Public Records of Wilson County, Texas and further being parts or portions of Lots 2, 3, 4 and 5, Block 11 as shown on the plat of record in Volume 136, Page 276 of the Deed Records of Wilson County, Texas also known as 405 N Carroll St., Poth, Texas.

W-3.    The following furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in her possession, including, but not limited to:

a.    3 Piece Sofa Set
b.    King Sleigh Bed and Bedroom Suite
c.    DVD Player/Recorder
d.    DVD player
e.    19" TV
f.    Brother printer
g.    Desktop computer
h.    E wave freezer
i.    Fridgidaire mini refrigerator
j.    Fiestaware dish set
k.    Black console table

l. Stainless steel pots and pans set
m. Washer/dryer
n. Card table and folding chairs
o. Fridgidaire refrigerator
p. ~~Large chair~~ ~~ОР~~ μℓ
q. 6' Howse Shredder
r. Troy built mower
s. Remington 870 Shotgun
t. One-half of the Wine Collection

W-4. The funds on deposit, together with accrued but unpaid interest, in the following banks, savings institutions, or other financial institutions:

a. First National Bank
   Account number XXXXX-754
b. Navy Federal Credit Union
   Account number XXXXXX-6058
c. Navy Federal Credit Union
   Account number XXXX-000
d. Navy Federal Credit Union
   Account number 300916487

W-5. The sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the wife's past, present, or future employment with the Teacher Retirement System of Texas.

W-6. All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to or as a result of PAUL MICHAEL PARSON's service in the United States Navy, including any accrued unpaid bonuses, disability plan or benefits, Thrift Savings Plan, or other benefits existing by reason of or as a result of PAUL MICHAEL PARSON's past, present, or future employment, except that portion of PAUL MICHAEL PARSON's U.S. military retirement that has been awarded in this decree to PAUL MICHAEL PARSON as more particularly specified in the domestic relations order signed in conjunction with this decree and incorporated verbatim in it by reference.

W-7. All policies of life insurance (including cash values) insuring the wife's life.

W-8. The 2006 Nissan Altima motor vehicle, vehicle identification number IN4AL11D86N450449, together with all prepaid insurance, keys, and title documents.

W-9. The 2009 Mahindra Tractor motor vehicle, vehicle identification number SBCN176, together with all prepaid insurance, keys, and title documents.

W-10. $1,000.00 payable by PAUL MICHAEL PARSON to TRACIE MARIE PARSON on or before April 30, 2011, by cash, cashier's check, or money order.

Division of Debt

Debts to Husband

IT IS ORDERED AND DECREED that the husband, PAUL MICHAEL PARSON, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge, these items:

H-1.    The balance due, including principal, interest, tax, and insurance escrow, on the promissory note executed by TRACIE MARIE PARSON and PAUL MICHAEL PARSON, in the original principal sum of $76,000, dated on or about May 12, 2009, payable to Veterans Land Board, and secured by deed of trust on the real property awarded in this decree to the husband and wife, which is recorded at Volume 1508, Page 48, Deed of Trust Records of Wilson County, Texas.

H-2.    The balance due, including principal, interest, and all other charges, on the promissory note payable to Navy Federal Credit Union and given as part of the purchase price of and secured by a lien on the 2003 Chevrolet Suburban motor vehicle awarded to husband.

H-3.    The following debts, charges, liabilities, and obligations: all credit card accounts in Husband's name as the primary borrower (NFCU).

H-4.    All debts, charges, liabilities, and other obligations incurred solely by the husband from and after October 2, 2010 unless express provision is made in this decree to the contrary.

H-5.    $1,000.00 payable to TRACIE MARIE PARSON on or before April 30, 2011, by cash, cashier's check, or money order.

Debts to Wife

IT IS ORDERED AND DECREED that the wife, TRACIE MARIE PARSON, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the husband and his property harmless from any failure to so discharge, these items:

W-1.    The balance due, including principal, interest, and all other charges, on the promissory note payable to Agricredit Acceptance LLP and given as part of the purchase price of and secured by a lien on the 2009 Mahindra Tractor motor vehicle awarded to wife.

W-2.    The balance due, including principal, interest, tax, and insurance escrow, on the promissory note executed by TRACIE MARIE PARSON and PAUL MICHAEL PARSON, in the original principal sum of $98,445.00, dated December 28, 2010, payable to State Bank of Paw Paw, and secured by deed of trust on the real property awarded in this decree to the husband and wife, which is recorded at volume 1586, page 607, Deed of Trust Records of Wilson County, Texas.

W-3.    The following debts, charges, liabilities, and obligations: all credit card accounts in Wife's name as the primary borrower (CitiBank, Bank of America, Discover), and all of the debt owed to Gail and Asa G. Fuller, III.

W-4.    All debts, charges, liabilities, and other obligations incurred solely by the wife from and after October 2, 2010 unless express provision is made in this decree to the contrary.

Notice

IT IS ORDERED AND DECREED that each party shall send to the other party, within three days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any

potential liability of the other party.

## Provisions Dealing with Sale of Property

IT IS FURTHER ORDERED AND DECREED that the property and all improvements located thereon, being 18 Acres of land in Wilson County, Texas out of John H. Mills Survey No. 36, Abstract 221, being portion of that certain 60.4 acre tract described in conveyance in Volume 867, Page 108, Official Records of Wilson County, Texas, according to the map, plat, or deed records of Wilson County, Texas, and more commonly known as 2496 CR. 104, Floresville, Wilson County, Texas, shall be sold under the following terms and conditions:

1.      The property shall be sold for a price that is mutually agreeable to Petitioner and Respondent.

2.      Respondent shall continue to make all payments of principal, interest, taxes, and insurance on the property during the pendency of the sale, and Respondent shall have the exclusive right to enjoy the use and possession of the premises until closing. All maintenance and repairs necessary to keep the property in its present condition shall be paid by Respondent.

3.      The net sales proceeds (defined as the gross sales price less cost of sale and full payment of any mortgage indebtedness or liens on the property) shall be distributed as follows:

        a.      50% to Petitioner

        b.      50% to Respondent.

### Attorney's Fees

To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the children, each party shall be responsible for his or her own attorney's fees, expenses, and costs incurred as a result of legal representation in this case.

### Court Costs

IT IS ORDERED AND DECREED that costs of court are to be borne by the party who incurred them.

### Resolution of Temporary Orders

IT IS ORDERED AND DECREED that Petitioner and Respondent are discharged from all further liabilities and obligations imposed by the temporary order of this Court rendered on November 8, 2010.

### Discharge from Discovery Retention Requirement

IT IS ORDERED AND DECREED that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with Rule 191.4(d) of the Texas Rules of Civil Procedure.

### Decree Acknowledgment

Petitioner, TRACIE MARIE PARSON, and Respondent, PAUL MICHAEL PARSON, each acknowledge that before signing this Final Decree of Divorce they have read this Final Decree of Divorce fully and completely, have had the opportunity to ask any questions regarding the same, and fully understand that the contents of this Final Decree of Divorce constitute a full and complete resolution of this case. Petitioner and Respondent acknowledge that they have voluntarily affixed their signatures to this Final Decree of Divorce, believing this agreement to be a just and right division of the marital debt and assets, and state that they have not signed by virtue of any coercion, any duress, or any agreement other than those specifically set forth in this Final Decree of Divorce.

*Indemnification*

Each party represents and warrants that he or she has not incurred any outstanding debt, obligation, or other liability on which the other party is or may be liable, other than those described in this decree. Each party agrees and IT IS ORDERED that if any claim, action, or proceeding is hereafter initiated seeking to hold the party not assuming a debt, an obligation, a liability, an act, or an omission of the other party liable for such debt, obligation, liability, act or omission of the other party, that other party will, at his or her sole expense, defend the party not assuming the debt, obligation, liability, act, or omission of the other party against any such claim or demand, whether or not well founded, and will indemnify the party not assuming the debt, obligation, liability, act, or omission of the other party and hold him or her harmless from all damages resulting from the claim or demand.

Damages, as used in this provision, includes any reasonable loss, cost, expense, penalty, and other damage, including without limitation attorney's fees and other costs and expenses reasonably and necessarily incurred in enforcing this indemnity.

IT IS ORDERED that the indemnifying party will reimburse the indemnified party, on demand, for any payment made by the indemnified party at any time after the entry of the divorce decree to satisfy any judgment of any court of competent jurisdiction or in accordance with a bona fide compromise or settlement of claims, demands, or actions for any damages to which this indemnity relates.

The parties agree and IT IS ORDERED that each party will give the other party prompt written notice of any litigation threatened or instituted against either party that might constitute the basis of a claim for indemnity under this decree.

*Clarifying Orders*

Without affecting the finality of this Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

*Relief Not Granted*

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly

granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable.

*Date of Judgment*

The CORRECTED DECREE is SIGNED on May 24, 2011, but is effective as of March 1, 2011, the date of the original decree entered in this case.

JUDGE PRESIDING

Filed _24_ Day of _March_ 20 _11_ 12:35 M

Clerk District Court Wilson County, Texas

APPROVED AS TO FORM ONLY:

The Law Offices of
DONAHO & DOCKERY P.C.
P.O. Box 459
Floresville, TX 78114
Tel: (830) 393-2700
Fax: (830) 393-3029

By: _____
Kirk Dockery
State Bar No. 05929220
Attorney for Petitioner

LAUBACH LAW OFFICE
1005 S. Alamo
20770 Highway 281
Suite 108/Box 248
San Antonio, Texas 78258
Tel: (210) 222-1225
Fax: (830) 438-4064

By: _____
Dawn M. Laubach
State Bar No. 24031271
Attorney for Respondent

APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE:

_____
Tracie Marie Parson, Petitioner

_____
Paul Michael Parson, Respondent

10201-#13



| | |
|---|---|
| IN THE MATTER OF<br>THE MARRIAGE OF | § IN THE DISTRICT COURT |
| TRACIE MARIE PARSON<br>AND<br>PAUL MICHAEL PARSON | § 81ST JUDICIAL DISTRICT |
| AND IN THE INTEREST OF<br>FALIN GALE PARSON AND ROGAN<br>DOW PARSON, CHILDREN | § WILSON COUNTY, TEXAS |

## DOMESTIC RELATIONS ORDER
[Military Retirement]

The Court, having entered a decree of divorce coincident with the signing of this domestic relations order, finding that the entry of a domestic relations order (DRO) is necessary to effectuate the terms of that decree of divorce, and further finding that the entry of a DRO is appropriate, makes the following findings and conclusions of law and enters them as an order in this proceeding.

*Findings*

The Court finds, in accordance with the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. Section 1408, as follows:

1. This Court has jurisdiction over PAUL MICHAEL PARSON. The residence of Servicemember is in Universal City, Bexar County, Texas, other than because of military assignment.

2. Servicemember, and TRACIE MARIE PARSON, ("Former Spouse"), were originally married on June 5, 2004, and that marriage lasted for 6 years and 8 months or more, during which time Servicemember served 6 years and 8 months or more of creditable service toward retirement.

3. Servicemember's Social Security number is 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, his address is 1950 Universal City Boulevard, Apt. #1102, Universal City, Texas 78148, and his birth date is July 30, 1972.

4. Former Spouse's Social Security number is 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 , her address is P.O. Box 1365, Poth, Texas, 78147, and her birth date is October 3, 1974.

5. The rights of Servicemember under the Servicemembers Civil Relief Act were fully complied with in this case.

6. Servicemember is not retired from the United States Navy at the time of this order.

7. The award of disposable retired pay made to Former Spouse in this order is made in compliance with the Uniformed Services Former Spouses' Protection Act.

8. It is intended by this Court and the parties that the Defense Finance and Accounting Service (DFAS) designee make the payments due to Former Spouse of her interest in the disposable retired pay awarded in this order directly to Former Spouse.

*Terms and Definitions*

With respect to the provisions of this DRO, the Court has used and applied the following terms and definitions:

1. "Retired pay" means monetary pay to which Servicemember is, or may hereafter be, entitled to receive on completion of the requisite number of years of creditable service to be entitled to nondisability retired pay as a result of service in the United States Armed Forces (active duty, reserve component, or national guard), whether called retired pay, retainer pay, or retirement pay.

2. "Disposable retired pay" has the meaning provided in the Uniformed Services Former Spouses' Protection Act (10 U.S.C. § 1408 *et seq.*).

3. "USFSPA" means the Uniformed Services Former Spouses' Protection Act (10 U.S.C. § 1408 *et seq.*) in effect on the date of the parties' divorce.

4. "Defense Finance and Accounting Service" (DFAS) means, refers to, and includes the Secretary of the Department of Defense, the Director of the DFAS, the designated agent of either of these, and other appropriate subdivisions of the United State Government.

5. "COLA" means the cost-of-living adjustment increases that are made annually to a military retiree's retired pay pursuant to 10 U.S.C. § 1401a.

*Award to Former Spouse*

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States Navy, the amount of disposable retired pay calculated as follows 50.0 percent multiplied by 16.66 percent multiplied by 35.0 percent multiplied by the high-36 month base pay of the Servicemember, which is $3,322.16, with Servicemember's pay grade, which is E-6, and longevity on the date of divorce, which is 18 years 3 months, determined on the date of Servicemember's retirement divided by Servicemember's monthly gross retired pay at retirement multiplied by Servicemember's monthly **disposable** retired pay at retirement.

IT IS FURTHER ORDERED that DFAS, to the extent allowed by law, pay Former Spouse each month the calculated percentage of Servicemember's disposable retired pay at retirement, together with all COLAs applicable thereto, payable, IF, AS, and WHEN received by Servicemember.

IT IS FURTHER ORDERED that the rest, residue, and remainder of the military retired pay of Servicemember is the sole and separate property of Servicemember.

*Amounts in Excess of 50 Percent*

IT IS ORDERED that if the dollar amount or award (or a larger sum as increases take effect) exceeds 50 percent of the disposable retired pay, DFAS shall pay to Former Spouse the maximum amount allowable under the USFSPA and Servicemember shall be responsible for paying the balance of the award each month to Former Spouse, and it is accordingly ORDERED.

If DFAS is not allowed to pay Former Spouse the full amount of Former Spouse's entitlement

pursuant to this order form any reason, Servicemember is hereby ORDERED, within seven days of being notified by Former Spouse that Former Spouse is not receiving the full amount of Former Spouse's interest in the retired pay, to execute and deliver to DFAS all forms or documents that may then be necessary to effect an allotment payable to Former Spouse in the amount of the difference between the amount being paid directly to Former Spouse by DFAS and the full amount of Former Spouse's interest in the retired pay. Servicemember is FURTHER ORDERED to keep and maintain in full force and effect any allotment required by this provision, payable to Former Spouse at P.O. Box 1365, Poth, Texas, 78147, or such other address as Former Spouse may hereafter specify in writing, until such time as Former Spouse begins receiving Former Spouse's full separate-property share of Servicemember's disposable retired pay as awarded herein directly from DFAS. That allotment may be canceled by Servicemember if and when Former Spouse begins receiving, and for as long as Former Spouse is receiving, Former Spouses' full separate-property share of Servicemember's disposable retired pay directly from DFAS, but only in that event or to avoid double payment of sums.

Since Former Spouse has been awarded the right to receive that share attributable to the interest awarded to Former Spouse herein of any and all COLAs or other increases in the monthly disposable retired pay hereinafter paid and if Former Spouse is not receiving from DFAS his full share of the retired pay herein awarded to Former Spouse, if and when COLAs are made to the retired pay received by Servicemember, Servicemember is hereby ORDERED to execute and deliver to DFAS all forms or documents that may then be necessary to effect an increase in the allotment to Former Spouse in the amount equal to the dollars-and-cents equivalent of that COLA attributable to Former Spouse's share of that disposable retired pay. Servicemember is hereby ORDERED to increase the allotment then in effect or, if applicable, initiate an allotment pursuant to the foregoing paragraph, within seven working days of the date Servicemember is notified by DFAS of the effective date of each COLA to the monthly retired pay payment.

*Constructive Trust*

IT IS FURTHER ORDERED that Servicemember be and is hereby designated a constructive trustee for the benefit of Former Spouse for the purpose of receiving the retired pay awarded herein to Former Spouse as Former Spouse's sole and separate property, and Servicemember be and is hereby ORDERED, on receipt thereof, to deliver by first-class mail to Former Spouse at her last known address by negotiable instrument that portion of each monthly retired pay payments awarded to Former Spouse herein not paid directly (or by allotment) by DFAS within three days of the receipt of any such payments by Servicemember. All payments made directly to Former Spouse by DFAS shall be a credit against this obligation.

For purposes of this order, Servicemember is specifically directed, on penalty of contempt, to pay Former Spouse's interest in the disposable retired pay as ordered in this order, AND IT IS SO ORDERED. Servicemember is specifically directed that he is not relieved of that obligation except

to the extent that he is specifically notified that 100 percent of Former Spouse's interest in the retirement benefit has been directly paid by DFAS, and IT IS SO ORDERED.

IT IS FURTHER ORDERED that any election of benefits that may hereafter be made by Servicemember shall not reduce the amount equal to the percentage of the retired pay or the amount of the retired pay the Court has herein awarded to Former Spouse, except as provided by federal law *and* prohibited from being changed by a state court order. In this regard, IT IS FURTHER ORDERED that Servicemember shall not merge his military retired pay with any other pension and shall not pursue any course of action that would defeat, reduce, or limit Former Spouse's right to receive Former Spouse's full separate-property share of Servicemember's retired pay as awarded in this order, unless otherwise ordered herein.

*Death*

IT IS ORDERED that the payment of the retired pay awarded in this order to Former Spouse shall continue until the death of Servicemember or Former Spouse.

*Retiree Account Statements and Privacy Waiver*

IT IS FURTHER ORDERED that Servicemember shall deliver by first class mail to Former Spouse at P.O. Box 1365, Poth, Texas, 78147, or such other address as Former Spouse may hereafter specify in writing, a true and correct legible copy of each Retiree Account Statement received by Servicemember from DFAS within five day of its receipt.

IT IS ORDERED that Servicemember hereby waives any privacy or other rights as may be required for Former Spouse to obtain information relating to Servicemember's date of retirement, last unit assignment, full pay grade, past or present monthly annuity payments, or other information that may be required to enforce this award or to revise this order to make it enforceable.

*Retirement*

IT IS ORDERED that Servicemember shall notify Former Spouse of his application for retired pay, and provide Former Spouse with a true copy of his Application for Retired Pay Benefits, on the date he applies for those benefits. This notification shall be mailed by Servicemember to Former Spouse at her last known address. Servicemember is FURTHER ORDERED to provide to Former Spouse a true and correct copy of the first Retiree Account Statement received by him within five days of its receipt.

*Application for Direct Pay of Retired Pay*

Former Spouse is hereby directed to apply for Former Spouse's entitlement to a portion of Servicemember's retired pay by contacting the DFAS Legal Department, completing the Application for Former Spouse Payments from Retired Pay (DD Form 2293), and delivering it along with a certified copy of this DRO (certified within ninety days of its delivery to DFAS) and a photocopy of the parties' marriage certificate to: **DFAS-HGA-CL, Assistant General Counsel for Garnishment Operations, P.O. Box 998002, Cleveland, Ohio 44199-8002** by certified mail, return receipt requested.

*Taxes*

IT IS FURTHER ORDERED that Former Spouse shall include in her gross income for her taxable years of receipt all retired pay received by Former Spouse pursuant to this order, and, to the extent benefits are payable to Former Spouse by DFAS, Servicemember shall not include such benefits in Servicemember's gross income for such taxable years.

*Survivor Benefit Plan*

The Court further finds that Former Spouse and the parties' children should be designated as former spouse and child beneficiaries of Servicemember's Armed Forces Survivor Benefit Plan (which is deemed to include the Reserve Component Survivor Benefit Plan, if applicable) and that Servicemember is ordered to designate Former Spouse and the parties' children as former spouse and child beneficiaries of the Survivor Benefit Plan and that the designation of Former Spouse and the children as former spouse and child beneficiaries should not hereafter be modified, amended, withdrawn, reduced, or altered by Servicemember during the children's eligibility or Former Spouse's lifetime, and IT IS SO ORDERED.

IT IS THEREFORE ORDERED that Servicemember shall elect to designate Former Spouse as a former spouse beneficiary of Servicemember's Survivor Benefit Plan. IT IS FURTHER ORDERED that, pursuant to this order, Former Spouse be and is hereby deemed designated, to the extent permitted by law, a former spouse beneficiary of Servicemember's Survivor Benefit Plan to receive the percentage equal to the percentage of Servicemember's disposable retired pay awarded Former Spouse in this order.

To the extent that Servicemember fails or otherwise refuses to cooperate in filing the documents required to elect to designate Former Spouse as a former spouse beneficiary of Servicemember's Survivor Benefit Plan, Former Spouse is directed to apply for Former Spouse's entitlement to be deemed a former spouse beneficiary of Servicemember's Armed Forces Survivor Benefit Plan by notifying the DFAS Legal Department of this Court's deemed election pursuant to 10 U.S.C. Section 1447 et seq., completing a DD Form 2656-10 to effect the deemed election, and sending it, along with a certified copy of this order, to **U.S. Military Annuitant Pay, P.O. Box 7131, London, KY 40742-7131** by certified mail, return receipt requested. *Former Spouse's failure to register her deemed election within one year of the date this DRO is signed may, if not will, forever bar such an election for Former Spouse.*

IT IS ORDERED that Servicemember shall not during Former Spouse's lifetime modify, amend, withdraw, or in any other manner alter the election to name Former Spouse as a former spouse beneficiary of Servicemember's Armed Forces Survivor Benefit Plan.

*Continued Jurisdiction and Clarification*

Without affecting the finality of the Final Decree of Divorce or this Domestic Relations Order, this Court expressly reserves the right pursuant to Section 9.101 *et seq.* of the Texas Family Code to make orders necessary to clarify, amend, and enforce this order, and IT IS SO ORDERED.

SIGNED on May 24, 2011.

_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

The Law Offices of
DONAHO & DOCKERY P.C.
P.O. Box 459
Floresville, TX  78114
Tel: (830) 393-2700
Fax: (830) 393-3029

By: _____
Kirk Dockery
State Bar No. 05929220
Attorney for Petitioner

LAUBACH LAW OFFICE
1005 S. Alamo
20770 Highway 281
Suite 108/Box 248
San Antonio, Texas 78258
Tel:  (210) 222-1225
Fax:  (830) 438-4064

By: _____
Dawn M. Laubach
State Bar No. 24031271
Attorney for Respondent

APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE:

_____
Tracie Marie Parson, Petitioner

_____
Paul Michael Parson, Respondent

Filed _____ Day of _____ 20___
_____ M
Clerk District Court Wilson County, Texas

10201-#10

DOMESTIC RELATIONS ORDER - MILITARY RETIREMENT                    Page 6

| | | |
|---|---|---|
| IN THE MATTER OF<br>THE MARRIAGE OF | § | IN THE DISTRICT COURT |
| | § | |
| TRACIE MARIE PARSON<br>AND<br>PAUL MICHAEL PARSON | §<br>§<br>§<br>§ | 81ST JUDICIAL DISTRICT |
| | § | |
| AND IN THE INTEREST OF<br>FALIN GALE PARSON AND ROGAN<br>DOW PARSON, CHILDREN | §<br>§<br>§ | WILSON COUNTY, TEXAS |

## DOMESTIC RELATIONS ORDER
### [Military Retirement]

The Court, having entered a decree of divorce coincident with the signing of this domestic relations order, finding that the entry of a domestic relations order (DRO) is necessary to effectuate the terms of that decree of divorce, and further finding that the entry of a DRO is appropriate, makes the following findings and conclusions of law and enters them as an order in this proceeding.

*Findings*

The Court finds, in accordance with the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. Section 1408, as follows:

1. This Court has jurisdiction over PAUL MICHAEL PARSON. The residence of Servicemember is in Universal City, Bexar County, Texas, other than because of military assignment.

2. Servicemember, and TRACIE MARIE PARSON, ("Former Spouse"), were originally married on June 5, 2004, and that marriage lasted for 6 years and 8 months or more, during which time Servicemember served 6 years and 8 months or more of creditable service toward retirement.

3. Servicemember's Social Security number is 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, his address is 1950 Universal City Boulevard, Apt. #1102, Universal City, Texas 78148, and his birth date is July 30, 1972.

4. Former Spouse's Social Security number is 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 , her address is P.O. Box 1365, Poth, Texas, 78147, and her birth date is October 3, 1974.

5. The rights of Servicemember under the Servicemembers Civil Relief Act were fully complied with in this case.

6. Servicemember is not retired from the United States Navy at the time of this order.

7. The award of disposable retired pay made to Former Spouse in this order is made in compliance with the Uniformed Services Former Spouses' Protection Act.

8. It is intended by this Court and the parties that the Defense Finance and Accounting Service (DFAS) designee make the payments due to Former Spouse of her interest in the disposable retired pay awarded in this order directly to Former Spouse.

143/547-552

*Terms and Definitions*

With respect to the provisions of this DRO, the Court has used and applied the following terms and definitions:

1. "Retired pay" means monetary pay to which Servicemember is, or may hereafter be, entitled to receive on completion of the requisite number of years of creditable service to be entitled to nondisability retired pay as a result of service in the United States Armed Forces (active duty, reserve component, or national guard), whether called retired pay, retainer pay, or retirement pay.

2. "Disposable retired pay" has the meaning provided in the Uniformed Services Former Spouses' Protection Act (10 U.S.C. § 1408 *et seq.*).

3. "USFSPA" means the Uniformed Services Former Spouses' Protection Act (10 U.S.C. § 1408 *et seq.*) in effect on the date of the parties' divorce.

4. "Defense Finance and Accounting Service" (DFAS) means, refers to, and includes the Secretary of the Department of Defense, the Director of the DFAS, the designated agent of either of these, and other appropriate subdivisions of the United State Government.

5. "COLA" means the cost-of-living adjustment increases that are made annually to a military retiree's retired pay pursuant to 10 U.S.C. § 1401a.

*Award to Former Spouse*

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States Navy, the amount of disposable retired pay calculated as follows 50.0 percent multiplied by 16.66 percent multiplied by 35.0 percent multiplied by the high-36 month base pay of the Servicemember, which is $3,322.16, with Servicemember's pay grade, which is E-6, and longevity on the date of divorce, which is 18 years 3 months, determined on the date of Servicemember's retirement divided by Servicemember's monthly gross retired pay at retirement multiplied by Servicemember's monthly **disposable** retired pay at retirement.

IT IS FURTHER ORDERED that DFAS, to the extent allowed by law, pay Former Spouse each month the calculated percentage of Servicemember's disposable retired pay at retirement, together with all COLAs applicable thereto, payable, IF, AS, and WHEN received by Servicemember.

IT IS FURTHER ORDERED that the rest, residue, and remainder of the military retired pay of Servicemember is the sole and separate property of Servicemember.

*Amounts in Excess of 50 Percent*

IT IS ORDERED that if the dollar amount or award (or a larger sum as increases take effect) exceeds 50 percent of the disposable retired pay, DFAS shall pay to Former Spouse the maximum amount allowable under the USFSPA and Servicemember shall be responsible for paying the balance of the award each month to Former Spouse, and it is accordingly ORDERED.

If DFAS is not allowed to pay Former Spouse the full amount of Former Spouse's entitlement

pursuant to this order form any reason, Servicemember is hereby ORDERED, within seven days of being notified by Former Spouse that Former Spouse is not receiving the full amount of Former Spouse's interest in the retired pay, to execute and deliver to DFAS all forms or documents that may then be necessary to effect an allotment payable to Former Spouse in the amount of the difference between the amount being paid directly to Former Spouse by DFAS and the full amount of Former Spouse's interest in the retired pay. Servicemember is FURTHER ORDERED to keep and maintain in full force and effect any allotment required by this provision, payable to Former Spouse at P.O. Box 1365, Poth, Texas, 78147, or such other address as Former Spouse may hereafter specify in writing, until such time as Former Spouse begins receiving Former Spouse's full separate-property share of Servicemember's disposable retired pay as awarded herein directly from DFAS. That allotment may be canceled by Servicemember if and when Former Spouse begins receiving, and for as long as Former Spouse is receiving, Former Spouses' full separate-property share of Servicemember's disposable retired pay directly from DFAS, but only in that event or to avoid double payment of sums.

Since Former Spouse has been awarded the right to receive that share attributable to the interest awarded to Former Spouse herein of any and all COLAs or other increases in the monthly disposable retired pay hereinafter paid and if Former Spouse is not receiving from DFAS his full share of the retired pay herein awarded to Former Spouse, if and when COLAs are made to the retired pay received by Servicemember, Servicemember is hereby ORDERED to execute and deliver to DFAS all forms or documents that may then be necessary to effect an increase in the allotment to Former Spouse in the amount equal to the dollars-and-cents equivalent of that COLA attributable to Former Spouse's share of that disposable retired pay. Servicemember is hereby ORDERED to increase the allotment then in effect or, if applicable, initiate an allotment pursuant to the foregoing paragraph, within seven working days of the date Servicemember is notified by DFAS of the effective date of each COLA to the monthly retired pay payment.

*Constructive Trust*

IT IS FURTHER ORDERED that Servicemember be and is hereby designated a constructive trustee for the benefit of Former Spouse for the purpose of receiving the retired pay awarded herein to Former Spouse as Former Spouse's sole and separate property, and Servicemember be and is hereby ORDERED, on receipt thereof, to deliver by first-class mail to Former Spouse at her last known address by negotiable instrument that portion of each monthly retired pay payments awarded to Former Spouse herein not paid directly (or by allotment) by DFAS within three days of the receipt of any such payments by Servicemember. All payments made directly to Former Spouse by DFAS shall be a credit against this obligation.

For purposes of this order, Servicemember is specifically directed, on penalty of contempt, to pay Former Spouse's interest in the disposable retired pay as ordered in this order, AND IT IS SO ORDERED. Servicemember is specifically directed that he is not relieved of that obligation except

to the extent that he is specifically notified that 100 percent of Former Spouse's interest in the retirement benefit has been directly paid by DFAS, and IT IS SO ORDERED.

IT IS FURTHER ORDERED that any election of benefits that may hereafter be made by Servicemember shall not reduce the amount equal to the percentage of the retired pay or the amount of the retired pay the Court has herein awarded to Former Spouse, except as provided by federal law *and* prohibited from being changed by a state court order. In this regard, IT IS FURTHER ORDERED that Servicemember shall not merge his military retired pay with any other pension and shall not pursue any course of action that would defeat, reduce, or limit Former Spouse's right to receive Former Spouse's full separate-property share of Servicemember's retired pay as awarded in this order, unless otherwise ordered herein.

*Death*

IT IS ORDERED that the payment of the retired pay awarded in this order to Former Spouse shall continue until the death of Servicemember or Former Spouse.

*Retiree Account Statements and Privacy Waiver*

IT IS FURTHER ORDERED that Servicemember shall deliver by first class mail to Former Spouse at P.O. Box 1365, Poth, Texas, 78147, or such other address as Former Spouse may hereafter specify in writing, a true and correct legible copy of each Retiree Account Statement received by Servicemember from DFAS within five day of its receipt.

IT IS ORDERED that Servicemember hereby waives any privacy or other rights as may be required for Former Spouse to obtain information relating to Servicemember's date of retirement, last unit assignment, full pay grade, past or present monthly annuity payments, or other information that may be required to enforce this award or to revise this order to make it enforceable.

*Retirement*

IT IS ORDERED that Servicemember shall notify Former Spouse of his application for retired pay, and provide Former Spouse with a true copy of his Application for Retired Pay Benefits, on the date he applies for those benefits. This notification shall be mailed by Servicemember to Former Spouse at her last known address. Servicemember is FURTHER ORDERED to provide to Former Spouse a true and correct copy of the first Retiree Account Statement received by him within five days of its receipt.

*Application for Direct Pay of Retired Pay*

Former Spouse is hereby directed to apply for Former Spouse's entitlement to a portion of Servicemember's retired pay by contacting the DFAS Legal Department, completing the Application for Former Spouse Payments from Retired Pay (DD Form 2293), and delivering it along with a certified copy of this DRO (certified within ninety days of its delivery to DFAS) and a photocopy of the parties' marriage certificate to: **DFAS-HGA-CL, Assistant General Counsel for Garnishment Operations, P.O. Box 998002, Cleveland, Ohio 44199-8002** by certified mail, return receipt requested.

*Taxes*

IT IS FURTHER ORDERED that Former Spouse shall include in her gross income for her taxable years of receipt all retired pay received by Former Spouse pursuant to this order, and, to the extent benefits are payable to Former Spouse by DFAS, Servicemember shall not include such benefits in Servicemember's gross income for such taxable years.

*Survivor Benefit Plan*

The Court further finds that Former Spouse and the parties' children should be designated as former spouse and child beneficiaries of Servicemember's Armed Forces Survivor Benefit Plan (which is deemed to include the Reserve Component Survivor Benefit Plan, if applicable) and that Servicemember is ordered to designate Former Spouse and the parties' children as former spouse and child beneficiaries of the Survivor Benefit Plan and that the designation of Former Spouse and the children as former spouse and child beneficiaries should not hereafter be modified, amended, withdrawn, reduced, or altered by Servicemember during the children's eligibility or Former Spouse's lifetime, and IT IS SO ORDERED.

IT IS THEREFORE ORDERED that Servicemember shall elect to designate Former Spouse as a former spouse beneficiary of Servicemember's Survivor Benefit Plan. IT IS FURTHER ORDERED that, pursuant to this order, Former Spouse be and is hereby deemed designated, to the extent permitted by law, a former spouse beneficiary of Servicemember's Survivor Benefit Plan to receive the percentage equal to the percentage of Servicemember's disposable retired pay awarded Former Spouse in this order.

To the extent that Servicemember fails or otherwise refuses to cooperate in filing the documents required to elect to designate Former Spouse as a former spouse beneficiary of Servicemember's Survivor Benefit Plan, Former Spouse is directed to apply for Former Spouse's entitlement to be deemed a former spouse beneficiary of Servicemember's Armed Forces Survivor Benefit Plan by notifying the DFAS Legal Department of this Court's deemed election pursuant to 10 U.S.C. Section 1447 et seq., completing a DD Form 2656-10 to effect the deemed election, and sending it, along with a certified copy of this order, to **U.S. Military Annuitant Pay, P.O. Box 7131, London, KY 40742-7131** by certified mail, return receipt requested. *Former Spouse's failure to register her deemed election within one year of the date this DRO is signed may, if not will, forever bar such an election for Former Spouse.*

IT IS ORDERED that Servicemember shall not during Former Spouse's lifetime modify, amend, withdraw, or in any other manner alter the election to name Former Spouse as a former spouse beneficiary of Servicemember's Armed Forces Survivor Benefit Plan.

*Continued Jurisdiction and Clarification*

Without affecting the finality of the Final Decree of Divorce or this Domestic Relations Order, this Court expressly reserves the right pursuant to Section 9.101 *et seq.* of the Texas Family Code to make orders necessary to clarify, amend, and enforce this order, and IT IS SO ORDERED.

SIGNED on May 24, 2011.

_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

The Law Offices of
DONAHO & DOCKERY P.C.
P.O. Box 459
Floresville, TX 78114
Tel: (830) 393-2700
Fax: (830) 393-3029

By:_____
Kirk Dockery
State Bar No. 05929220
Attorney for Petitioner

LAUBACH LAW OFFICE
1005 S. Alamo
20770 Highway 281
Suite 108/Box 248
San Antonio, Texas 78258
Tel: (210) 222-1225
Fax: (830) 438-4064

By:_____
Dawn M. Laubach
State Bar No. 24031271
Attorney for Respondent

APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE:

_____
Tracie Marie Parson, Petitioner

_____
Paul Michael Parson, Respondent

Filed ___ Day of _____ 20 ___ M
Clerk District Court Wilson County, Texas

10201-#10

DOMESTIC RELATIONS ORDER - MILITARY RETIREMENT



# APPENDIX 4

## NO. 10-10-0579-CVW

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| TRACIE MARIE PARSON | § | |
| AND | § | 81ST JUDICIAL DISTRICT |
| PAUL MICHAEL PARSON | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| F.G.P. AND R.D.P., CHILDREN | § | WILSON COUNTY, TEXAS |

### PETITION TO CORRECT OR AMEND
### DOMESTIC RELATIONS ORDER FOR MILITARY RETIREMENT

This Petition to Correct or Amend Domestic Relations Order for Military Retirement is brought by TRACIE MARIE SHEFFLER, formerly Tracie Marie Parson, Petitioner, who files this petition pursuant to §9.101 *et seq.*, Texas Family Code, and who shows in support:

1.      Petitioner, TRACIE MARIE SHEFFLER, formerly Tracie Marie Parson, was the Petitioner in the original suit for divorce.

2.      Respondent, PAUL MICHAEL PARSON, was the Respondent in the original suit for divorce.

3.      No personal service is necessary at this time. This petition is filed in the form of a counter-petition at a time when the Court has plenary power over the parties due to a petition to modify in suit affecting parent-child relationship filed by PAUL MICHAEL PARSON and a counter-petition to modify in suit affecting parent-child relationship filed by TRACIE MARIE SHEFFLER. Respondent, PAUL MICHAEL PARSON, will be served with this motion in accordance with Rule 21a, T.R.C.P., on his attorney of record.

4.      On May 24, 2011, this Court entered a "Corrected Final Decree of Divorce" which provides that Petitioner is to receive a portion of in Respondent's military retirement.

Filed ___ Day of ___ 15

_____ M

Deborah Bryan
Clerk District Court Wilson County, Texas
By_____ Deputy

85

5.   Also on May 24, 2011, this Court entered a "Domestic Relations Order - Military Retirement" awarding Petitioner a portion of Respondent's military retirement.

6.   Both the Corrected Final Decree of Divorce and the Domestic Relations Order - Military Retirement are based on a Rule 11 Agreement signed by both parties and their attorney of record, dated February 3, 2011, a copy of which is attached hereto, and which provides in relevant part:

> "5.   Wife awarded:
>
>      . . . . .
>
> h.   ½ community interest in military retirement.
>
>      . . . .
>
> 6.   Husband awarded:
>
>      . . . .
>
> c.   ½ community interest in military retirement + all H's SP interest."

A true and correct copy of the Rule 11 Agreement is attached hereto, the original of which is in the possession of the Clerk of this Court.

7.   At the time of the divorce, Respondent was still active duty in the U.S. Navy and therefore certain aspects of his retirement could not be known at that time, specifically, the total number of years and months that he would serve prior to retirement, the amount of his gross monthly retired pay, and the amount of his disposable monthly retired pay.

8.   The formula used in the Domestic Relations Order, which was provided by Respondent's attorney of record, is as follows:

> "IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States Navy, the amount of disposable retired pay calculated as follows 50.0 percent multiplied by 16.66 percent multiplied by 35.0 percent multiplied by the high-36 month base pay of the

Servicemember, which is $3,322.16, with Servicemember's pay grade, which is E-6, and longevity on the date of divorce, which is 18 years 3 months, determined on the date of Servicemember's retirement divided by Servicemember's monthly gross retired pay at retirement multiplied by Servicemember's monthly **disposable** retired pay at retirement."

This formula results in an award of less than $100.00 per month from Respondent's that is far less than the one-half of the community interest agreed upon by the parties.

9.     The proper formula suggested by the Defense Finance and Accounting Service for compliance with the Uniformed Services Former Spouses' Protection Act is:

"The former spouse is awarded a percentage of the member's disposable military retired pay, to be computed by multiplying 50% times a fraction, the numerator of which is _____ months of marriage during the member's creditable military service, divided by the member's total number of months of creditable military service."

10.    State courts have authority to divide military retired pay only as set forth by the Uniformed Services Former Spouses' Protection Act. Thus, state court orders that are not in accordance with the USFSPA are unenforceable. The DRO for military retirement entered by the Court on May 24, 2011, fails to divide the military retired pay of Respondent in accordance with one of the prescribed formulas of the USFSPA and therefore it is unenforceable, and requires amendment or correction.

11.    Petitioner believes that in drafting the DRO, that Respondent's counsel was attempting to use the following suggested language from the Texas Family Law Practice Manual:

"IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [branch of service], the amount of disposable retired pay calculated as follows: [percentage awarded former spouse] percent multiplied by [percentage of

community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of months of servicemember's service during marriage divided by number of months servicemember has been on active duty on date of divorce] percent multiplied by [percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025 multiplied by number of full months of servicemember's creditable service toward retirement on divorce divided by 12] percent multiplied by [servicemember's high-36 month base pay on date of divorce] divided by Servicemember's monthly gross retired pay at retirement multiplied by Servicemember's monthly disposable retired pay at retirement."

Petitioner now comprehends that two of the values stated in the Domestic Relations Order were miscalculated.

Each of the following facts was known at the time of divorce:

a. The parties were married on June 5, 2004.

b. The parties were divorced on February 3, 2011.

c. During the marriage Respondent served 6 years and 8 months (80 total months) of creditable service towards military retirement.

d. As of the date of divorce Respondent had served 18 years and 2 months (218 total months) of creditable service towards military retirement.

e. Respondent's high-36 month base pay on date of divorce was $3,322.16 .

Since Respondent's retirement on October 31, 2014, the following facts are known:

a. Respondent's monthly gross retired pay at retirement is $2,341.00.

b. Respondent's monthly disposable retired pay at retirement is $2,243.14.

12. That the Domestic Relations Order entered by the Court on May 24, 2011, involves the miscalculation of Petitioner's share can be demonstrated as follows:

Application of formula as written in Domestic Relations Order:

|  |  |  |
|---|---|---|
|  | 0.5 | Percentage of Community Estate's share of military retirement awarded to wife |
| INCORRECT x VALUE | 0.1666 | Number of months of servicemember's service during marriage divided by number of months servicemember has been on actl've duty on date of divorce (80 ÷ 218) |
| INCORRECT x VALUE | 0.35 | 0.025 multiplied by number of full months of servicemember's creditable service toward retirement on divorce divided by 12 (0.025 x 218 ÷ 12) |
| x | $3,322.16 | Servicemember's high-36 month base pay on date of divorce |
| ÷ | $2,341.00 | Servicemember's monthly gross retired pay at retirement |
| x | $2,243.14 | Servicemember's monthly disposable retired pay at retirement |
| = | $92.81 | Incorrect Value for Wife's Share of Military Retirement |

Application of formula as correctly applied to facts of this case:

|  |  |  |
|---|---|---|
|  | 0.5 | Percentage of Community Estate's share of military retirement awarded to wife |
| x | 0.36697 | Number of months of servicemember's service during marriage divided by number of months servicemember has been on active duty on date of divorce (80 ÷ 218) |
| x | 0.45416 | 0.025 multiplied by number of full months of servicemember's creditable service toward retirement on divorce divided by 12 (0.025 x 218 ÷ 12) |
| x | $3,322.16 | Servicemember's high-36 month base pay on date of divorce |
| ÷ | $2,341.00 | Servicemember's monthly gross retired pay at retirement |
| x | $2,243.14 | Servicemember's monthly disposable retired pay at retirement |
| = | $265.27 | Correct Value for Wife's Share of Military Retirement |

**ERROR 1:** The percentage that is stated in the DRO of 16.66 for the calculated value resulting from the number of months of servicemember's service during marriage divided by number of months servicemember has been on active duty on date of divorce, has been miscalculated, and the actual calculated value is 36.697 percent. [80 ÷ 218 = 36.697%]

**ERROR 2:** The percentage that is stated in the DRO of 35.0 for the calculated value of 0.025 multiplied by number of full months of servicemember's creditable service toward retirement on divorce divided by 12, has been miscalculated, and actual calculated value is 45.416 percent. [0.025 x 218 ÷ 12 = 45.416%]

The values used to determine or calculate these numbers were known at the time of divorce but were miscalculated by the attorney's in preparation of the DRO, which was an inadvertent and unintentional mistake.

13. Pursuant to Sec. 9.1045, Texas Family Code, this court retains continuing, exclusive jurisdiction to amend any previously entered domestic relations order to correct the order or clarify the terms of the order to effectuate the division of property ordered by the court. The DRO signed by the Court on May 24, 2011, fails to effectuate the division of property ordered by the Court pursuant to the Rule 11 Agreement signed by the parties and their attorneys of record, and therefore, this amendment or correction is made necessary. Attached is a proposed Corrected Domestic Relations Order for Military Retirement which will correctly effectuate the division of military retirement pursuant to the Rule 11 Agreement of the parties which was adopted by the Court and rendered as its order on February 3, 2011.

<div align="center">PRAYER</div>

Petitioner, TRACIE MARIE SHEFFLER, prays that the Court grant this petition to amend or correct the Domestic Relations Order for Military Retirement, so that the share of Respondent's military retirement awarded to Petitioner is correctly calculated and stated in a manner that can be enforced

<div align="right">
Respectfully submitted,

The Law Offices of
DONAHO & DOCKERY, P.C.
P.O. Box 459
</div>

Floresville, Texas 78114
Tel: 830-393-2700
Fax: 830-393-3029

_____
Kirk Dockery, Attorney in Charge
State Bar No. 05929220
Email: kirkdockery@gmail.com
Scott R. Donaho
State Bar No. 05967755
Email: srdonaho@floresville.net
Attorneys for Tracie Marie Sheffler

## Notice of Hearing

The above motion is set for hearing on January 14, 2015, at 9:00 a.m. in the District Courtroom of the Wilson County Justice Center, 800 10th Street, Floresville, Texas.

_____
Kirk Dockery

## Certificate of Service

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on January 6, 2015.

_____
Kirk Dockery

10201-423.wpd



**APPENDIX 5**

NO. 10-10-0579-CVW

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| TRACIE MARIE PARSON | § | |
| AND | § | 81ST JUDICIAL DISTRICT |
| PAUL MICHAEL PARSON | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| FALIN GALE PARSON AND | § | |
| ROGAN DOW PARSON, | § | |
| CHILDREN | § | WILSON COUNTY, TEXAS |

## ORDER

PAUL MICHAEL PARSON'S *First Plea the Jurisdiction, and Motion to Dismiss and Special Exceptions*, filed January 13, 2015, in opposition to TRACIE MARIE (PARSON) SCHEFFLER'S *Petition to Correct or Amend Domestic Relations Order for Military Retirement*, filed January 8, 2015, is sustained. The *Petition to Correct or Amend Domestic Relations Order for Military Retirement*, is dismissed for lack of jurisdiction.

Signed February 13, 2015

_Russell Wilson_
Russell Wilson, District Judge
218th District Court

Filed 13 Day of Feb. 2015
4:02 PM
Deborah Bryan
Clerk District Court Wilson County, Texas
By _Victoria Tejada_ Deputy

1581631

148

# APPENDIX NO. 2



THE HISTORIC MILAM BUILDING
115 East Travis Street, Suite 333
San Antonio, Texas 78205
PHONE: 210-226-4500
FAX: 210-226-4502

## Form 25-31

*Caveat:* Although the military retirement division language may be included in the body of the decree of divorce, the better practice is to treat military retirement just as any other retirement asset that requires a qualified domestic relations order (QDRO) would be treated. Because a division order of military retirement does not fall under the Employee Retirement Income Security Act, it is not a "qualified" order but simply a domestic relations order (DRO). The Defense Finance and Accounting Service (DFAS) does not require that the order regarding division of the retirement benefits be contained wholly in the decree, and the better practice is to have a separate order that specifically treats the division of the military retired pay and related military benefits. DFAS may require, however, that the person submitting the retirement division order for approval for direct payment (usually the nonmember spouse, since an application signed by that spouse must accompany the order) to the nonmember spouse submit the divorce decree, as well as the DRO that divides the military retirement if it is in a separate order. However, if the DRO specifically states the date that the parties were divorced, DFAS can readily ascertain that the parties are or have previously been divorced, and submitting the decree may be unnecessary.

---

**[Caption. See § 3 of the Introduction in volume 1 of this manual.]**

## Domestic Relations Order
[Military Retirement]

The Court, having entered a decree of divorce [coincident with the signing of this domestic relations order/in this case on **[date]**], finding that the entry of a domestic relations order (DRO) is necessary to effectuate the terms of that decree of divorce, and further finding that the entry of a DRO is appropriate, makes the following specific findings and conclusions of law and enters them as an order in this proceeding.

Findings

The Court finds, in accordance with the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408, as follows:

1. This Court has jurisdiction over **[full name of servicemember]** ("Servicemember"). **[Include one or both of the following:** The residence of Servicemember is in **[city, county]**,

Texas, other than because of military assignment./Servicemember has consented to the jurisdiction of the Court.]

2.     Servicemember and [**full name of former spouse**] ("Former Spouse") were originally married on [**date**], and that marriage lasted for [**number**] years and [**number**] months or more, during which time Servicemember served [**number**] years and [**number**] months or more of creditable service toward retirement.

> The time in months and years that the parties were married during which the servicemember was earning retirement credit should not be stated to be "ten years or more" or "twenty years or more" but should be the actual years and months of overlapping marital service. The ten-year and twenty-year periods are relevant in determining the availability of direct payment from DFAS to the former spouse and the former spouse's entitlement to certain medical and other benefits, respectively. See the practice notes at sections 25.75 and 25.80.

3.     Servicemember's Social Security number is \*\*\*-\*\*-[**last four numbers**], [his/her] address is [**address**], and [his/her] birth date is [**date**].

4.     Former Spouse's Social Security number is \*\*\*-\*\*-[**last four numbers**], [her/his] address is [**address**], and [her/his] birth date is [**date**].

5.     The rights of Servicemember under the Servicemembers Civil Relief Act were fully complied with in this case.

6.     Servicemember [is/is not] retired from the United States [**branch of service**] at the time of this order.

7.     The award of disposable retired pay made to Former Spouse in this order is made in compliance with the Uniformed Services Former Spouses' Protection Act.

> Direct payment is available from DFAS only if the parties were married for at least ten years during which the servicemember was also on active duty for at least ten years or in active reserve status and earned at least ten "good years" for reserve retirement credit. If this is not the case, the order must be written to provide for a constructive trust between the servicemember and the former spouse, and taxes must be dealt with because the servicemember will be taxed.

8.    It is intended by this Court and the parties that the Defense Finance and Accounting Service (DFAS) make the payments due to Former Spouse of [her/his] interest in the disposable retired pay awarded in this order directly to Former Spouse.

*Terms and Definitions*

With respect to the provisions of this DRO, the Court has used and applied the following terms and definitions:

1.    "Retired pay" means monetary pay to which Servicemember is, or may hereafter be, entitled to receive on completion of the requisite number of years of creditable service to be entitled to nondisability retired pay as a result of service in the United States Armed Forces (active duty, reserve component, or national guard), whether called retired pay, retainer pay, or retirement pay.

2.    "Disposable retired pay" has the meaning provided in the Uniformed Services Former Spouses' Protection Act (10 U.S.C. § 1408 *et seq.*).

3.    "USFSPA" means the Uniformed Services Former Spouses' Protection Act (10 U.S.C. § 1408 *et seq.*) in effect on the date of the parties' divorce.

4.    "Defense Finance and Accounting Service" (DFAS) means, refers to, and includes the Secretary of the Department of Defense, the Director of the DFAS, the designated agent of either of these, and other appropriate subdivisions of the United States Government.

5.   "COLA" means the cost-of-living adjustment increases that are made annually to a military retiree's retired pay pursuant to 10 U.S.C. § 1401a.

*Award to Former Spouse*

> Select one of the following.

> Use the following when the former spouse is to receive *only* a fixed-dollar award. The former spouse will not receive any COLAs thereafter authorized by Congress if a fixed dollar amount is awarded.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [**branch of service**], the sum of [**number**] dollars ($[**amount**]) of Servicemember's monthly *disposable* retired pay.

> When representing the servicemember, use the following for an active duty servicemember who entered the service *before* September 8, 1980.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [**branch of service**], the amount of retired pay then equal to [**percentage awarded former spouse (usually 50 percent)**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of months of servicemember's service during marriage** *divided by* **number of months servicemember has been on active duty on date of divorce**] percent *multiplied by* [**percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025** *multiplied by* **number of full months of servicemember's creditable service toward retirement on divorce** *divided by* **12**] percent *multiplied by* [**servicemember's base pay on date of divorce**] *divided by* the amount of the monthly gross retired pay that Servicemember is entitled to receive at retirement *multiplied by* the amount of Servicemember's monthly *disposable* retired pay at retirement.

When representing a servicemember who has not been in the military for twenty years, calculate the percentage of the servicemember's entitlement to retired pay taking into account the provisions of the Temporary Early Retirement Authority (TERA), 10 U.S.C. § 1293, which will necessarily have the effect of reducing the former spouse's share of the anticipated retired pay on divorce. See James N. Higdon, Military Retirement and Divorce, chapter 63.2, page 13, State Bar of Texas 35th Advanced Family Law Course, August 2009, for a discussion of the application of TERA to the calculation of military retired pay in such circumstances.

Or

When representing the former spouse, use the following for an active duty servicemember who entered the service *before* September 8, 1980.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [**branch of service**], the amount of retired pay then equal to [**percentage awarded former spouse (usually 50 percent)**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of months of servicemember's service during marriage *divided by* number of months servicemember has been on active duty on date of divorce**] percent *multiplied by* [**percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025 *multiplied by* number of full months of servicemember's creditable service toward retirement on divorce *divided by* 12**] percent *multiplied by* the base pay of a servicemember with Servicemember's pay grade and longevity on the date of divorce determined on the date of Servicemember's retirement *divided by* Servicemember's monthly gross retired pay at retirement *multiplied by* Servicemember's monthly *disposable* retired pay at retirement.

© STATE BAR OF TEXAS

> When representing the former spouse, determine the former spouse's share of the retired pay on divorce as of the date of retirement rather than the date of divorce, limited, however, to the pay grade and longevity of the servicemember on the date of divorce. Otherwise the former spouse will not derive the benefit of the annual active duty COLAs (in accordance with *Berry v. Berry*, 647 S.W.2d 945 (Tex. 1983)) that are authorized by Congress. See James N. Higdon, Military Retirement and Divorce, chapter 63.2, State Bar of Texas 35th Advanced Family Law Course, August 2009, for a discussion of this issue in the calculation of military retired pay.

Or

> When representing the servicemember, use the following for an active duty servicemember who entered the service *on or after* September 8, 1980.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [**branch of service**], the amount of disposable retired pay calculated as follows: [**percentage awarded former spouse**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of months of servicemember's service during marriage** *divided by* **number of months servicemember has been on active duty on date of divorce**] percent *multiplied by* [**percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025** *multiplied by* **number of full months of servicemember's creditable service toward retirement on divorce** *divided by* **12**] percent *multiplied by* [**servicemember's high-36 month base pay on date of divorce**] *divided by* Servicemember's monthly gross retired pay at retirement *multiplied by* Servicemember's monthly *disposable* retired pay at retirement.

Or

                                          © STATE BAR OF TEXAS

> When representing the former spouse, use the following for an active reservist servicemember who entered the service *on or after* September 8, 1980.
>
> Because the servicemember's high-36 month base pay at the time of retirement *for his or her pay grade and longevity on the date of divorce* cannot be determined on the date of divorce but must wait for his or her retirement, it will probably be necessary to "clarify" the DRO at or after the date the servicemember retires because DFAS may not accept for processing an order that contains the "high-36 month base pay at the time of retirement" hypothetical. Therefore, both parties should be notified that a clarification suit will probably have to be filed and a clarifying order entered at that time.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States **[branch of service]**, the amount of disposable retired pay calculated as follows: **[percentage awarded former spouse]** percent *multiplied by* **[percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of months of servicemember's service during marriage *divided by* number of months servicemember has been on active duty on date of divorce]** percent *multiplied by* **[percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025 *multiplied by* number of full months of servicemember's creditable service toward retirement on divorce *divided by* 12]** percent *multiplied by* the high-36 month base pay of a servicemember with Servicemember's pay grade and longevity on the date of divorce determined on the date of Servicemember's retirement *divided by* Servicemember's monthly gross retired pay at retirement *multiplied by* Servicemember's monthly *disposable* retired pay at retirement.

> Or

> Use the following for an active duty servicemember who is retired at the time of divorce whether representing the servicemember or the former spouse.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember **[percentage awarded former spouse (usually 50 percent)]** percent *multiplied by* **[percentage of community interest in servicemember's military retired pay**

entitlement, that is, **number of months of servicemember's service during marriage** *divided by* **total number of months of servicemember's service at retirement**] percent *multiplied by* Servicemember's monthly *disposable* retired pay.

<div style="border:1px solid;">Or</div>

> When representing the servicemember, use the following for an active reservist servicemember who entered the service *before* September 8, 1980.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [**branch of service**], the amount of retired pay then equal to [**percentage awarded former spouse (usually 50 percent)**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of retirement points earned during marriage** *divided by* **total number of retirement points earned by servicemember on date of divorce**] percent *multiplied by* [**percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025** *multiplied by* **servicemember's total retirement points on divorce** *divided by* **360**] percent *multiplied by* [**servicemember's base pay on date of divorce**] *divided by* Servicemember's monthly gross retired pay at retirement *multiplied* by Servicemember's monthly *disposable* retired pay at retirement.

<div style="border:1px solid;">Or</div>

> When representing the former spouse, use the following for an active reservist servicemember who entered the service *before* September 8, 1980.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [**branch of service**], the amount of retired pay then equal to [**percentage awarded former spouse (usually 50 percent)**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of retirement points earned**

                                    © STATE BAR OF TEXAS

during marriage **divided by total number of retirement points earned by servicemember on date of divorce**] percent *multiplied by* [**percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025 *multiplied by* servicemember's total retirement points on divorce *divided by* 360**] percent *multiplied by* the base pay of a servicemember with Servicemember's pay grade and longevity on the date of divorce determined on the date of Servicemember's retirement *divided by* Servicemember's monthly gross retired pay at retirement *multiplied by* Servicemember's monthly *disposable* retired pay at retirement.

> Or

> When representing the servicemember, use the following for an active reservist servicemember who entered the service *on or after* September 8, 1980.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [**branch of service**], the amount of disposable retired pay calculated as follows: [**percentage awarded former spouse**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of retirement points earned during marriage *divided by* total number of retirement points earned by servicemember on date of divorce**] percent *multiplied by* [**percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025 *multiplied by* servicemember's total retirement points on divorce *divided by* 360**] percent *multiplied by* [**servicemember's high-36 month base pay on the date of divorce**] *divided by* Servicemember's monthly gross retired pay at retirement *multiplied by* Servicemember's monthly *disposable* retired pay at retirement.

> Or

> When representing the former spouse, use the following for an active reservist servicemember who entered the service *on or after* September 8, 1980.
>
> Because the servicemember's high-36 month base pay at the time of retirement *for his or her pay grade and longevity on the date of divorce* cannot be determined on the date of divorce but must wait for his or her retirement, it will probably be necessary to "clarify" the DRO at or after the date the servicemember retires, because DFAS may not accept for processing an order that contains the "high-36 month base pay at the time of retirement" hypothetical. Therefore, both parties should be notified that a clarification suit will probably have to be filed and a clarifying order entered at that time.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [**branch of service**], the amount of disposable retired pay calculated as follows: [**percentage awarded former spouse**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of retirement points earned during marriage *divided by* total number of retirement points earned by servicemember at divorce**] percent *multiplied by* [**percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025 *multiplied by* servicemember's total retirement points on divorce *divided by* 360**] percent *multiplied by* the high-36 month base pay of a servicemember with Servicemember's pay grade and longevity on the date of divorce determined on the date of Servicemember's retirement *divided by* Servicemember's monthly gross retired pay at retirement *multiplied by* Servicemember's monthly *disposable* retired pay at retirement.

<div align="center">

Or

</div>

> Use the following for a reservist servicemember who is retired *and* receiving retired pay at the time of divorce whether representing the servicemember or the former spouse.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember [**percentage awarded former spouse (usually 50 percent)**] percent *multiplied by* [**number of servicemember's retirement points earned during marriage**

*divided by* **total number of servicemember's retirement points at retirement]** percent *multiplied*

*by* Servicemember's monthly ***disposable*** retired pay.

<div align="center">

| Or |
|----|

</div>

**Important:** The attorney representing a servicemember who is retired but *not* accruing points or receiving retired pay will want to have the "retired pay" determined on the date of divorce rather than using a percentage of retired pay at retirement. In the latter formulation, the former spouse would receive the benefit of the cost-of-living increases that accrue from the date of the "retirement" or divorce to the date when the service-member begins receiving retired pay, usually at age sixty. (In 2009, Congress passed a law to allow reservists and guards-men who were recalled to and performed active duty on and after January 30, 2008, to be entitled to receive retired pay earlier than age sixty, at their election.)

Use the following for a reservist servicemember who is retired and not accruing retirement points *but not* receiving retired pay at the time of divorce, that is, one who is no longer a drilling reservist but has not yet become entitled to receive retired pay.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember **[percentage awarded former spouse (usually 50 percent)]** per-cent *multiplied by* **[percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of servicemember's retirement points earned during marriage *divided by* total number of servicemember's retirement points at divorce]** per-cent *multiplied by* **[0.025 *multiplied by* servicemember's total retirement points earned on date of divorce *divided by* 360]** percent *multiplied by* **[servicemember's high-36 month base pay at divorce]** *divided by* Servicemember's ***gross*** retired pay at retirement *multiplied by* Service-member's ***disposable*** retired pay at retirement.

<div align="center">

| Or |
|----|

</div>

Use the following when representing the former spouse of a reservist servicemember who is retired and not accruing retire-ment points *but not* receiving retired pay at the time of divorce.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember [**percentage awarded former spouse (usually 50 percent)**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of servicemember's retirement points earned during marriage *divided by* total number of servicemember's retirement points at divorce**] percent *multiplied by* Servicemember's *disposable* retired pay at retirement.

> Select one of the following COLA provisions.

> Use the following if the former spouse is to receive COLAs.

IT IS FURTHER ORDERED that DFAS, to the extent allowed by law, pay Former Spouse each month the calculated percentage of Servicemember's disposable retired pay at retirement, together with all COLAs applicable thereto, payable IF, AS and WHEN received by Servicemember.

> Use the following if the former spouse is *not* to be awarded and receive COLAs.

IT IS FURTHER ORDERED that DFAS, to the extent allowed by law, pay Former Spouse each month the fixed dollar award out of Servicemember's disposable retired pay at retirement, payable IF, AS and WHEN received by Servicemember, but Former Spouse shall not be entitled to receive any COLAs related thereto.

> Continue with the following when representing the former spouse if the court will include this language, since it protects the interest being awarded to the former spouse from the effects of VA waiver and/or the servicemember's application for combat-related special compensation (CRSC) (10 U.S.C. § 1413a).

IT IS FURTHER ORDERED AND DECREED that the award herein shall in no event be less than [**number**] dollars ($[**amount**]) per month, together with all COLAs hereafter applicable thereto, of Servicemember's retired pay. The Court recognizes, in making this award, that DFAS, pursuant to the USFSPA, is authorized to pay Former Spouse only the herein-

awarded percentage of Servicemember's "disposable retired pay," and this Order, as to DFAS, should be so construed.

> Include the following if applicable.
>
> If the former spouse is to be awarded the right to receive the servicemember's Survivor Benefit Plan (SBP) annuity benefits, a decision must be made about who is to pay for it. If the former spouse is to pay the full cost of the SBP premiums, the simplest way to accomplish this result is to adjust the former spouse's percentage share of the disposable retired pay. The attorney who is not adequately informed on this issue should consult with someone who fully understands this aspect of retired pay calculation before reaching an agreement on this adjustment. If the former spouse's share is to be adjusted to provide for the former spouse's paying all of the cost of the monthly SBP premium, something like the following should be inserted at this point in the order unless the servicemember is already retired.

IT IS FURTHER ORDERED that the foregoing calculated percentage awarded Former Spouse shall further be reduced, as necessary, to provide for Former Spouse's payment of all of the monthly Survivor Benefit Plan premium cost.

> Continue with the following.

IT IS FURTHER ORDERED that the rest, residue, and remainder of the military retired pay of Servicemember is the sole and separate property of Servicemember.

*Amounts in Excess of 50 Percent*

IT IS ORDERED that if the dollar amount or award (or a larger sum as increases take effect) exceeds 50 percent of the disposable retired pay, DFAS shall pay to Former Spouse the maximum amount allowable under the USFSPA and Servicemember shall be responsible for paying the balance of the award each month to Former Spouse, and it is accordingly ORDERED.

If DFAS is not allowed to pay Former Spouse the full amount of Former Spouse's entitlement pursuant to this order for any reason, Servicemember is hereby ORDERED, within seven days of being notified by Former Spouse that Former Spouse is not receiving the full

amount of Former Spouse's interest in the retired pay, to execute and deliver to DFAS all forms or documents that may then be necessary to effect an allotment payable to Former Spouse in the amount of the difference between the amount being paid directly to Former Spouse by DFAS and the full amount of Former Spouse's interest in the retired pay. Servicemember is FURTHER ORDERED to keep and maintain in full force and effect any allotment required by this provision, payable to Former Spouse at [**address, city, state, zip code**], or such other address as Former Spouse may hereafter specify in writing, until such time as Former Spouse begins receiving Former Spouse's full separate-property share of Servicemember's disposable retired pay as awarded herein directly from DFAS. That allotment may be canceled by Servicemember if and when Former Spouse begins receiving, and for as long as Former Spouse is receiving, Former Spouse's full separate-property share of Servicemember's disposable retired pay directly from DFAS, but only in that event or to avoid double payment of sums.

> Include the following paragraph if applicable.

Since Former Spouse has been awarded the right to receive that share attributable to the interest awarded to Former Spouse herein of any and all COLAs or other increases in the monthly disposable retired pay hereinafter paid and if Former Spouse is not receiving from DFAS [her/his] full share of the retired pay herein awarded to Former Spouse, if and when COLAs are made to the retired pay received by Servicemember, Servicemember is hereby ORDERED to execute and deliver to DFAS all forms or documents that may then be necessary to effect an increase in the allotment to Former Spouse in the amount equal to the dollars-and-cents equivalent of that COLA attributable to Former Spouse's share of that disposable retired pay. Servicemember is hereby ORDERED to increase the allotment then in effect or, if applicable, initiate an allotment pursuant to the foregoing paragraph, within seven working days of the date Servicemember is notified by DFAS of the effective date of each COLA to the monthly retired pay payment.

*Constructive Trust*

IT IS FURTHER ORDERED that Servicemember be and is hereby designated a constructive trustee for the benefit of Former Spouse for the purpose of receiving the retired pay awarded herein to Former Spouse as Former Spouse's sole and separate property, and Servicemember be and is hereby ORDERED, on receipt thereof, to deliver by first-class mail to Former Spouse at [her/his] last known address by negotiable instrument that portion of each monthly retired pay payments awarded to Former Spouse herein not paid directly (or by allotment) by DFAS within three days of the receipt of any such payments by Servicemember. All payments made directly to Former Spouse by DFAS shall be a credit against this obligation.

For purposes of this order, Servicemember is specifically directed, on penalty of contempt, to pay Former Spouse's interest in the disposable retired pay as ordered in this order, and IT IS SO ORDERED. Servicemember is specifically directed that [he/she] is not relieved of that obligation except to the extent that [he/she] is specifically notified that 100 percent of Former Spouse's interest in the retirement benefit has been directly paid by DFAS, and IT IS SO ORDERED.

IT IS FURTHER ORDERED that any election of benefits that may hereafter be made by Servicemember shall not reduce the amount equal to the percentage of the retired pay or the amount of the retired pay the Court has herein awarded to Former Spouse, except as provided by federal law *and* prohibited from being changed by a state court order. In this regard, IT IS FURTHER ORDERED that Servicemember shall not merge [his/her] military retired pay with any other pension and shall not pursue any course of action that would defeat, reduce, or limit Former Spouse's right to receive Former Spouse's full separate-property share of Servicemember's retired pay as awarded in this order, unless otherwise ordered herein.

*Death*

IT IS ORDERED that the payment of the retired pay awarded in this order to Former Spouse shall continue until the death of Servicemember or Former Spouse.

*Retiree Account Statements and Privacy Waiver*

IT IS FURTHER ORDERED that Servicemember shall deliver by first class mail to Former Spouse at [**former spouse's mailing address**], or such other address as Former Spouse may hereafter specify in writing, a true and correct legible copy of each Retiree Account Statement received by Servicemember from DFAS within five days of its receipt.

IT IS ORDERED that Servicemember hereby waives any privacy or other rights as may be required for Former Spouse to obtain information relating to Servicemember's date of retirement, last unit assignment, full pay grade, past or present monthly annuity payments, or other information that may be required to enforce this award or to revise this order to make it enforceable.

> Include the following if applicable.

*Retirement*

IT IS ORDERED that Servicemember shall notify Former Spouse of [his/her] application for retired pay, and provide Former Spouse with a true copy of [his/her] Application for Retired Pay Benefits, on the date [he/she] applies for those benefits. This notification shall be mailed by Servicemember to Former Spouse at [her/his] last known address. Servicemember is FURTHER ORDERED to provide to Former Spouse a true and correct copy of the first Retiree Account Statement received by [him/her] within five days of its receipt.

> Continue with the following.

*Application for Direct Payment of Retired Pay*

Former Spouse is hereby directed to apply for Former Spouse's entitlement to a portion of Servicemember's retired pay by contacting the DFAS Legal Department, completing the Application for Former Spouse Payments from Retired Pay (DD Form 2293), and delivering it along with a certified copy of this DRO (certified within ninety days of its delivery to DFAS) and a photocopy of the parties' marriage certificate to: **DFAS-HGA-CL, Assistant General Counsel for Garnishment Operations, P.O. Box 998002, Cleveland, Ohio 44199-8002** by certified mail, return receipt requested.

> DD Form 2293 can be accessed and downloaded at www
> .dtic.mil/whs/directives/infomgt/forms/eforms/dd2293.pdf.

*Taxes*

IT IS FURTHER ORDERED that Former Spouse shall include in [her/his] gross income for [her/his] taxable years of receipt all retired pay received by Former Spouse pursuant to this order, and, to the extent benefits are payable to Former Spouse by DFAS, Servicemember shall not include such benefits in Servicemember's gross income for such taxable years.

*Survivor Benefit Plan*

---

**Important:** If being awarded, it is **mandatory** that the order state clearly that Survivor Benefit Plan (SBP) benefit coverage is being awarded to the former spouse, to the parties' children, or to both, as applicable.

Payment of the SBP monthly premiums is deducted from the gross retired pay by DFAS *before DFAS applies the former spouse percentage, that is, divides the retired pay between the former spouse and the servicemember.* If the attorney does not want the spouses to share in the cost and wants the former spouse to pay all of the cost of the SBP annuity, the premium should be deducted from the former spouse's share by reducing the percentage, or the former spouse can pay the servicemember each month (or other frequency period) for the coverage. Ensure that the former spouse pays only his or her share of the premium. For instance, if the former spouse is not receiving 50 percent of total retired pay, the former spouse will not be paying 50 percent of the premium, but will be paying only the percentage of the disposable pay that has been awarded to the former spouse. If the former spouse remarries before age fifty-five, his or her entitlement to be a SBP beneficiary is suspended for the duration of that marriage, but the former spouse can, on the termination of that marriage, petition DFAS for reinstatement of the suspended benefit. During the period of the suspended benefit, DFAS should, if timely notified, also suspend the payment of the monthly premiums.

A servicemember may designate only one class of beneficiary for the survivor benefits. Thus, if a former spouse beneficiary has been designated, a new spouse cannot be designated as a "spouse beneficiary" unless the former spouse is no longer an eligible beneficiary. Also, the servicemember is not permitted to award a fractional interest to the former spouse and leave a portion for a future spouse. DFAS will pay the survivor benefit to only the designated beneficiary(ies), i.e., spouse, spouse and children, former spouse or former spouse and children, on the death of the servicemember. Generally, the designation, once made, is irrevocable.

---

Select one of the following.

---

Use the following paragraph if the servicemember is retired, the spouse is currently designated as a spouse beneficiary of servicemember's SBP, and the spouse is to be redesignated as a former spouse beneficiary.

---

The Court further finds that Former Spouse is presently named a spouse beneficiary of Servicemember's Armed Forces Survivor Benefit Plan (which is deemed to include the Reserve Component Survivor Benefit Plan, if applicable) and that Servicemember's election to provide the Survivor Benefit Plan benefits to Former Spouse should be continued by

Former Spouse's being designated as a former spouse beneficiary and that Former Spouse's designation as a former spouse beneficiary should not hereafter be modified, amended, withdrawn, reduced, or altered by Servicemember during Former Spouse's lifetime, and IT IS SO ORDERED.

| Or |

> Use the following paragraph if the servicemember is *not* retired and the spouse is to be designated as a former spouse beneficiary of the SBP.

The Court further finds that Former Spouse should be designated as a former spouse beneficiary of Servicemember's Armed Forces Survivor Benefit Plan (which is deemed to include the Reserve Component Survivor Benefit Plan, if applicable) and that Servicemember is ordered to designate Former Spouse as a former spouse beneficiary of the Survivor Benefit Plan and that Former Spouse's designation as a former spouse beneficiary should not hereafter be modified, amended, withdrawn, reduced, or altered by Servicemember during Former Spouse's lifetime, and IT IS SO ORDERED.

| Or |

> If an election is made to have the parties' children covered as beneficiaries of the SBP, recognize that the coverage will continue only as long as one or more of the children are under the age of eighteen; the coverage can be continued until age twenty-one if the child(ren) are enrolled in college or another qualifying educational institution. If electing such a coverage, use the following as applicable.

The Court further finds that [the parties' child[ren]/Former Spouse and the parties' child[ren]] should be designated as [a child beneficiary/child beneficiaries/former spouse and child beneficiaries] of Servicemember's Armed Forces Survivor Benefit Plan (which is deemed to include the Reserve Component Survivor Benefit Plan, if applicable) and that Servicemember is ordered to designate [the parties' child[ren]/Former Spouse and the parties' child[ren]] as [a child beneficiary/child beneficiaries/former spouse and child beneficiaries] of

the Survivor Benefit Plan and that the designation of [the child[ren]/Former Spouse and the child[ren]] as [a child beneficiary/child beneficiaries/former spouse and child beneficiaries] should not hereafter be modified, amended, withdrawn, reduced, or altered by Servicemember during the child[ren]'s eligibility [**include if applicable:** or Former Spouse's lifetime], and IT IS SO ORDERED.

> Or

> Although it is not necessary to specifically provide that there will be no SBP former spouse coverage for the former spouse since the failure to award the SBP benefit at the time of divorce is res judicata on the issue (*In re A.E.R.*, 2006 WL 349695 (Tex. App.—Fort Worth 2006) (mem. op.)), it is nevertheless recommended that the following paragraph be included to specifically address the benefit.

The Court further finds that Former Spouse should not be designated as a former spouse beneficiary of Servicemember's Armed Forces Survivor Benefit Plan, and IT IS SO ORDERED.

> Continue with the following if the survivor benefit is awarded.

IT IS THEREFORE ORDERED that Servicemember shall elect to designate Former Spouse as a former spouse beneficiary of Servicemember's Survivor Benefit Plan. IT IS FURTHER ORDERED that, pursuant to this order, Former Spouse be and is hereby deemed designated, to the extent permitted by law, a former spouse beneficiary of Servicemember's Survivor Benefit Plan to receive

> Include one of the following.

the highest Survivor Benefit Plan entitlement allowed by law.

> Or

[**number**] dollars ($[**amount**]) per month.

> Or

the percentage equal to the percentage of Servicemember's disposable retired pay awarded Former Spouse in this order.

> Or

**[set out other formula for determination of share].**

> Continue with the following.

To the extent that Servicemember fails or otherwise refuses to cooperate in filing the documents required to elect to designate Former Spouse as a former spouse beneficiary of Servicemember's Survivor Benefit Plan, Former Spouse is directed to apply for Former Spouse's entitlement to be deemed a former spouse beneficiary of Servicemember's Armed Forces Survivor Benefit Plan by notifying the DFAS Legal Department of this Court's deemed election pursuant to 10 U.S.C. § 1447 *et seq.*, completing a DD Form 2656-10 to effect the deemed election, and sending it, along with a certified copy of this order, to **U.S. Military Annuitant Pay, P.O. Box 7131, London, KY 40742-7131** by certified mail, return receipt requested. *Former Spouse's failure to register [her/his] deemed election within one year of the date this DRO is signed may, if not will, forever bar such an election for Former Spouse.*

IT IS ORDERED that Servicemember shall not during Former Spouse's lifetime modify, amend, withdraw, or in any other manner alter the election to name Former Spouse as a former spouse beneficiary of Servicemember's Armed Forces Survivor Benefit Plan.

> DD Form 2656-1, the form for a servicemember to make a voluntary election for former spouse and/or child coverage, can be accessed and downloaded at www.dtic.mil/whs/directives/infomgt/forms/eforms/dd2656-1.pdf.
>
> DD Form 2656-10, the form for a former spouse to effect a deemed election for former spouse and/or child coverage, can be accessed and downloaded at www.dtic.mil/whs/directives/infomgt/forms/eforms/dd2656-10.pdf.
>
> One of these forms must be sent to DFAS at the London KY address, along with a certified copy of the decree of divorce and/or DRO, to register the former spouse as a former spouse beneficiary within one year of the date of the signing of the decree of divorce. Failure to do so within the one-year period will probably bar the former spouse from former spouse coverage.

*Medical and Commissary Benefits*

> The following provision for medical and commissary benefits is applicable only under certain circumstances. See the practice notes at section 25.80.

The Court further finds that Former Spouse is entitled to receive medical and dental care under the terms of 10 U.S.C. section 1071 *et seq.* and to commissary and post exchange privileges to the same extent and on the same basis as a surviving spouse of a retired member of the United States Armed Forces following the date the Final Decree of Divorce is signed.

*Continued Jurisdiction and Clarification*

> The following provision may be added if the parties were married for ten or more years during which the servicemember performed ten or more years of active/qualifying reserve duty. Otherwise, it should not be included in the order since DFAS will not, under current law, pay the former spouse's share of retired pay directly to her/him in those circumstances.

Although the Court and the parties intend that DFAS make direct payments to Former Spouse of Former Spouse's interest in the disposable retired pay awarded herein, IT IS FURTHER ORDERED that, if this order does not qualify for direct payment, Servicemember shall cooperate and do all things necessary to aid Former Spouse in obtaining a clarification of this order that will qualify for direct payment of Former Spouse's interest in the disposable retired

pay awarded in this order. IT IS FURTHER ORDERED that this Court reserves jurisdiction to enter such a clarifying order.

<div style="text-align: center;">

Continue with the following.

</div>

Without affecting the finality of the Final Decree of Divorce or this Domestic Relations Order, this Court expressly reserves the right pursuant to section 9.101 *et seq.* of the Texas Family Code to make orders necessary to clarify, amend, and enforce this order, and IT IS SO ORDERED.


SIGNED on _____.


_____
JUDGE PRESIDING

*[Reserved]*

© STATE BAR OF TEXAS

# APPENDIX NO. 3



THE HISTORIC MILAM BUILDING
115 East Travis Street, Suite 333
San Antonio, Texas 78205
PHONE: 210-226-4500
FAX: 210-226-4502

*Disclaimer- this publication is intended to provide guidance only, and is not legally binding. Legal authority may be found at Title 10, United States Code, Section 1408, and the DoD Financial Management Regulation, Volume 7B, Chapter 29, available at* http://comptroller.defense.gov/Portals/45/documents/fmr/current/07b/Volume_07b.pdf

# GUIDANCE ON DIVIDING MILITARY RETIRED PAY

GARNISHMENT OPERATIONS
DEFENSE FINANCE AND ACCOUNTING SERVICE (DFAS)
CLEVELAND, OHIO
DFAS-HGA/CL
P.O. BOX 998002
CLEVELAND, OH 44199-8002
1-888-332-7411
FAX 1-877-622-5930 OR
Website http://www.dfas.mil/garnishment/retiredmilitary.html

TABLE OF CONTENTS

Page
I. HISTORY 2

II. DOCUMENTS NEEDED TO DIVIDE MILITARY RETIRED PAY 2

III. REQUIREMENTS FOR ENFORCEABILITY UNDER USFSPA 3

A. Servicemembers Civil Relief Act 3
B. Requirements that apply to retired pay as property awards only 3
IV. LANGUAGE DIVIDING MILITARY RETIRED PAY 4
A. Fixed dollar amount or percentage awards 4
B. Introduction to formula any hypothetical retired pay awards 6
C. Formula awards 6
D. Hypothetical retired pay awards 7
E. Examples of unacceptable former spouse award language 12
F. Correcting deficient awards 13
V. ACKNOWLEDGEMENT 13
APPENDIX A - MILITARY RETIRED PAY DIVISION ORDER 16 APPENDIX B - NOTARIZED STATEMENT CLARIFYING COURT ORDER 19 2

# Uniformed Services Former Spouses' Protection Act (Dividing Military Retired Pay)

## I. HISTORY.

The Uniformed Services Former Spouses' Protection Act (USFSPA) was passed by Congress in 1982. The USFSPA gives a State court the authority to treat military retired pay as marital property and divide it between the spouses. Congress' passage of the USFSPA was prompted by the United States Supreme Court's decision in *McCarty v. McCarty* in 1981.[1]

1 McCarty v. McCarty, 453 U.S. 210 (1981)
2 Id. at 232.
3 *See* Servicemembers Civil Relief Act, 50 U.S.C. App. § 501 et seq.
4 10 U.S.C. §1408(b)(1)(D).
5 10 U.S.C. § 1408(c)(4).
6 10 U.S.C. § 1408 (e)(1).
7 10 U.S.C. § 1408 (d)(2).
8 10 U.S.C. § 1408 (a)(2)(C).
9 See 10 U.S.C. § 1408(a)(2)(B); 10 U.S.C. § 1408(d)(1).

The *McCarty* decision effectively precluded state courts from dividing military retired pay as an asset of the marriage. Justice Blackmun, writing for the majority, stated that allowing a state to divide retired pay would threaten "grave harm to 'clear and substantial' federal interests."[2] Accordingly, the Supremacy Clause of Article VI preempted the State's attempt to divide military retired pay. Congress, by enacting the USFSPA, clarified it's intent that State courts have the power to divide what can be the largest asset of a marriage.

With the passage of the USFSPA, Congress took the opportunity to set forth various requirements to govern the division of military retired pay. Congress sought to make a fair system for military members, considering that their unavailability and deployment status often exposes them to difficulties with civil litigation. Therefore, if a member is divorced while on active duty, the requirements of the Servicemembers Civil Relief Act (SCRA)[3] must be met before an award dividing military retired pay can be enforced under the USFSPA.[4] Additionally, the USFSPA contains its own jurisdictional requirement for the division of retired pay as property.[5] It limits the amount of the member's retired pay which can be paid to a former spouse to 50% of the member's disposable retired pay (gross retired pay less authorized deductions).[6] It requires that the parties must have been married 10 years or more while the member performed at least 10 years of service creditable towards retirement eligibility before a division of retired pay is enforceable under the USFSPA.[7] It specifies how an award of military retired pay must be expressed.[8] It also provides a former spouse with a means of enforcing an alimony and/or child support award.[9]

## II. DOCUMENTS NEEDED TO APPLY FOR DIVISION OF MILITARY RETIRED PAY.

The USFSPA defines a "court order" dividing military retired pay enforceable under the Act as a "final decree of divorce, dissolution, annulment, or legal separation issued by a court, or 3

a court ordered, ratified, or approved property settlement incident to such a decree."[10] This also includes an order modifying a previously issued "court order."

10 10 U.S.C. § 1408(a)(2).
11 Department of Defense Financial Management Regulation (DoDFMR), volume 7B, subparagraph 290401.A. Available over the Internet at https://comptroller.defense.gov/fmr/current/07b/Volume_07b.pdf.
12 50 U.S.C. App. § 521(b).

13 50 U.S.C. App. § 521(g)(2).

Since military retired pay is a Federal entitlement, and not a qualified pension plan, there is no requirement that a Qualified Domestic Relations Order (QDRO) be used. As long as the award is set forth in the divorce decree or other pertinent court order in an acceptable manner, that is sufficient. It is also not necessary to judicially join the "member's plan" as a part of the divorce proceeding. There is no Federal statutory authority for this. The award may also be set forth in a court ratified or approved separation agreement, or other court order issued incident to the divorce.

In order to submit an application for payments under the USFSPA, a former spouse needs to submit a copy of the applicable court order certified by the clerk of court, along with a completed application form (DD Form 2293).[11] Instructions, including designated agent names and addresses, are on the back of the DD Form 2293. The Defense Finance and Accounting Service (DFAS) is the designated agent for all uniformed military services. The Form and instructions can be downloaded from our DFAS website at www.dfas.mil/garnishment/ retiredmilitary.html.

## III. . USFSPA REQUIREMENTS WHEN THE FORMER SPOUSE HAS APPLIED FOR DIRECT PAYMENTS THROUGH DFAS

### A. Servicemembers Civil Relief Act.

The provision of the SCRA that has primary application to the USFSPA and the division of military retired pay is the section concerning default judgments against active duty service members. This section requires that if an active duty defendant fails to make an appearance in a legal proceeding, the plaintiff must file an affidavit with the court informing the court of the member's military status. The court shall appoint an attorney to represent the interests of the absent defendant.[12] A member has 90 days after separation from active duty service to apply to a court rendering a judgment to re-open a case on SCRA grounds.[13] Thus, this provision of the SCRA does not apply to a member with an active duty divorce where the member has been retired for more than 90 days.

### B. Requirements that Apply to Retired Pay as Property Awards Only (not child support or alimony)

### (1) The 10/10 requirement. 4

This is a "killer" requirement. For a division of retired pay as property award to be enforceable by direct payments under the USFSPA, the former spouse must have been married to the member for a period of 10 years or more during which the member performed at least 10 years of service creditable towards retirement eligibility.[14] This requirement does not apply to the Court's authority to divide military retired pay, but only to the ability of the former spouse to enforce the award by direct payments from DFAS. This is a statutory requirement for direct payments, and not a personal right of the member that can be waived. Although this requirement was probably included in the USFSPA to protect members, we have had more complaints about it from members than from former spouses. Assuming that a member intends to meet his or her legal obligations, the member would rather have DFAS pay the former spouse directly as it would lessen contact with the former spouse. Also, if DFAS pays the former spouse directly, the former spouse's USFSPA payments would be reported on her or his own Form 1099-R, instead of all taxable retired pay being reported on the member's Form 1099-R.

[14] 10 U.S.C. § 1408(d)(2).

15 See Baka v. United States, 74 Fed. Cl. 692,698 (2006). See also DoDFMR, vol. 7B, subparagraph 290604.A.3.

If we cannot determine from the court order whether the 10/10 requirement has been met, we will ask the former spouse to provide a copy of the parties' marriage certificate. A recitation in the court order such as, "The parties were married for 10 years or more while the member performed 10 years or more of military service creditable for retirement purposes" will satisfy the 10/10 requirement, unless the marriage certificate shows otherwise.

## (2) USFSPA Jurisdiction.

The USFSPA's jurisdictional requirement is found in 10 U.S.C. § 1408(c)(4). This is another "killer" requirement. If it is not met, the former spouse's application for direct payment of retired pay as property under the USFSPA will be rejected. For a court to have the authority to divide military retired pay, the USFSPA requires that the court have "(c)(4)" jurisdiction over the military member in one of three ways. One way is for the member to consent to the jurisdiction of the court. The member indicates his or her consent to the court's jurisdiction by taking some affirmative action with regard to the legal proceeding, such as filing any pleading in the case.[15] Simply receiving notice of filing of the divorce complaint or petition is not sufficient. Consent is the most common way for a court to have (c)(4) jurisdiction over a member.

The other ways for the court to have (c)(4) jurisdiction is for the member to be a resident of the State at the time of divorce other than because of his or her military assignment, or for the court to find that the member was domiciled in the particular State at the time of the divorce. Now, the key with regard to domicile is that the court makes this determination, and it should be noted in the divorce decree.

## IV. LANGUAGE DIVIDING MILITARY RETIRED PAY. 5

## A. Fixed dollar amount or percentage awards.

The amount of a former spouse's award is entirely a matter of state law. However, in order for the award to be enforceable under the USFSPA, it must be expressed in a manner consistent with the USFSPA, and we must be able to determine the amount of the award. The USFSPA states that for a retired pay as property award to be enforceable, it must be expressed either as a fixed dollar amount or as a percentage of disposable retired pay.[16] **Additionally, pursuant to the Department of Defense Financial Management Regulation (DoDFMR), Volume 7B, Chapter 29, paragraphs 290607 and 290608,** , if the parties are divorced prior to the member's receiving retired pay, the court order may (but is not required to) state a retired pay as property award as an acceptable formula or as a percentage of a hypothetical retired pay amount. We consider formula and hypothetical awards to be types of percentage awards.

[16] 10 U.S.C. §1408(a)(2)(C).
[17] DoDFMR, Vol. 7B, Subparagraph 290601.C. provides for automatic COLAs only for awards expressed as a percentage of disposable retired pay.
[18] 10 U.S.C. § 1408(a)(4)(amended 1986, 1990).
[19] DoDFMR, Vol. 7B, Paragraph 290701 provides a list of the authorized deductions by divorce date.
[20] Mansell v. Mansell, 490 U.S. 581.
[21] DoDFMR, Vol. 7B, Paragraph 2906016. D.

For a fixed dollar amount award, a monthly amount needs to be provided in the court order. If a fixed dollar amount award is used, the former spouse would not be entitled to any of the member's retired pay cost of living adjustments (COLAs).[17] Because of the significant effect of COLAs over time, it is infrequent that an award is stated as a fixed dollar amount. The more common method of expressing the former spouse's award is as a percentage of the member's disposable retired pay. This has the benefit to the former spouse of increasing the amount of the former spouse's award over time due to periodic retired pay COLAs.

All percentage awards are figured using a member's disposable retired pay, which is a member's gross retired pay less authorized deductions.[18] The authorized deductions vary based on the date of the parties' divorce.[19] The principal deductions now include retired pay waived to receive VA disability compensation, disability retired pay, and Survivor Benefit Plan (SBP) premiums where the former spouse is elected as the former spouse beneficiary. Since the United States Supreme Court has ruled that Congress authorized the division of only disposable retired pay, not gross retired pay,[20] the regulation provides that all percentage awards are to be construed as a percentage of disposable retired pay.[21]

If the amount of the former spouse's award is expressed as a dollar amount or percentage of disposable retired pay less the amount of some other obligation (e.g., the amount of the Survivor Benefit Plan premium or the former spouse's child support obligation), the entire award is unenforceable. This type of award language does not meet the statutory requirement of a fixed dollar amount or percentage. Also, tying a former spouse's award to some other figure that is subject to change, such as the SBP premium, renders the former spouse's award indeterminate. Indeterminate awards cannot be established in the retired pay system. 6

Similarly, set-offs against the former spouse's award are not permitted.22 Although the award language may be acceptable, if another provision of the court order requires that another amount be set-off from the former spouse's share, such as an SBP premium or other financial obligation that the former spouse owes the member, the set-off is unenforceable. This is because there is no provision in the USFSPA that authorizes enforcement of a set-off against the former spouse's retired pay as property award. State courts have authority to divide military retired pay only as set forth by the USFSPA.23 Thus, state court provisions not in accordance with the USFSPA are unenforceable.

22 DoDFMR, Vol. 7B, Paragraphs 290610, 290903.

23 Mansell, 490 U.S. at 581, illustrates the general principal that state courts may deal with military retired pay only in accordance with the provisions of the USFSPA.

24 Former Spouse Payments From Retired Pay, 60 Fed. Reg. 17507 (1995) (to be codified at

32 C.F.R. pt. 63)(proposed Apr 5, 1995).

25 DoDFMR, Volume 7B, Paragraphs 290607 (formula awards) and 290608 (hypothetical retired pay awards).

There is no magic language required to express a percentage or fixed dollar award. All the court order needs to say is the following:

**Example 1: "The former spouse is awarded _____ percent [or dollars per month] of the member's disposable military retired pay."**

**(Note: blanks in the examples represent numbers that must be provided to us in the court order.)**

**B. Introduction to formula and hypothetical retired pay awards.**

Most of our problems with award language have arisen in cases where the parties were divorced while the member was still performing military service. In these cases, the former spouse's award was indeterminate at time of divorce since the member has not yet retired. Since the parties did not know how much longer the member would remain in military service after the divorce, a straight percentage award may not have been suitable. Also, many States take the approach that the former spouse should not benefit from any of the member's post-divorce promotions or pay increases based on length of service after the divorce. These awards were often drafted in such a way that we could not determine the amount of the award. This caused the parties to have to go back to court and obtain a clarifying order.

A proposed regulation was issued in 1995 that allowed for (but did not require) the use of formula and hypothetical retired pay awards to divide military retired pay when the parties were divorced prior to the member's becoming eligible to receive retired pay.[24] Although this proposed regulation was never finalized, it provided the basis for our review of these types of awards and the basic procedures for computing them. We have refined the procedures since then, and they are now incorporated into Chapter 29 of the DoDFMR, Volume 7B.[25] We discuss these procedures below. In addition, we provide examples of acceptable award language below. These examples are also set forth in our sample Military Retired Pay Division Order, which is included as Appendix A to this Instruction, and also included as Appendix A to Chapter 29 of the DoDFMR.[26] [7]

## C. Formula awards.

A formula award is usually expressed in terms of a marital fraction, where the numerator covers the period of the parties' marriage while the member was performing creditable military service, and the denominator covers the member's total period of creditable military service. The former spouse's award is usually calculated by multiplying the marital fraction by ½ or 50%. However, the parties can provide a different percentage. Since a formula award works out to a percentage of disposable retired pay, we consider it to be a type of percentage award, and as such it would automatically include a proportionate share of the member's COLAs.[27]

27 DoDFMR, Volume 7B, Subparagraph 290601.C.
28 DoDFMR, Volume 7B, Subparagraph 290607.B.

If the court order provides a variable that is incorrect, the parties need to get the variable corrected by the court. We cannot change a number specifically stated in the order. If a court order provides a formula award and also provides all the variables necessary to compute the formula, we will complete the calculation as is using those variables provided in the order. If the order provides a percentage award, and also states the formula the court used to determine the percentage, we will set up the percentage as provided in the order regardless of how the court determined it.

The following comments pertain to cases where the court order uses a formula award that requires us to provide a variable before completing the computation.

1. For members qualifying for an active duty retirement, the numerator of a marital fraction is usually the total period of time from marriage to divorce or separation while the member was performing creditable military service. If the court order requires us to compute a formula award dividing an active duty retirement, then the court order must provide us with the numerator of the fraction, expressed in terms of whole months.[28] If the numerator is expressed in terms of years or days, we will convert it to months by rounding down to the nearest whole month, and dropping any odd days or partial months. **Failing to provide the number to be used in the numerator will cause the court order to be rejected.**

We will supply the denominator in terms of whole months of creditable service for multiplier purposes, and then work out the formula to determine the former spouse's award as a percentage of disposable retired pay. We will carry out all computations to six decimal places.

**Example 2.** The following language is an example of an acceptable way to express an active duty formula award:

**"The former spouse is awarded a percentage of the member's disposable military retired pay, to be computed by multiplying _____% times a fraction, the numerator of which is _____ months of marriage during the member's creditable military service, divided by the member's total number of months of creditable military service."** 8

For example, assume that the parties' marriage lasted exactly 12 years (or 144 months) during the member's military service. If the parties have agreed to use 50% as the percentage element of the formula, assume that the active duty formula award is "50% times a fraction, the numerator of which is 144 months divided by the member's total number of months of creditable military service." If the member serves for a total of 25 years (or 300 months) and then retires, then the former spouse would receive ½ x (144/300) = 24.0000% of the members disposable retired pay.

2. If the court order provides a formula award to divide a reserve retirement, then the court order must provide us with the numerator of the marital fraction, expressed in terms of reserve retirement points earned during the marriage.[29] For such orders, **failing to provide the numerator expressed as reserve points earned during the marriage will cause the court order to be rejected.** We will supply the member's total reserve retirement points for the denominator, and carry out the computation to six decimal places.

29 Id.
30 DoDFMR, Volume 7B, Subparagraph 290601.C.
31 DoDFMR, Vol. 7B, Paragraph 030102.
32 Id. at Subparagraph 030102.D.

**Example 3.** The following language is an example of an acceptable way to express a reserve retirement formula award.

**"The former spouse is awarded a percentage of the member's disposable military retired pay, to be computed by multiplying ____% times a fraction, the numerator of which is _____ reserve retirement points earned during the period of the marriage, divided by the member's total number of reserve retirement points earned."**

**D. Hypothetical retired pay awards.**

**(1) Introduction.** A hypothetical retired pay award (or hypothetical award) is an award expressed as a percentage of a hypothetical retired pay amount that is different from the member's actual retired pay. If the court order uses a hypothetical award, it is usually figured as if the member had retired on the date of separation or divorce. Some jurisdictions use hypothetical awards to divide military retired pay. A hypothetical award does not give the former spouse the benefit of any of the member's pay increases due to promotions or increased service time after the divorce. Since a hypothetical award also works out to a percentage of disposable retired pay, hypothetical awards are a type of percentage award, and as such would automatically include a proportionate share of the member's COLAs.[30]

The basic method for computing military retired pay is to multiply the member's *retired pay base* times the *retired pay multiplier*.[31] The standard *retired pay multiplier* is the product of two and one-half percent (i.e., .025) times the member's years of creditable service.[32] For example, the retired pay multiplier for an active duty member who serves 20 years will be 50% (.025 x 20 = 50%); the retired pay multiplier for an active duty member who serves 25 years will 9

be 62.5% (.025 x 25 = 62.5%) The years of creditable service for a reservist are computed by dividing the reserve retirement points on which the award is to be based by 360.33

33 Id. at Subparagraph 010301.F.
34 Id.
35 Id. at Subparagraphs 030102.A through C.
36 Id. at Subparagraph 030108.C.

37 Id. at Subparagraph 030109.A.

Additionally, for members who entered military service on or after August 1, 1986, who are under the age of 62, and who elect to participate in the CSB/REDUX retirement system, their retired pay multiplier is reduced one percentage point for each full year of service less than 30, and 1/12th of one percent for each full month.34 Their retired pay is recomputed using the standard multiplier when the member attains age 62.

For members entering military service before September 8, 1980, the *retired pay base* is the member's final basic pay. This figure would be determined by the pay table in effect at the time of retirement, and would be based on the member's rank and years of service for pay purposes.35 For members entering military service after September 7, 1980, the retired pay base is the average of the member's highest 36 months of basic pay.36 This is known as the high-3 amount. This will usually be the last 36 months prior to retirement. The retired pay computation is rounded down to the next lower multiple of $1.37 For example, $1,501.75 would be rounded down to $1,501.

A hypothetical retired pay amount is computed the same way as a member's actual military retired pay, but based on variables that apply to the member's hypothetical retirement. The necessary variables are shown as blanks in the following examples of acceptable award language. The principal problem we find with hypothetical awards is that one or more of the necessary variables for the hypothetical retired pay computation are often left out of the court order. Therefore, to be able to **compute a hypothetical award, these variables must be provided to us in the applicable court order. Failure to do so will cause the court order to be rejected because we cannot compute the award.**

For members entering military service before September 8, 1980, the hypothetical retired pay base is generally the member's basic pay at the hypothetical retirement date. Parties can obtain the basic pay amounts by looking at the military basic pay tables. Basic pay tables are available at the DFAS Web site at www.dfas.mil/militarypay/militarypaytables.html. Attorneys should be able to obtain the basic pay figure either from the member or from the applicable pay table.

For members entering military service after September 7, 1980, the hypothetical retired pay base would normally be the average of the member's highest 36 months of basic pay prior to the hypothetical retirement date. This information is specific to each member. The pay information can be obtained from either the member during discovery or from his pay center by subpoena. **The Garnishment Operations Directorate does not have access to this pay information.** It must be included in the court order dividing military retired pay. 10

For members who elect to retire under the CSB/REDUX retirement system, we will compute the member's hypothetical retired pay amount using the standard retired pay multiplier, and not the reduced CSB/REDUX multiplier, unless the court order directs us to do otherwise. Thus, the former spouse's award will normally not be reduced as a result of the member's electing to receive a Career Status Bonus (CSB) and a reduced retired pay amount.

The hypothetical retired pay amount is a fictional computation, in that the member often does not have the required 20 years of creditable service necessary to be eligible to receive retired pay on the date his or her retired pay is divided. Hence, we are computing a retired pay amount as if the member would have been eligible to retire on that date. .

Also, a member who retires with less than 20 years of creditable service may have a reduction factor applied to his or her retired pay computation.[38] (This reduction factor is completely different than CSB/REDUX factor listed above.) But the only time we would apply a reduction factor to the hypothetical retired pay calculation is if a reduction factor was actually used to compute the member's military retired pay. In that case, we would apply the same reduction factor to both computations.

[38] Id. at Subparagraph 030110.A.
[39] See DoD Report to Congress Concerning Federal Former Spouse Protection Laws, page 72, dated September 5, 2001, available at http://prhome.defense.gov/spouserev.html.
[40] See DoDFMR, Vol. 7B, Chapter 8, Subchapter 0804.

**(2) Example of a hypothetical retired pay calculation.** We will convert all awards of a percentage of a hypothetical retired pay amount into a percentage of the member's actual disposable retired pay according to the following method.

**(a)** First, we will calculate the hypothetical retired pay amount. Assume that the court order awarded the former spouse 25% of the retired pay of an E-6 with a *retired pay base* of $2,040 and with 18 years of service retiring on June 1, 1999. The member actually retires on June 1, 2002. The member's hypothetical *retired pay multiplier* would be computed as: .025 x 18 years of service = .45 (or 45%). His hypothetical retired pay would be .45 x $2,040 (retired pay base) = $918.00.

**(b)** Next, unless the court order directs otherwise, we will apply retired pay cost-of-living-allowances (COLAs) to the hypothetical retired pay amount up to the member's actual retirement date to find a "present value" of the hypothetical retired pay as of the member's actual retirement date. The addition of the COLAs does not result in the former spouse benefiting from the member's additional service time or promotions after the hypothetical retirement date. It simply provides the former spouse with the COLA amount he or she would have received had the member actually become eligible to receive retired pay on the hypothetical retirement date.[39]

In our example, the member would have been eligible for the following COLAs had he retired on June 1, 1999[40]:

December 1, 1999 1.7% $918.00 x 1.017 = $933.00 [11]

December 1, 2000 3.5% $933.00 x 1.035 = $965.00
December 1, 2001 2.6% $965.00 x 1.026 = $990.00.
Thus, if the member had retired on the hypothetical retirement date (June 1, 1999), his hypothetical retired pay would have been worth $990.00 per month at the time he actually retired on June 1, 2002.
**(c)** We will then convert the former spouse's award to a percentage of the member's actual disposable retired pay by multiplying the percentage awarded the former spouse times a fraction. The member's hypothetical retired pay is the numerator of the fraction, and the member's actual retired pay is the denominator.

In our example, assume that the member later retired on June 1, 2002, as an E-7 with a retired pay base of $3,200.40 and 23 years of creditable service. The member's actual retired pay multiplier would be .025 x 23 years= .575. His gross retired pay would be .575 x $3,200.40 = $1,840.00. The court order awarded the former spouse 25% of the retired pay of an E-6 with a retired pay base of $2,040 and with 18 years of service retiring on June 1, 1999. However. the former spouse's actual award percentage would be: 25% times $990/$1,840 = 13.4510%. We would set up 13.4510% in the retired pay system.

While the percentage has been reduced from 25% to 13.4510%, the amount the former spouse would receive is the amount intended by the court. This is because the lower percentage would be multiplied times the higher dollar amount of the member's actual disposable retired pay. For example, in this case assume that the member's disposable retired pay is equal to his gross retired pay. Twenty-five percent of $990 is $247, which equals 13.4510% of $1,840. The retired pay system would apply 13.4510% to the member's actual disposable retired pay each month to determine the amount the former spouse receives. The former spouse would automatically receive a proportionate share of the member's cost of living adjustments (COLAs).[41]

41 See DoDFMR, Vol. 7B, Paragraph 290601.C.
42 DoDFMR, Vol. 7B, Subparagraph 030111.B.

For CSB/REDUX members, we would compute the former spouse's initial percentage using the member's reduced retired pay amount as the denominator of the fraction. We would implement this percentage in the retired pay system effective through the month the member attains age 62. We would also calculate the former spouse's percentage using the retired pay amount the member would have received had the member not elected CSB/REDUX. We would also set this lower percentage up in the retired pay system effective on the first day of the month after the member attains age 62, which is also the effective date of the re-computation of the member's retired pay to the amount the member would have received had the member not elected CSB/REDUX.[42] This adjustment prevents the former spouse from receiving more than the amount intended in the court order.

**(3) Examples of active duty hypothetical awards.** The following are examples of acceptable active duty hypothetical awards. 12

**Example 4.** The following language is acceptable for all active duty members, regardless of service entry date.

**"The former spouse is awarded _____% of the disposable military retired pay the member would have received had the member retired with a retired pay base\* of $ (dollar amount) and with _____ years of creditable service on _____."**

**\*The retired pay base is a base pay figure. As noted on page 9 above, the retired pay base is the final basic pay at retirement** for members entering military service before September 8, 1980, and the "high-3" amount for member's entering military service on or after September 8, 1980.

**Example 5.** If a member entered military service before September 8, 1980, the following language is also acceptable because we can determine the member's retired pay base by simply looking at the pertinent military pay table.

**"The former spouse is awarded _____% of the disposable military retired pay the member would have received had the member retired with the rank of _____ and with _____ years of creditable service on _____."**

The court order may direct us to calculate a hypothetical retired pay amount using the pay tables in effect at the time the member becomes eligible to receive military retired pay instead of the pay table in effect at the time the court divides military retired pay. If this is the case, then the court order dividing an active duty member's military retired pay must provide us with: 1) the percentage awarded the former spouse, 2) the member's rank to be used in the calculation, and 3) the years of creditable service to be used in the calculation.

We will make the hypothetical retired pay calculation using the basic pay figure from the pay table in effect at the member's retirement for the rank and years of service given in the court order, regardless of whether the member entered military service before September 8, 1980, or on or after September 8, 1980.

**Example 6.** The following language is an example of an acceptable active duty hypothetical award based on the pay tables in effect at the member's retirement.

**"The former spouse is awarded _____% of the disposable military retired pay the member would have received had the member retired on his actual retirement date with the rank of _____ and with _____ years of creditable service."**

**(4) Examples of reserve hypothetical awards.** The following are examples of acceptable reserve hypothetical awards.

**Example 7.** The following language is acceptable for all reserve members, regardless of service entry date. 13

**"The former spouse is awarded _____% of the disposable military retired pay the member would have received had the member become eligible to receive military retired pay with a retired pay base of $(dollar amount) and with _____ reserve retirement points on _____."**

**Example 8.** The following language is also acceptable for reservists who entered military service before September 8, 1980.

**"The former spouse is awarded _____% of the disposable military retired pay the member would have received had the member become eligible to receive retired pay on _____, with the rank of _____, with _____ reserve retirement points, and with _____ years of service for basic pay purposes."**

If the court order directs us to calculate a hypothetical retired pay amount using pay tables in effect at the time the member becomes eligible to receive retired pay, the court order must provide us with: 1) the percentage awarded the former spouse, 2) the member's rank to be used, 3) the reserve retirement points to be used, and 4) years of service for basic pay purposes.

We will make the hypothetical retired pay calculation using the basic pay figure from the pay tables in effect at the member's retirement for the rank and years of service given in the court order, regardless of whether the member entered military service before September 8, 1980, or on or after September 8, 1980.

**Example 9.** The following language is an example of an acceptable reserve hypothetical award based on the pay tables in effect at the member's becoming eligible to receive military retired pay.

**"The former spouse is awarded _____% of the disposable military retired pay the member would have received had the member become eligible to receive retired pay on the date he [or she] attained age 60, with the rank of _____, with _____ reserve retirement points, and with _____ years of service for basic pay purposes."**

**E. Examples of unacceptable former spouse award language.**

Problems with award language usually occur when the parties are divorced prior to the member's becoming eligible to receive military retired pay. The examples given below represent common mistakes we see in court orders attempting to divide military retired pay.

(1) "The former spouse is awarded one-half of the community interest in the member's military retired pay."

Here, we are not told how to calculate the community interest. Nor are we provided with any of the variables necessary to make such a calculation using either a formula or hypothetical retired pay award. 14

(2) "The former spouse is awarded one-half of the member's military retirement that vested during the time of the marriage."

Military retired pay is a federal entitlement, which a member either qualifies for or does not. It does not vest in any way prior to the member's retirement. As with the above example, we are not provided with any information as to how to calculate the amount of the former spouse's award.

(3) "The former spouse is awarded one-half of the accrued value of the member's military retirement benefits as of the date of the divorce."

This example is similar to example (2) above. As with example (2), since military retired pay is a statutory entitlement, it has no accrued value prior to the member retiring. Again, we are not provided with any information as to how to calculate the amount of the former spouse's award.

(4) "The former spouse shall be entitled to 42% of the member's military retirement based on the amount he would have received had he retired as of the date of the divorce."

This appears to be intended as a hypothetical award, but it does not provide us with any of the variables needed to calculate a hypothetical retired pay amount. Since we do not have access to the member's military service information, there is no practical way for us to obtain the needed information ourselves.

(5) "The former spouse is awarded a portion of the member's military retired pay calculated according to the Bangs formula."

Here, the court order presumes that we are familiar with that State's laws and know what the Bangs formula is. We are not able to research individual cases to resolve ambiguities in court orders. Also, the court order does not provide us with any of the necessary variables.

(6) "The former spouse is awarded an amount equal to 50% of the member's disposable retired pay less the amount of the Survivor Benefit Plan Premium."

The amount of the former spouse's award must be expressed either as a fixed dollar amount or as a percentage of disposable retired pay, or as an acceptable formula or hypothetical award. This award does not meet that requirement. However, if the court order awarded the former spouse 50% of the member's disposable retired pay, but then later in the order it stated that the amount of the Survivor Benefit Plan (SBP) premium would be deducted from the former spouse's share, we could honor the case at 50%. The provision concerning the SBP premium would be unenforceable since Federal law provides that the SBP premium must be deducted from the member's retired pay.[43]

[43] 10 U.S.C. § 1452(a)(1); DoDFMR, Vol. 7B, Paragraph 450601.

**F. Correcting deficient awards.** 15

If we are not able to determine the amount of the former spouse's award from the information provided in the court order, the former spouse has two alternatives. One alternative is for the former spouse to obtain a new court order clarifying the former spouse's retired pay as property award by expressing it in an acceptable manner. The other alternative is for the former spouse to provide us with any missing information by submitting a notarized agreement with the required information signed by both the former spouse and member.44 If the parties wish, they may provide us with the fixed dollar amount or percentage of disposable retired pay the former spouse is to receive. We are including our standard notarized agreement form as Appendix B of this Instruction for that purpose. The parties may want to consult their attorneys before executing any such agreement in lieu of a clarifying order.

44 DoDFMR, Vol. 7B, Subparagraphs 290607.B. and 290608.E.

## IV. ACKNOWLEDGEMENT.

This handout is prepared by the Garnishment Operations Directorate, Defense Finance and Accounting Service, Cleveland Center. It may be freely circulated, but not altered without permission. Revised January 29, 2012. 16

APPENDIX A
STATE OF _____ COURT OF _____
COUNTY OF _____ CASE NO. _____

_____
PETITIONER
**MILITARY RETIRED PAY
DIVISION ORDER**

_____
RESPONDENT
THIS CAUSE CAME BEFORE THE UNDERSIGNED JUDGE UPON THE
PETITIONER/RESPONDENT'S CLAIM FOR A DISTRIBUTION OF THE
RESPONDENT/PETITIONER'S MILITARY RETIRED PAY BENEFITS. THE COURT MAKES
THE FOLLOWING:
**FINDINGS OF FACT:**
1. The Petitioner's Social Security Number is _____ and current address is

_____.
2. The Respondent's Social Security Number is _____ and current address is
_____.
3. The Parties were married on _____. Their marital status was terminated on _____
pursuant to a(n) _____ entered in _____ County, State of
_____. This current order is entered incident to the aforementioned order.

4. The parties were married for a period of ten or more years during which time the
Petitioner/Respondent performed at least ten years of creditable military service.

5. If the military member was on active duty at the time of this order, Respondent/Petitioner's rights
under the Servicemembers' Civil Relief Act, 50 U.S.C App. 501-548 and 560-591, have been
observed and honored.

6. This court has jurisdiction over the Respondent/Petitioner by reason of [choose those that apply]
(A) his or her residence, other than because of military assignment, in the territorial jurisdiction of
the court, during the [divorce, dissolution, annulment, or legal separation]
17

proceeding, (B) his or her domicile in the territorial jurisdiction of the court during the [divorce, dissolution, annulment, or legal separation] proceeding, or (C) his or her consent to the jurisdiction of the court.

## CONCLUSIONS OF LAW:
1. This court has jurisdiction over the subject matter of this action and the parties hereto.

2. Petitioner/Respondent is entitled to a portion of Respondent/Petitioner's United States military retired pay as set forth herein.

## IT IS THEREFORE ORDERED THAT:
[Choose and complete one of the following. Blanks in the examples represent numbers that must be provided to us in the court order. Please note that all awards expressed as a percentage of disposable retired pay, including formula hypothetical awards, will automatically include a proportionate share of the member's cost-of-living adjustments (COLAs) unless this order states otherwise. Also, hypothetical retired pay amounts will be adjusted for all retired pay COLAS from the hypothetical retirement date to the member's actual retirement date, unless this order states otherwise.]

[Retired member] **"The former spouse is awarded ___ percent [or dollar amount per month] of the member's disposable military retired pay."**

[Active duty formula] **"The former spouse is awarded a percentage of the member's disposable military retired pay, to be computed by multiplying 50% times a fraction, the numerator of which is _____ months of marriage during the member's creditable military service, divided by the member's total number of months of creditable military service."**

[Reservist formula] **"The former spouse is awarded a percentage of the member's disposable military retired pay, to be computed by multiplying 50% times a fraction, the numerator of which is _____ reserve retirement points earned during the period of the marriage, divided by the member's total number of reserve retirement points earned."**

[Active duty hypothetical calculated as of time of division, for all members regardless of service entry date] **"The former spouse is awarded _____% of the disposable military retired pay the member would have received had the member retired with a retired pay base of $_____ and with _____ years of creditable service on _____."**

[Active duty hypothetical calculated as of time of division; may only be used for members entering service before 9/1/80] **"The former spouse is awarded _____% of the disposable military retired pay the member would have received had the member retired with the rank of _____ and with _____ years of creditable service on _____."** 18

[Active duty hypothetical calculated as of member's actual retirement date **"The former spouse is awarded _____% of the disposable military retired pay the member would have received had the member retired on his actual retirement date with the rank of _____ and with _____ years of creditable service."**

[Reservist hypothetical calculated as of time of division, for all members regardless of service entry date] **"The former spouse is awarded _____% of the disposable military retired pay the member would have received had the member become eligible to receive military retired pay with a retired pay base of $_____ and with _____ reserve retirement points on _____."**

[Reservist hypothetical calculated as of time of division; may only be used for members entering service before 9/1/80] **"The former spouse is awarded _____% of the disposable military retired pay the member would have received had the member become eligible to receive retired pay on _____, with the rank of _____, with _____ reserve retirement points, and with _____ years of service for basic pay purposes."**

[Reservist hypothetical calculated as of the date the member becomes eligible to receive retired pay] **"The former spouse is awarded _____% of the disposable military retired pay the member would have received had the member become eligible to receive retired pay on the date he [or she] attained age 60, with the rank of _____ , with _____ reserve retirement points, and with _____ years of service for basic pay purposes."**

This _____ day of _____, 200__ .

_____
JUDGE 19

## APPENDIX B
## NOTARIZED STATEMENT OF THE PARTIES CLARIFYING
## THE COURT ORDER DIVIDING MILITARY RETIRED PAY

**WE, THE UNDERSIGNED, MUTUALLY AGREE TO DIVIDE THE MILITARY RETIRED PAY, AS PROPERTY, IN THE FOLLOWING MANNER. THIS AGREEMENT CLARIFIES THE FINAL COURT ORDER ENTERED ON**

_____.

DATE OF COURT ORDER AND NAME/LOCATION OF COURT

**THE FORMER SPOUSE,** _____ **IS ENTITLED TO RECEIVE:**

NAME OF NON-MILITARY SPOUSE

_____ **% OF MEMBER'S DISPOSABLE MILITARY RETIRED PAY.**

PERCENTAGE

**OR**

**$**_____ **PAID MONTHLY FROM THE MEMBER'S DISPOSABLE RETIRED PAY.**

SPECIFIC AMOUNT

**THE PARTIES ACKNOWLEDGE THAT THIS AGREEMENT IS IRREVOCABLE EXCEPT BY SUBSEQUENT COURT ORDER. THEY ALSO AGREE THAT THE DEFENSE FINANCE AND ACCOUNTING SERVICE (DFAS) WILL MAKE PAYMENTS DIRECTLY TO THE FORMER SPOUSE FROM THE MEMBER'S DISPOSABLE RETIRED PAY. THE PARTIES ALSO UNDERSTAND THAT COST OF LIVING INCREASES (COLAS) CAN ONLY BE MADE ON AWARDS EXPRESSED AS A PERCENTAGE. COLAS CANNOT BE MADE ON AWARDS EXPRESSED AS A SPECIFIC AMOUNT.**

_____

_____

MEMBER FORMER SPOUSE

MEMBER'S SOCIAL SECURITY NUMBER: _____ 20

BEFORE ME APPEARED, _____ AND SHOWING
PROOF OF IDENTIFICATION (BY DRIVER'S LICENSE/GOVERNMENT/MILITARY ID)
AND SIGNED HIS/HER NAME AT THE PLACE INDICATED ABOVE.
SWORN BEFORE ME THIS _____ DAY OF

_____, _____

_____
NOTARY PUBLIC

BEFORE ME APPEARED, _____ AND SHOWING
PROOF OF IDENTIFICATION (BY DRIVER'S LICENSE/GOVERNMENT/MILITARY ID)
AND SIGNED HIS/HER NAME AT THE PLACE INDICATED ABOVE.
SWORN BEFORE ME THIS _____ DAY OF

_____, _____

_____
NOTARY PUBLIC

# APPENDIX NO. 4



THE HISTORIC MILAM BUILDING
115 East Travis Street, Suite 333
San Antonio, Texas 78205
PHONE: 210-226-4500
FAX: 210-226-4502



ney; that the party approves the substitution; and that the withdrawal is not sought for delay only. If another attorney is not to be substituted as attorney for the party, the motion shall state: that a copy of the motion has been delivered to the party; that the party has been notified in writing of his right to object to the motion; whether the party consents to the motion; the party's last known address and all pending settings and deadlines. If the motion is granted, the withdrawing attorney shall immediately notify the party in writing of any additional settings or deadlines of which the attorney has knowledge at the time of the withdrawal and has not already notified the party. The Court may impose further conditions upon granting leave to withdraw. Notice or delivery to a party shall be either made to the party in person or mailed to the party's last known address by both certified and regular first class mail. If the attorney in charge withdraws and another attorney remains or becomes substituted, another attorney in charge must be designated of record with notice to all other parties in accordance with Rule 21a.

History of TRCP 10: Amended eff. Sept. 1, 1990, by order of Apr. 24, 1990 (785-86 S.W.2d [Tex.Cases] xxxv): Rewrote rule; repealed present rule; and clarified requirements for withdrawal. Amended eff. Jan. 1, 1988, by order of July 15, 1987 (733-34 S.W.2d [Tex.Cases] xxxvii): Repealed present rule; set forth requirements for withdrawal of counsel and withdrawal with substitution of counsel; and carried forward requirements of amended TRCP 8 regarding designation of attorney in charge. Adopted eff. Sept. 1, 1941, by order of Oct. 29, 1940 (3 Tex.B.J. 525 [1940]). Source: Tex. Rules for Dist. & Cty. Cts. 46.

See *Commentaries*, "The Attorney," ch. 1-H, p. 62; *O'Connor's Texas Forms*, FORMS 1H:6, 7.

#### ANNOTATIONS

*Rogers v. Clinton*, 794 S.W.2d 9, 10 n.1 (Tex.1990). "Although a client may discharge his attorney at any time even without cause, an attorney may withdraw from representation of a client only if he satisfies the requirements of [TRCP] 10."

*Harrison v. Harrison*, 367 S.W.3d 822, 827 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). TRCP 10 "does not define 'good cause.' However, the Texas Disciplinary Rules of Professional Conduct articulate considerations relevant to the consideration of Rule 10 motions. [¶] [The Disciplinary Rules] provide[ ], among other things, that a lawyer shall not withdraw from representing a client 'unless withdrawal can be accomplished without material adverse effect on the interests of the client'; the client 'fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services, including an obligation to pay the lawyer's fee as agreed, and has been given reasonable warning that the lawyer will withdraw unless the obligation is ful-

filled'; and the representation 'will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client.'"

*Sims v. Fitzpatrick*, 288 S.W.3d 93, 100 (Tex. App.—Houston [1st Dist.] 2009, no pet.). "A court abuses its discretion when it grants a motion to withdraw that does not comply with the mandatory requirements of rule 10. However, 'such error may be harmless if the court allows the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial.'" *See also Gillie v. Boulas*, 65 S.W.3d 219, 221 (Tex.App.—Dallas 2001, pet. denied).

### TRCP 11. AGREEMENTS TO BE IN WRITING

Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

History of TRCP 11: Amended eff. Jan. 1, 1988, by order of July 15, 1987 (733-34 S.W.2d [Tex.Cases] xxxvii): Amendment clarified that TRCP 11 is subject to modification by any other rule of Civil Procedure. Adopted eff. Sept. 1, 1941, by order of Oct. 29, 1940 (3 Tex.B.J. 526 [1940]). Source: Tex. Rules for Dist. & Cty. Cts. 47.

See TRCP 191.1 (agreements in discovery matters); *Commentaries*, "Agreements Between Attorneys – Rule 11," ch. 1-H, §9, p. 72; "Settlement of the Suit," ch. 7-I, p. 717; *O'Connor's Texas Forms*, FORM 1H:13.

#### ANNOTATIONS

*In re Vaishangi, Inc.*, 442 S.W.3d 256, 259 (Tex. 2014). "We have generally treated Rule 11 agreements as separate and distinct from agreed judgments entered thereon. But nothing in the [TRCPs] prohibits a Rule 11 agreement from being, itself, an agreed judgment, so long as the agreement meets the requirements for a final judgment. *At 260:* Although fact issues about the scope and terms of the Rule 11 agreement may remain, those issues do not prevent the Court from determining as a matter of law whether the Rule 11 agreement constitutes an agreed judgment."

*Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex. 2007). "Rule 11 aims to remove misunderstandings and controversies that accompany verbal assurances, and the written agreements 'speak for themselves.'"

*Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 305 (Tex. 2004). "A Rule 11 Agreement between the parties, in and of itself, is not a plea, pleading, or motion. *At 306:* [W]hile filing a Rule 11 Agreement with the trial court is a requirement for enforcement, it is not in and of itself a request for enforcement or any other affirmative action by the trial court."





*Compania Financiara Libano, S.A. v. Simmons*, 53 S.W.3d 365, 368 (Tex.2001). A settlement agreement is enforceable as a contract even if its terms are not incorporated into the judgment.

*Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995). "The ... filing requirement [in TRCP 11] is satisfied so long as the agreement is filed before it is sought to be enforced."

*Coale v. Scott*, 331 S.W.3d 829, 831-32 (Tex.App.—Amarillo 2011, no pet.). "[T]he trial court's authority to approve a Rule 11 agreement does not depend upon whether it has [plenary] jurisdiction. It may enforce a Rule 11 agreement touching upon the suit executed after the cause was tried and finally resolved via judgment. [A] settlement agreement ... executed while the parties were attempting to sway the trial court to enforce its judgment logically falls within the scope of 'any suit pending' for purposes of Rule 11. [¶] [Party argued] that the Rule 11 agreement was unenforceable because they allegedly withdrew their consent to it before the trial court ordered its enforcement. We disagree. [¶] Rule 11 requires that the agreement be filed of record before the court may enforce it. If the accord is in writing, signed by the parties or their attorneys, and filed of record, it does not matter whether a party no longer agrees to it when the trial court is finally asked to enforce it. This is so because the agreement becomes a contract when executed, not when the trial court attempts to enforce it." *See also Staley v. Herblin*, 188 S.W.3d 334, 336 (Tex.App.—Dallas 2006, pet. denied) (Rule 11 agreement can be enforced as contract if one party withdraws consent before judgment is rendered, but party seeking enforcement must pursue separate breach-of-contract claim subject to normal rules of pleading and proof).

*ExxonMobil Corp. v. Valence Oper. Co.*, 174 S.W.3d 303, 309 (Tex.App.—Houston [1st Dist.] 2005, pet. denied). "A trial court has a ministerial duty to enforce a valid Rule 11 agreement. [¶] However, it is not sufficient that a party's consent to a Rule 11 agreement may have been given at one time; consent must exist at the time that judgment is rendered." *See also Baylor Coll. of Med. v. Camberg*, 247 S.W.3d 342, 346 (Tex.App.—Houston [14th Dist.] 2008, pet. denied).

## TRCP 12. ATTORNEY TO SHOW AUTHORITY

A party in a suit or proceeding pending in a court of this state may, by sworn written motion stating that he believes the suit or proceeding is being prosecuted or defended without authority, cause the attorney to be cited to appear before the court and show his authority to act. The notice of the motion shall be served upon the challenged attorney at least ten days before the hearing on the motion. At the hearing on the motion, the burden of proof shall be upon the challenged attorney to show sufficient authority to prosecute or defend the suit on behalf of the other party. Upon his failure to show such authority, the court shall refuse to permit the attorney to appear in the cause, and shall strike the pleadings if no person who is authorized to prosecute or defend appears. The motion may be heard and determined at any time before the parties have announced ready for trial, but the trial shall not be unnecessarily continued or delayed for the hearing.

History of TRCP 12: Amended eff. Jan. 1, 1981, by order of June 10, 1980 (599-600 S.W.2d [Tex.Cases] xxxiv): Changed rule to permit challenge to plaintiff's attorney, so that all attorneys are subject to a challenge that they are in court without authority. Adopted eff. Sept. 1, 1941, by order of Oct. 29, 1940 (3 Tex.B.J. 526 [1940]). Source: TRCS art. 320 (repealed), minor textual changes and added requirement that notice be served at least ten days before hearing on the motion.

See *Commentaries*, "The Attorney," ch. 1-H, p. 62; *O'Connor's Texas Forms*, FORMS 1H:8-10.

### ANNOTATIONS

*In re Users Sys. Servs.*, 22 S.W.3d 331, 335 (Tex. 1999). "[T]he procedure prescribed by Rule 12 for requiring an attorney to show his authority to act for a party presupposes the possibility that an attorney can be counsel of record for a party he is not authorized to represent. The [TRCPs] contemplate that authorization may not have existed or may cease before the attorney has withdrawn from the case."

*In re Guardianship of Benavides*, 403 S.W.3d 370, 374 (Tex.App.—San Antonio 2013, pet. denied). "As a general rule, an order on a rule 12 motion is an interlocutory order that is not appealable until it is merged into a final judgment. Nevertheless, probate and guardianship proceedings are often exceptions to the 'one final judgment' rule."

*Air Park-Dallas Zoning Cmte. v. Crow-Billingsley Airpark, Ltd.*, 109 S.W.3d 900, 906 (Tex.App.—Dallas 2003, no pet.). "[A] Rule 12 motion may be properly brought when a new and different attorney attempts to appear as attorney of record purporting to advance a motion for new trial after the trial has concluded."

## TRCP 13. EFFECT OF SIGNING OF PLEADINGS, MOTIONS & OTHER PAPERS; SANCTIONS

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading,

# APPENDIX NO. 5



THE HISTORIC MILAM BUILDING
115 East Travis Street, Suite 333
San Antonio, Texas  78205
PHONE: 210-226-4500
FAX: 210-226-4502



*Ex parte Gorena*, 595 S.W.2d 841, 844 (Tex.1979). "Despite the fact that a judgment has its genesis in an agreement between the parties, the judgment itself has an independent status. Once the agreement of the parties has been approved by the court and made a part of its judgment, the agreement is no longer merely a contract between private individuals but is the judgment of the court. [¶] 'The fact that a judgment is rendered by consent gives it neither less nor greater force or effect than it would have had it been rendered after protracted litigation....' Thus, in suits to enforce agreed judgments, parties may not raise contractual defenses because such defenses constitute impermissible collateral attacks on the prior judgments."

*Wright v. Eckhardt*, 32 S.W.3d 891, 894 (Tex. App.—Corpus Christi 2000, no pet.). "[T]he ... Family Code provides at least two circumstances in which the trial court may issue orders clarifying [a divorce] decree. [¶] Under [Fam. Code] §9.006 ..., the court may render 'further orders to enforce the division of property made in the decree of divorce ... to assist in the implementation of or to clarify the prior order.' The court may specify more precisely the manner of effecting the property division previously made if the substantive division of property is not altered or changed. The trial court may also clarify the decree [under Fam. Code §9.008] on a finding by the court that the original form of the division of property is not specific enough to be enforceable by contempt. [¶] [W] alleges that the trial court erred by finding that the divorce decree's division of property was not specific enough to be enforceable by contempt. We disagree with [W] that the trial court made such an implied finding, and we do not agree that such a finding is required under §9.006...."

*Kimsey v. Kimsey*, 965 S.W.2d 690, 694-95 (Tex. App.—El Paso 1998, pet. denied). "When a divorce decree is not a consent decree or agreed judgment, the normal rules applicable to the construction of judgments apply to its interpretation. Thus, where a decree is unambiguous, the trial court has no authority to issue an order altering or modifying the original disposition of property. If the property division in the original divorce decree is ambiguous, however, or not specific enough to be enforceable by contempt, the court may enter a clarifying order to enforce compliance with the original division of property. While the Family Code authorizes the trial court to clarify its judgment, it does not prohibit our review of [W's] complaints that the

judgment is vague and unenforceable, nor is there any authority which suggests that an enforcement action is a prerequisite to raising a complaint on appeal."

*Sharman v. Schuble*, 846 S.W.2d 574, 575 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding). "The divorce decree stated that the net proceeds from the sale would be distributed equally to the parties '*at the time of closing*.' [The] trial [court lacks] the authority to change the property division contained in a final divorce decree. By retaining possession of these funds, the trial court has clearly departed from the terms of the divorce decree. *At 576:* By retaining the proceeds in the registry, the trial court has effectively attached the relator's property. A writ of attachment is generally unavailable in claims for unliquidated debts. ... The trial court abused its discretion by refusing to distribute these funds in accordance with the terms of the divorce decree."

*Bowden v. Knowlton*, 734 S.W.2d 206, 208 (Tex. App.—Houston [1st Dist.] 1987, no writ). "[A] divorce court may impose an equitable lien against the property of a spouse to secure that spouse's obligation to pay a monetary award that represents the consideration for the other spouse's relinquishment of his or her interest in the marital estate. Indeed, it has been held that a vendor's lien arises by implication when one spouse agrees to pay a sum of money as consideration for the other spouse's interest in a particular piece of property. We hold that the trial court had the authority, in aid of the enforcement of its monetary award, to impose a lien on [H's] residence."

## FAM §9.007. LIMITATION ON POWER OF COURT TO ENFORCE

(a) A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. An order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property.

(b) An order under this section that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable.

(c) The power of the court to render further orders to assist in the implementation of or to clarify the property division is abated while an appellate proceeding is pending.

✭

History of Fam. Code §9.007: Acts 1997, 75th Leg., ch. 7, §1, eff. Apr. 17, 1997. Source: Former Fam. Code §3.71.

### ANNOTATIONS

*Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011). "[T]he court that renders a divorce decree retains jurisdiction to clarify and enforce the property division within that decree. If a decree is ambiguous, that court can enter a clarification order. [But an unambiguous] judgment finalizing a divorce and dividing marital property bars relitigation of the property division, even if the decree incorrectly characterizes or divides the property." *See also In re M.M. III*, 357 S.W.3d 841, 843 (Tex.App.—El Paso 2012, no pet.) (court could not modify unambiguous decree even though it awarded H's separate property to W); *Cox v. Carter*, 145 S.W.3d 361, 366-67 (Tex.App.—Dallas 2004, no pet.) (court enforced decree even though it conflicted with applicable federal guidelines).

*Hagen v. Hagen*, 282 S.W.3d 899, 907 (Tex.2009). "In the case before us, the [couple's] original decree did not award [W] amounts 'calculated on' [H's] gross, or even total, retirement pay before deductions.... The [couple's] decree plainly entitled [W] only to part of the Army or military retirement pay [H] received, if, as, and when he received it. [S]uch military retirement pay did not include VA disability benefits [that H elected to receive post-divorce in lieu of retirement pay]. Thus, the trial court ... did not modify the [couple's] decree; it only clarified that the decree did not divide VA disability pay that was or might become payable to [H]. *At 908:* On the surface, it appears that [H's post-divorce] election to receive VA benefits has worked an inequity on [W]. But the language used in divorce decrees is important, and we must presume the divorce court chose it carefully...."

*Shanks v. Treadway*, 110 S.W.3d 444, 447-48 (Tex. 2003). "The [divorce] decree in question identifies [H's] pension plan as arising out of past employment, but then states that [W] is entitled to a pro rata interest of any and all sums received or paid to [H] from such pension plan. The decree also defines pro rata interest as 25% of the total sum or sums paid or to be paid to [H] from such pension or retirement plan. [¶] [T]he decree is unambiguous, and [W] should receive 25% of [H's] total retirement benefits. ... The fact that the plan's value may have increased since the divorce does not affect the decree's plain language, which simply cannot reasonably be construed to award [W] an inter-

est only in the plan benefits that had accrued on the date of divorce. *At 449:* [W]e must enforce the decree as written ... even though it conflicts with *Taggart* [*v. Taggart*, 552 S.W.2d 422 (Tex.1977)]. *At 449 n.7:* [W]e disagree ... that the phrase 'if, as, and when received' is a term of art evidencing an intent to value a pension plan at the time of receipt rather than at the time of divorce. ... The term ... reflects the contingent nature of the community's interest in the retirement benefits and not necessarily the value of that interest." (Internal quotes omitted.) *See also Reiss v. Reiss*, 118 S.W.3d 439, 442 (Tex.2003).

*Everett v. Everett*, 421 S.W.3d 918, 921 (Tex. App.—El Paso 2014, no pet.). "[H] contends the trial court exceeded the permissible scope of a clarifying order by converting a responsibility for a community debt into an obligation to pay spousal maintenance. [¶] The trial court believed that the intent of the decree was for [W] to receive the additional financial assistance for 36-months whether in the form of property tax payments or additional spousal maintenance and that its order clarified this intent. However, converting a debt into spousal maintenance is not merely a clarification, it is a change in the substantive division of property and cannot be enforced under [§9.007]."

*In re W.L.W.*, 370 S.W.3d 799, 804-05 (Tex.App.—Fort Worth 2012, orig. proceeding). "[T]he divorce decree's 'residuary clause' purports to devise a remedy for property 'that was not *disclosed or under-valued in the spreadsheet* attached to each party's Inventory and Appraisement.' [A]ccording to [W's] construction, the 'residuary clause' operates on an unwritten contingency—idling along and irrelevant when [an] asset was disclosed and properly valued in [H's] inventory and appraisement, but springing into action and 'concurrently' awarding that same asset to [W] if she proves in a post-judgment action that [H] failed to disclose the asset or undervalued it in his inventory and appraisement. [¶] [But this clause] irreconcilably conflicts with [the agreement's final asset awards]. *At 806-07:* Examining the entire divorce decree, the only reasonable construction that can be given to the 'residuary clause' as written is that it permits the post-judgment division of previously decree-divided property based upon the trial court's findings regarding the thoroughness of one side's inventory and appraisement. Unquestionably, this violates the family code's express prohibition on amending, modifying, altering, or




changing a divorce decree's division of property. [W's] suit is an impermissible collateral attack on the divorce decree...."

*Garcia v. Alvarez*, 367 S.W.3d 784, 787-88 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "[A]greed divisions of marital property contained in or incorporated into final divorce decrees are treated as contracts and their legal force and meaning are governed by the law of contracts. The fact that a decree incorporated an agreement between the parties, however, does not mean that the procedures and enforcement mechanisms provided in [Fam. Code] ch. 9 ... no longer apply or that the trial judge has no ability to fashion an appropriate remedy within its authority. To the contrary, that chapter makes no such distinction. [¶] In its order of enforcement, the trial court stated that [ex-H] had 'overpaid ...' in the amount of $3,000' and [ex-W] had retained those funds. ... Ordering the return of the $3,000 that was rightfully [ex-H's] under the agreed property division did not amend, modify, alter, or change the division of property. The court simply was enforcing the division of property made in the decree as authorized by the Family Code."

*Sheikh v. Sheikh*, 248 S.W.3d 381, 384 (Tex.App.— Houston [1st Dist.] 2007, no pet.). "We determine whether the trial court had subject-matter jurisdiction to enter ... a turnover-and-receivership order that had the effect of enforcing the decree's property division while [H's] appeal of the underlying divorce decree was pending. *At 388:* [Section 9.007] deprives the trial court of subject-matter jurisdiction to enter the specified orders during the pendency of an appeal. [¶] Section 9.007(c) 'is directed at the power of the court, not the obligations and responsibilities of the parties.' ... Because it is directed solely at the court's power, ... §9.007(c) 'does not stay, supersede or otherwise inhibit the finality of the [divorce] decree, absent a supersedeas bond.' [¶] Prohibited orders 'assist[ing] in the implementation of' the decree's property division encompass orders to enforce the property division that go beyond the ministerial act of execution. A turnover order is a species of post-judgment enforcement order. It is the type of enforcement order that goes beyond the ministerial act of execution. *At 391-92:* Because [trial court] had jurisdiction to enforce the unsuperseded monetary judgment against [H], the trial court had subject-matter jurisdiction to enter the turnover-and-receivership order. However, to the extent that the turn-over-and-receivership order allowed the receiver to take and to dispose of the property awarded to [W] and still in [H's] possession, the order violated §9.007(c)." *See also In re Phillips*, 296 S.W.3d 682, 687 (Tex. App.—El Paso 2009, orig. proceeding) (order to disburse proceeds from sale of marital home during pendency of appeal was proper ministerial act of enforcement); *English v. English*, 44 S.W.3d 102, 106 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (trial court is restrained from rendering further orders to assist implementing or clarifying property division pending appeal).

*Gainous v. Gainous*, 219 S.W.3d 97, 108 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). "[W]e hold that §9.007 is jurisdictional and that orders violating its restrictions are void. *At 111:* We hold that the divorce decree unambiguously included the DROP [deferred retirement option plan] funds in its award to [W]. Because the QDRO precluded [W] from receiving any portion of [H's] DROP funds at any time, the QDRO impermissibly altered the decree's property division and was void to the extent that it did so. Because the QDRO's provision excluding the DROP funds from [W's] award was void, [W] could properly challenge it by collateral attack, and res judicata and estoppel did not bar her challenge." *See also Quijano v. Quijano*, 347 S.W.3d 345, 353-54 (Tex.App.—Houston [14th Dist.] 2011, no pet.) (QDROs, like other post-divorce enforcement or clarification orders, cannot amend, modify, alter, or change decree's property division).

*Zicker v. Stewart*, No. 03-04-00438-CV (Tex. App.—Austin 2006, no pet.) (memo op.; 1-27-06). Family Code §9.007 "must be read in conjunction with [TRCP] 306a and 329b. [¶] Thus, although §9.007 clearly prevents the modification of a decree once it has become final, it does not prohibit a district court from exercising its plenary power to modify the decree within 30 days of signing the judgment. Because the modified judgment in this case was issued within a week of the original decree, during which the district court maintained its plenary powers, the modification did not violate §9.007. [¶] The waiver of citation that [W] signed in relation to the filing of [H's] original petition was not effective to remove her entitlement to be notified of the pending modification." *See also Fontenot v. Fontenot*, No. 09-02-00019-CV (Tex.App.— Beaumont 2002, no pet.) (memo op.; 8-15-02) (ch. 9 does not apply to correction of clerical error by judgment nunc pro tunc).

# APPENDIX NO. 6



THE HISTORIC MILAM BUILDING
115 East Travis Street, Suite 333
San Antonio, Texas 78205
PHONE: 210-226-4500
FAX: 210-226-4502



History of Fam. Code §9.102: Acts 1997, 75th Leg., ch. 7, §1, eff. Apr. 17, 1997. Source: Former Fam. Code §3.711(d).

## FAM §9.103. PRIOR FAILURE TO RENDER QUALIFIED DOMESTIC RELATIONS ORDER

A party may petition a court to render a qualified domestic relations order or similar order if the court that rendered a final decree of divorce or annulment or another final order dividing property under this chapter did not provide a qualified domestic relations order or similar order permitting payment of benefits to an alternate payee or other lawful payee.

History of Fam. Code §9.103: Acts 1997, 75th Leg., ch. 7, §1, eff. Apr. 17, 1997. Source: Former Fam. Code §3.711(a).

## FAM §9.104. DEFECTIVE PRIOR DOMESTIC RELATIONS ORDER

If a plan administrator or other person acting in an equivalent capacity determines that a domestic relations order does not satisfy the requirements of a qualified domestic relations order or similar order, the court retains continuing, exclusive jurisdiction over the parties and their property to the extent necessary to render a qualified domestic relations order.

History of Fam. Code §9.104: Acts 1997, 75th Leg., ch. 7, §1, eff. Apr. 17, 1997. Source: Former Fam. Code §3.711(c).

## FAM §9.1045. AMENDMENT OF QUALIFIED DOMESTIC RELATIONS ORDER

(a) A court that renders a qualified domestic relations order retains continuing, exclusive jurisdiction to amend the order to correct the order or clarify the terms of the order to effectuate the division of property ordered by the court.

(b) An amended domestic relations order under this section must be submitted to the plan administrator or other person acting in an equivalent capacity to determine whether the amended order satisfies the requirements of a qualified domestic relations order. Section 9.104 applies to a domestic relations order amended under this section.

History of Fam. Code §9.1045: Acts 2005, 79th Leg., ch. 481, §1, eff. June 17, 2005.

## FAM §9.105. LIBERAL CONSTRUCTION

The court shall liberally construe this subchapter to effect payment of retirement benefits that were divided by a previous decree that failed to contain a qualified domestic relations order or similar order or that contained an order that failed to meet the requirements of a qualified domestic relations order or similar order.

History of Fam. Code §9.105: Acts 1997, 75th Leg., ch. 7, §1, eff. Apr. 17, 1997. Source: Former Fam. Code §3.711(e).

### ANNOTATIONS

*Arena v. Arena*, 822 S.W.2d 645, 649 (Tex.App.—Fort Worth 1991, no writ). "The domestic relations order issued by the trial court in this case recognized [W's] right to receive the vested policy benefits. The Decree of Divorce specifically identifies the name of the participant, [H], and the beneficiary, [W]; in addition, it provides the name and address of [W's] attorney. The decree specifically identifies five separate benefit plans under which [W] will be the beneficiary. The domestic relations order also states the amount of each plan and that [W] will be entitled to the entire vested portion of each. Because the Decree of Divorce includes all of the information required by [ERISA] and does not involve any of the prohibitions, the decree is deemed a QDRO."

## FAM §9.106. ATTORNEY'S FEES

In a proceeding under this subchapter, the court may award reasonable attorney's fees incurred by a party to a divorce or annulment against the other party to the divorce or annulment. The court may order the attorney's fees to be paid directly to the attorney, who may enforce the order for fees in the attorney's own name by any means available for the enforcement of a judgment for debt.

History of Fam. Code §9.106: Acts 2009, 81st Leg., ch. 768, §9, eff. Sept. 1, 2009.

*Sections 9.107-9.200 reserved for expansion*

### SUBCHAPTER C. POST-DECREE DIVISION OF PROPERTY

## FAM §9.201. PROCEDURE FOR DIVISION OF CERTAIN PROPERTY NOT DIVIDED ON DIVORCE OR ANNULMENT

(a) Either former spouse may file a suit as provided by this subchapter to divide property not divided or awarded to a spouse in a final decree of divorce or annulment.

(b) Except as otherwise provided by this subchapter, the suit is governed by the Texas Rules of Civil Procedure applicable to the filing of an original lawsuit.

History of Fam. Code §9.201: Acts 1997, 75th Leg., ch. 7, §1, eff. Apr. 17, 1997. Source: Former Fam. Code §3.90(a), (b).

# APPENDIX NO. 7



THE HISTORIC MILAM BUILDING
115 East Travis Street, Suite 333
San Antonio, Texas 78205
PHONE: 210-226-4500
FAX: 210-226-4502



History of Fam. Code §9.102: Acts 1997, 75th Leg., ch. 7, §1, eff. Apr. 17, 1997. Source: Former Fam. Code §3.711(d).

## FAM §9.103. PRIOR FAILURE TO RENDER QUALIFIED DOMESTIC RELATIONS ORDER

A party may petition a court to render a qualified domestic relations order or similar order if the court that rendered a final decree of divorce or annulment or another final order dividing property under this chapter did not provide a qualified domestic relations order or similar order permitting payment of benefits to an alternate payee or other lawful payee.

History of Fam. Code §9.103: Acts 1997, 75th Leg., ch. 7, §1, eff. Apr. 17, 1997. Source: Former Fam. Code §3.711(a).

## FAM §9.104. DEFECTIVE PRIOR DOMESTIC RELATIONS ORDER

If a plan administrator or other person acting in an equivalent capacity determines that a domestic relations order does not satisfy the requirements of a qualified domestic relations order or similar order, the court retains continuing, exclusive jurisdiction over the parties and their property to the extent necessary to render a qualified domestic relations order.

History of Fam. Code §9.104: Acts 1997, 75th Leg., ch. 7, §1, eff. Apr. 17, 1997. Source: Former Fam. Code §3.711(c).

## FAM §9.1045. AMENDMENT OF QUALIFIED DOMESTIC RELATIONS ORDER

(a) A court that renders a qualified domestic relations order retains continuing, exclusive jurisdiction to amend the order to correct the order or clarify the terms of the order to effectuate the division of property ordered by the court.

(b) An amended domestic relations order under this section must be submitted to the plan administrator or other person acting in an equivalent capacity to determine whether the amended order satisfies the requirements of a qualified domestic relations order. Section 9.104 applies to a domestic relations order amended under this section.

History of Fam. Code §9.1045: Acts 2005, 79th Leg., ch. 481, §1, eff. June 17, 2005.

## FAM §9.105. LIBERAL CONSTRUCTION

The court shall liberally construe this subchapter to effect payment of retirement benefits that were divided by a previous decree that failed to contain a qualified domestic relations order or similar order or that contained an order that failed to meet the requirements of a qualified domestic relations order or similar order.

History of Fam. Code §9.105: Acts 1997, 75th Leg., ch. 7, §1, eff. Apr. 17, 1997. Source: Former Fam. Code §3.711(e).

#### ANNOTATIONS

*Arena v. Arena*, 822 S.W.2d 645, 649 (Tex.App.— Fort Worth 1991, no writ). "The domestic relations order issued by the trial court in this case recognized [W's] right to receive the vested policy benefits. The Decree of Divorce specifically identifies the name of the participant, [H], and the beneficiary, [W]; in addition, it provides the name and address of [W's] attorney. The decree specifically identifies five separate benefit plans under which [W] will be the beneficiary. The domestic relations order also states the amount of each plan and that [W] will be entitled to the entire vested portion of each. Because the Decree of Divorce includes all of the information required by [ERISA] and does not involve any of the prohibitions, the decree is deemed a QDRO."

## FAM §9.106. ATTORNEY'S FEES

In a proceeding under this subchapter, the court may award reasonable attorney's fees incurred by a party to a divorce or annulment against the other party to the divorce or annulment. The court may order the attorney's fees to be paid directly to the attorney, who may enforce the order for fees in the attorney's own name by any means available for the enforcement of a judgment for debt.

History of Fam. Code §9.106: Acts 2009, 81st Leg., ch. 768, §9, eff. Sept. 1, 2009.

*Sections 9.107-9.200 reserved for expansion*

### SUBCHAPTER C. POST-DECREE DIVISION OF PROPERTY

## FAM §9.201. PROCEDURE FOR DIVISION OF CERTAIN PROPERTY NOT DIVIDED ON DIVORCE OR ANNULMENT

(a) Either former spouse may file a suit as provided by this subchapter to divide property not divided or awarded to a spouse in a final decree of divorce or annulment.

(b) Except as otherwise provided by this subchapter, the suit is governed by the Texas Rules of Civil Procedure applicable to the filing of an original lawsuit.

History of Fam. Code §9.201: Acts 1997, 75th Leg., ch. 7, §1, eff. Apr. 17, 1997. Source: Former Fam. Code §3.90(a), (b).

# APPENDIX NO. 8



THE HISTORIC MILAM BUILDING
115 East Travis Street, Suite 333
San Antonio, Texas 78205
PHONE: 210-226-4500
FAX: 210-226-4502



Subsec. (f). Pub. L. 106–398, §1 [[div. A], title VI, §651(2)], added subsec. (f).

1996—Subsec. (c)(1). Pub. L. 104–106, §1501(c)(15)(A), substituted "section 12731" for "section 1331".

Subsec. (d)(1). Pub. L. 104–106 substituted in heading "CHAPTER 1223" for "CHAPTER 67" and in text "section 12731" for "section 1331".

1994—Subsec. (c)(2)(B). Pub. L. 103–337, §1662(j)(5)(A), which directed substitution of "chapter 1223" for "chapter 67", could not be executed because the words "chapter 67" did not appear subsequent to amendment by Pub. L. 101–189, §651(a)(2), (4). See 1989 Amendment note below.

Subsec. (f)(2). Pub. L. 103–337, §1662(j)(5)(B), which directed amendment of subsec. (f)(2) by substituting "Chapter 1223" for "Chapter 67" in heading and "section 12731" for "section 1331" in text, could not be executed because of previous repeal of subsec. (f) by Pub. L. 101–189, §651(a)(2). See 1989 Amendment note below.

1989—Subsec. (b). Pub. L. 101–189, §651(a)(1), (b)(2), substituted "person" for "member", "person's" for "member's", and "subsection (c) or (d)" for "subsection (c)".

Subsec. (c). Pub. L. 101–189, §651(a)(2), (4), added subsec. (c) and struck out former subsec. (c) which related to computation of high-three average.

Subsec. (d). Pub. L. 101–189, §651(a)(4), added subsec. (d). Former subsec. (d) redesignated (e).

Subsec. (e). Pub. L. 101–189, §651(a)(2), (3), redesignated subsec. (d) as (e) and struck out former subsec. (e) which related to special rules for short-term disability retirees.

Subsecs. (f), (g). Pub. L. 101–189, §651(a)(2), struck out subsec. (f) which related to special rule for members retiring with non-regular service, and subsec. (g) which defined the term "years of creditable service".

#### EFFECTIVE DATE OF 2004 AMENDMENT

Pub. L. 108–375, div. A, title VI, §641(b), Oct. 28, 2004, 118 Stat. 1957, provided that: "Paragraph (3) of section 1407(c) of title 10, United States Code, as added by subsection (a), shall take effect—

"(1) for purposes of determining an annuity under subchapter II or III of chapter 73 of that title, with respect to deaths on active duty on or after September 10, 2001; and

"(2) for purposes of determining the amount of retired pay of a member of a reserve component entitled to retired pay under section 1201 or 1202 of such title, with respect to such entitlement that becomes effective on or after the date of the enactment of this Act [Oct. 28, 2004]."

#### EFFECTIVE DATE OF 1996 AMENDMENT

Section 1501(c) of Pub. L. 104–106 provided that the amendment made by that section is effective as of Dec. 1, 1994, and as if included as an amendment made by the Reserve Officer Personnel Management Act, title XVI of Pub. L. 103–337, as originally enacted.

#### EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–337 effective Dec. 1, 1994, except as otherwise provided, see section 1691 of Pub. L. 103–337, set out as an Effective Date note under section 10001 of this title.

### § 1407a. Retired pay base: officers retired in general or flag officer grades

(a) RATES OF BASIC PAY TO BE USED IN DETERMINATION.—In a case in which the determination under section 1406 or 1407 of this title of the retired pay base applicable to the computation of the retired pay of a covered general or flag officer involves a rate of basic pay payable to that officer for any period that was subject to a reduction under section 203(a)(2) of title 37 for such period, such retired-pay-base determina-

tion shall be made using the rate of basic pay for such period provided by law, rather than such rate as so reduced.

(b) COVERED GENERAL AND FLAG OFFICERS.—In this section, the term "covered general or flag officer" means a member or former member who after September 30, 2006, is retired in a general officer grade or flag officer grade.

(Added Pub. L. 109–364, div. A, title VI, §641(a), Oct. 17, 2006, 120 Stat. 2258.)

### § 1408. Payment of retired or retainer pay in compliance with court orders

(a) DEFINITIONS.—In this section:

(1) The term "court" means—

(A) any court of competent jurisdiction of any State, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Virgin Islands, the Northern Mariana Islands, and the Trust Territory of the Pacific Islands;

(B) any court of the United States (as defined in section 451 of title 28) having competent jurisdiction;

(C) any court of competent jurisdiction of a foreign country with which the United States has an agreement requiring the United States to honor any court order of such country; and

(D) any administrative or judicial tribunal of a State competent to enter orders for support or maintenance (including a State agency administering a program under a State plan approved under part D of title IV of the Social Security Act), and, for purposes of this subparagraph, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa.

(2) The term "court order" means a final decree of divorce, dissolution, annulment, or legal separation issued by a court, or a court ordered, ratified, or approved property settlement incident to such a decree (including a final decree modifying the terms of a previously issued decree of divorce, dissolution, annulment, or legal separation, or a court ordered, ratified, or approved property settlement incident to such previously issued decree), or a support order, as defined in section 453(p) of the Social Security Act (42 U.S.C. 653(p)), which—

(A) is issued in accordance with the laws of the jurisdiction of that court;

(B) provides for—

(i) payment of child support (as defined in section 459(i)(2) of the Social Security Act (42 U.S.C. 659(i)(2)));

(ii) payment of alimony (as defined in section 459(i)(3) of the Social Security Act (42 U.S.C. 659(i)(3))); or

(iii) division of property (including a division of community property); and

(C) in the case of a division of property, specifically provides for the payment of an amount, expressed in dollars or as a percentage of disposable retired pay, from the disposable retired pay of a member to the spouse or former spouse of that member.

(3) The term "final decree" means a decree from which no appeal may be taken or from which no appeal has been taken within the time allowed for taking such appeals under the laws applicable to such appeals, or a decree from which timely appeal has been taken and such appeal has been finally decided under the laws applicable to such appeals.

(4) The term "disposable retired pay" means the total monthly retired pay to which a member is entitled less amounts which—

(A) are owed by that member to the United States for previous overpayments of retired pay and for recoupments required by law resulting from entitlement to retired pay;

(B) are deducted from the retired pay of such member as a result of forfeitures of retired pay ordered by a court-martial or as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38;

(C) in the case of a member entitled to retired pay under chapter 61 of this title, are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's disability on the date when the member was retired (or the date on which the member's name was placed on the temporary disability retired list); or

(D) are deducted because of an election under chapter 73 of this title to provide an annuity to a spouse or former spouse to whom payment of a portion of such member's retired pay is being made pursuant to a court order under this section.

(5) The term "member" includes a former member entitled to retired pay under section 12731 of this title.

(6) The term "spouse or former spouse" means the husband or wife, or former husband or wife, respectively, of a member who, on or before the date of a court order, was married to that member.

(7) The term "retired pay" includes retainer pay.

(b) EFFECTIVE SERVICE OF PROCESS.—For the purposes of this section—

(1) service of a court order is effective if—

(A) an appropriate agent of the Secretary concerned designated for receipt of service of court orders under regulations prescribed pursuant to subsection (i) or, if no agent has been so designated, the Secretary concerned, is personally served or is served by facsimile or electronic transmission or by mail;

(B) the court order is regular on its face;

(C) the court order or other documents served with the court order identify the member concerned and include, if possible, the social security number of such member; and

(D) the court order or other documents served with the court order certify that the rights of the member under the Servicemembers Civil Relief Act (50 U.S.C. App. 501 et seq.) were observed; and

(2) a court order is regular on its face if the order—

(A) is issued by a court of competent jurisdiction;

(B) is legal in form; and

(C) includes nothing on its face that provides reasonable notice that it is issued without authority of law.

(c) AUTHORITY FOR COURT TO TREAT RETIRED PAY AS PROPERTY OF THE MEMBER AND SPOUSE.—

(1) Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court. A court may not treat retired pay as property in any proceeding to divide or partition any amount of retired pay of a member as the property of the member and the member's spouse or former spouse if a final decree of divorce, dissolution, annulment, or legal separation (including a court ordered, ratified, or approved property settlement incident to such decree) affecting the member and the member's spouse or former spouse (A) was issued before June 25, 1981, and (B) did not treat (or reserve jurisdiction to treat) any amount of retired pay of the member as property of the member and the member's spouse or former spouse.

(2) Notwithstanding any other provision of law, this section does not create any right, title, or interest which can be sold, assigned, transferred, or otherwise disposed of (including by inheritance) by a spouse or former spouse. Payments by the Secretary concerned under subsection (d) to a spouse or former spouse with respect to a division of retired pay as the property of a member and the member's spouse under this subsection may not be treated as amounts received as retired pay for service in the uniformed services.

(3) This section does not authorize any court to order a member to apply for retirement or retire at a particular time in order to effectuate any payment under this section.

(4) A court may not treat the disposable retired pay of a member in the manner described in paragraph (1) unless the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court.

(d) PAYMENTS BY SECRETARY CONCERNED TO (OR FOR BENEFIT OF) SPOUSE OR FORMER SPOUSE.—(1) After effective service on the Secretary concerned of a court order providing for the payment of child support or alimony or, with respect to a division of property, specifically providing for the payment of an amount of the disposable retired pay from a member to the spouse or a former spouse of the member, the Secretary shall make payments (subject to the limitations of this section) from the disposable retired pay of the member to the spouse or former spouse (or for the benefit of such spouse or former spouse to a State disbursement unit established pursuant to section 454B of the Social Security Act or other public payee designated by a State, in accordance with part D of title IV of the Social Security Act, as directed by court order, or as otherwise directed in accordance with such part D) in an amount sufficient to satisfy the

amount of child support and alimony set forth in the court order and, with respect to a division of property, in the amount of disposable retired pay specifically provided for in the court order. In the case of a spouse or former spouse who, pursuant to section 408(a)(3) of the Social Security Act (42 U.S.C. 608(a)(4)),[1] assigns to a State the rights of the spouse or former spouse to receive support, the Secretary concerned may make the child support payments referred to in the preceding sentence to that State in amounts consistent with that assignment of rights. In the case of a member entitled to receive retired pay on the date of the effective service of the court order, such payments shall begin not later than 90 days after the date of effective service. In the case of a member not entitled to receive retired pay on the date of the effective service of the court order, such payments shall begin not later than 90 days after the date on which the member first becomes entitled to receive retired pay.

(2) If the spouse or former spouse to whom payments are to be made under this section was not married to the member for a period of 10 years or more during which the member performed at least 10 years of service creditable in determining the member's eligibility for retired pay, payments may not be made under this section to the extent that they include an amount resulting from the treatment by the court under subsection (c) of disposable retired pay of the member as property of the member or property of the member and his spouse.

(3) Payments under this section shall not be made more frequently than once each month, and the Secretary concerned shall not be required to vary normal pay and disbursement cycles for retired pay in order to comply with a court order.

(4) Payments from the disposable retired pay of a member pursuant to this section shall terminate in accordance with the terms of the applicable court order, but not later than the date of the death of the member or the date of the death of the spouse or former spouse to whom payments are being made, whichever occurs first.

(5) If a court order described in paragraph (1) provides for a division of property (including a division of community property) in addition to an amount of child support or alimony or the payment of an amount of disposable retired pay as the result of the court's treatment of such pay under subsection (c) as property of the member and his spouse, the Secretary concerned shall pay (subject to the limitations of this section) from the disposable retired pay of the member to the spouse or former spouse of the member, any part of the amount payable to the spouse or former spouse under the division of property upon effective service of a final court order of garnishment of such amount from such retired pay.

(6) In the case of a court order for which effective service is made on the Secretary concerned on or after August 22, 1996, and which provides for payments from the disposable retired pay of a member to satisfy the amount of child support set forth in the order, the authority provided in paragraph (1) to make payments from the disposable retired pay of a member to satisfy the amount of child support set forth in a court order shall apply to payment of any amount of child support arrearages set forth in that order as well as to amounts of child support that currently become due.

(7)(A) The Secretary concerned may not accept service of a court order that is an out-of-State modification, or comply with the provisions of such a court order, unless the court issuing that order has jurisdiction in the manner specified in subsection (c)(4) over both the member and the spouse or former spouse involved.

(B) A court order shall be considered to be an out-of-State modification for purposes of this paragraph if the order—

(i) modifies a previous court order under this section upon which payments under this subsection are based; and

(ii) is issued by a court of a State other than the State of the court that issued the previous court order.

(e) LIMITATIONS.—(1) The total amount of the disposable retired pay of a member payable under all court orders pursuant to subsection (c) may not exceed 50 percent of such disposable retired pay.

(2) In the event of effective service of more than one court order which provide for payment to a spouse and one or more former spouses or to more than one former spouse, the disposable retired pay of the member shall be used to satisfy (subject to the limitations of paragraph (1)) such court orders on a first-come, first-served basis. Such court orders shall be satisfied (subject to the limitations of paragraph (1)) out of that amount of disposable retired pay which remains after the satisfaction of all court orders which have been previously served.

(3)(A) In the event of effective service of conflicting court orders under this section which assert to direct that different amounts be paid during a month to the same spouse or former spouse of the same member, the Secretary concerned shall—

(i) pay to that spouse from the member's disposable retired pay the least amount directed to be paid during that month by any such conflicting court order, but not more than the amount of disposable retired pay which remains available for payment of such court orders based on when such court orders were effectively served and the limitations of paragraph (1) and subparagraph (B) of paragraph (4);

(ii) retain an amount of disposable retired pay that is equal to the lesser of—

(I) the difference between the largest amount required by any conflicting court order to be paid to the spouse or former spouse and the amount payable to the spouse or former spouse under clause (i); and

(II) the amount of disposable retired pay which remains available for payment of any conflicting court order based on when such court order was effectively served and the limitations of paragraph (1) and subparagraph (B) of paragraph (4); and

(iii) pay to that member the amount which is equal to the amount of that member's dis-

[1] See References in Text note below.

posable retired pay (less any amount paid during such month pursuant to legal process served under section 459 of the Social Security Act (42 U.S.C. 659) and any amount paid during such month pursuant to court orders effectively served under this section, other than such conflicting court orders) minus—

(I) the amount of disposable retired pay paid under clause (i); and

(II) the amount of disposable retired pay retained under clause (ii).

(B) The Secretary concerned shall hold the amount retained under clause (ii) of subparagraph (A) until such time as that Secretary is provided with a court order which has been certified by the member and the spouse or former spouse to be valid and applicable to the retained amount. Upon being provided with such an order, the Secretary shall pay the retained amount in accordance with the order.

(4)(A) In the event of effective service of a court order under this section and the service of legal process pursuant to section 459 of the Social Security Act (42 U.S.C. 659), both of which provide for payments during a month from the same member, satisfaction of such court orders and legal process from the retired pay of the member shall be on a first-come, first-served basis. Such court orders and legal process shall be satisfied out of moneys which are subject to such orders and legal process and which remain available in accordance with the limitations of paragraph (1) and subparagraph (B) of this paragraph during such month after the satisfaction of all court orders or legal process which have been previously served.

(B) Notwithstanding any other provision of law, the total amount of the disposable retired pay of a member payable by the Secretary concerned under all court orders pursuant to this section and all legal processes pursuant to section 459 of the Social Security Act (42 U.S.C. 659) with respect to a member may not exceed 65 percent of the amount of the retired pay payable to such member that is considered under section 462 of the Social Security Act (42 U.S.C. 662) to be remuneration for employment that is payable by the United States.

(5) A court order which itself or because of previously served court orders provides for the payment of an amount which exceeds the amount of disposable retired pay available for payment because of the limit set forth in paragraph (1), or which, because of previously served court orders or legal process previously served under section 459 of the Social Security Act (42 U.S.C. 659), provides for payment of an amount that exceeds the maximum amount permitted under paragraph (1) or subparagraph (B) of paragraph (4), shall not be considered to be irregular on its face solely for that reason. However, such order shall be considered to be fully satisfied for purposes of this section by the payment to the spouse or former spouse of the maximum amount of disposable retired pay permitted under paragraph (1) and subparagraph (B) of paragraph (4).

(6) Nothing in this section shall be construed to relieve a member of liability for the payment of alimony, child support, or other payments required by a court order on the grounds that pay-

ments made out of disposable retired pay under this section have been made in the maximum amount permitted under paragraph (1) or subparagraph (B) of paragraph (4). Any such unsatisfied obligation of a member may be enforced by any means available under law other than the means provided under this section in any case in which the maximum amount permitted under paragraph (1) has been paid and under section 459 of the Social Security Act (42 U.S.C. 659) in any case in which the maximum amount permitted under subparagraph (B) of paragraph (4) has been paid.

(f) IMMUNITY OF OFFICERS AND EMPLOYEES OF UNITED STATES.—(1) The United States and any officer or employee of the United States shall not be liable with respect to any payment made from retired pay to any member, spouse, or former spouse pursuant to a court order that is regular on its face if such payment is made in accordance with this section and the regulations prescribed pursuant to subsection (i).

(2) An officer or employee of the United States who, under regulations prescribed pursuant to subsection (i), has the duty to respond to interrogatories shall not be subject under any law to any disciplinary action or civil or criminal liability or penalty for, or because of, any disclosure of information made by him in carrying out any of his duties which directly or indirectly pertain to answering such interrogatories.

(g) NOTICE TO MEMBER OF SERVICE OF COURT ORDER ON SECRETARY CONCERNED.—A person receiving effective service of a court order under this section shall, as soon as possible, but not later than 30 days after the date on which effective service is made, send a written notice of such court order (together with a copy of such order) to the member affected by the court order at his last known address.

(h) BENEFITS FOR DEPENDENTS WHO ARE VICTIMS OF ABUSE BY MEMBERS LOSING RIGHT TO RETIRED PAY.—(1)(A) If, in the case of a member or former member of the armed forces referred to in paragraph (2)(A), a court order provides (in the manner applicable to a division of property) for the payment of an amount from the disposable retired pay of that member or former member (as certified under paragraph (4)) to an eligible spouse or former spouse of that member or former member, the Secretary concerned, beginning upon effective service of such court order, shall pay that amount in accordance with this subsection to such spouse or former spouse.

(B) If, in the case of a member or former member of the armed forces referred to in paragraph (2)(A), a court order provides for the payment as child support of an amount from the disposable retired pay of that member or former member (as certified under paragraph (4)) to an eligible dependent child of the member or former member, the Secretary concerned, beginning upon effective service of such court order, shall pay that amount in accordance with this subsection to such dependent child.

(2) A spouse or former spouse, or a dependent child, of a member or former member of the armed forces is eligible to receive payment under this subsection if—

(A) the member or former member, while a member of the armed forces and after becom-

ing eligible to be retired from the armed forces on the basis of years of service, has eligibility to receive retired pay terminated as a result of misconduct while a member involving abuse of a spouse or dependent child (as defined in regulations prescribed by the Secretary of Defense or, for the Coast Guard when it is not operating as a service in the Navy, by the Secretary of Homeland Security);

(B) in the case of eligibility of a spouse or former spouse under paragraph (1)(A), the spouse or former spouse—

(i) was the victim of the abuse and was married to the member or former member at the time of that abuse; or

(ii) is a natural or adopted parent of a dependent child of the member or former member who was the victim of the abuse; and

(C) in the case of eligibility of a dependent child under paragraph (1)(B), the other parent of the child died as a result of the misconduct that resulted in the termination of retired pay.

(3) The amount certified by the Secretary concerned under paragraph (4) with respect to a member or former member of the armed forces referred to in paragraph (2)(A) shall be deemed to be the disposable retired pay of that member or former member for the purposes of this subsection.

(4) Upon the request of a court or an eligible spouse or former spouse, or an eligible dependent child, of a member or former member of the armed forces referred to in paragraph (2)(A) in connection with a civil action for the issuance of a court order in the case of that member or former member, the Secretary concerned shall determine and certify the amount of the monthly retired pay that the member or former member would have been entitled to receive as of the date of the certification—

(A) if the member or former member's eligibility for retired pay had not been terminated as described in paragraph (2)(A); and

(B) if, in the case of a member or former member not in receipt of retired pay immediately before that termination of eligibility for retired pay, the member or former member had retired on the effective date of that termination of eligibility.

(5) A court order under this subsection may provide that whenever retired pay is increased under section 1401a of this title (or any other provision of law), the amount payable under the court order to the spouse or former spouse, or the dependent child, of a member or former member described in paragraph (2)(A) shall be increased at the same time by the percent by which the retired pay of the member or former member would have been increased if the member or former member were receiving retired pay.

(6) Notwithstanding any other provision of law, a member or former member of the armed forces referred to in paragraph (2)(A) shall have no ownership interest in, or claim against, any amount payable under this section to a spouse or former spouse, or to a dependent child, of the member or former member.

(7)(A) If a former spouse receiving payments under this subsection with respect to a member

or former member referred to in paragraph (2)(A) marries again after such payments begin, the eligibility of the former spouse to receive further payments under this subsection shall terminate on the date of such marriage.

(B) A person's eligibility to receive payments under this subsection that is terminated under subparagraph (A) by reason of remarriage shall be resumed in the event of the termination of that marriage by the death of that person's spouse or by annulment or divorce. The resumption of payments shall begin as of the first day of the month in which that marriage is so terminated. The monthly amount of the payments shall be the amount that would have been paid if the continuity of the payments had not been interrupted by the marriage.

(8) Payments in accordance with this subsection shall be made out of funds in the Department of Defense Military Retirement Fund established by section 1461 of this title or, in the case of the Coast Guard, out of funds appropriated to the Department of Homeland Security for payment of retired pay for the Coast Guard.

(9)(A) A spouse or former spouse of a member or former member of the armed forces referred to in paragraph (2)(A), while receiving payments in accordance with this subsection, shall be entitled to receive medical and dental care, to use commissary and exchange stores, and to receive any other benefit that a spouse or a former spouse of a retired member of the armed forces is entitled to receive on the basis of being a spouse or former spouse, as the case may be, of a retired member of the armed forces in the same manner as if the member or former member referred to in paragraph (2)(A) was entitled to retired pay.

(B) A dependent child of a member or former member referred to in paragraph (2)(A) who was a member of the household of the member or former member at the time of the misconduct described in paragraph (2)(A) shall be entitled to receive medical and dental care, to use commissary and exchange stores, and to have other benefits provided to dependents of retired members of the armed forces in the same manner as if the member or former member referred to in paragraph (2)(A) was entitled to retired pay.

(C) If a spouse or former spouse or a dependent child eligible or entitled to receive a particular benefit under this paragraph is eligible or entitled to receive that benefit under another provision of law, the eligibility or entitlement of that spouse or former spouse or dependent child to such benefit shall be determined under such other provision of law instead of this paragraph.

(10)(A) For purposes of this subsection, in the case of a member of the armed forces who has been sentenced by a court-martial to receive a punishment that will terminate the eligibility of that member to receive retired pay if executed, the eligibility of that member to receive retired pay may, as determined by the Secretary concerned, be considered terminated effective upon the approval of that sentence by the person acting under section 860(c) of this title (article 60(c) of the Uniform Code of Military Justice).

(B) If each form of the punishment that would result in the termination of eligibility to re-

ceive retired pay is later remitted, set aside, or mitigated to a punishment that does not result in the termination of that eligibility, a payment of benefits to the eligible recipient under this subsection that is based on the punishment so vacated, set aside, or mitigated shall cease. The cessation of payments shall be effective as of the first day of the first month following the month in which the Secretary concerned notifies the recipient of such benefits in writing that payment of the benefits will cease. The recipient may not be required to repay the benefits received before that effective date (except to the extent necessary to recoup any amount that was erroneous when paid).

(11) In this subsection, the term "dependent child", with respect to a member or former member of the armed forces referred to in paragraph (2)(A), means an unmarried legitimate child, including an adopted child or a stepchild of the member or former member, who—

(A) is under 18 years of age;

(B) is incapable of self-support because of a mental or physical incapacity that existed before becoming 18 years of age and is dependent on the member or former member for over one-half of the child's support; or

(C) if enrolled in a full-time course of study in an institution of higher education recognized by the Secretary of Defense for the purposes of this subparagraph, is under 23 years of age and is dependent on the member or former member for over one-half of the child's support.

(i) CERTIFICATION DATE.—It is not necessary that the date of a certification of the authenticity or completeness of a copy of a court order for child support received by the Secretary concerned for the purposes of this section be recent in relation to the date of receipt by the Secretary.

(j) REGULATIONS.—The Secretaries concerned shall prescribe uniform regulations for the administration of this section.

(k) RELATIONSHIP TO OTHER LAWS.—In any case involving an order providing for payment of child support (as defined in section 459(i)(2) of the Social Security Act) by a member who has never been married to the other parent of the child, the provisions of this section shall not apply, and the case shall be subject to the provisions of section 459 of such Act.

(Added Pub. L. 97–252, title X, §1002(a), Sept. 8, 1982, 96 Stat. 730; amended Pub. L. 98–525, title VI, §643(a)–(d), Oct. 19, 1984, 98 Stat. 2547; Pub. L. 99–661, div. A, title VI, §644(a), Nov. 14, 1986, 100 Stat. 3887; Pub. L. 100–26, §§3(3), 7(h)(1), Apr. 21, 1987, 101 Stat. 273, 282; Pub. L. 101–189, div. A, title VI, §653(a)(5), title XVI, §1622(e)(6), Nov. 29, 1989, 103 Stat. 1462, 1605; Pub. L. 101–510, div. A, title V, §555(a)–(d), (f), (g), Nov. 5, 1990, 104 Stat. 1569, 1570; Pub. L. 102–190, div. A, title X, §1061(a)(7), Dec. 5, 1991, 105 Stat. 1472; Pub. L. 102–484, div. A, title VI, §653(a), Oct. 23, 1992, 106 Stat. 2426; Pub. L. 103–160, div. A, title V, §555(a), (b), title XI, §1182(a)(2), Nov. 30, 1993, 107 Stat. 1666, 1771; Pub. L. 104–106, div. A, title XV, §1501(c)(16), Feb. 10, 1996, 110 Stat. 499; Pub. L. 104–193, title III, §§362(c), 363(c)(1)–(3), Aug. 22, 1996, 110 Stat. 2246, 2249; Pub. L. 104–201, div. A,

title VI, §636, Sept. 23, 1996, 110 Stat. 2579; Pub. L. 105–85, div. A, title X, §1073(a)(24), (25), Nov. 18, 1997, 111 Stat. 1901; Pub. L. 107–107, div. A, title X, §1048(c)(9), Dec. 28, 2001, 115 Stat. 1226; Pub. L. 107–296, title XVII, §1704(b)(1), Nov. 25, 2002, 116 Stat. 2314; Pub. L. 108–189, §2(c), Dec. 19, 2003, 117 Stat. 2866; Pub. L. 109–163, div. A, title VI, §665(a), Jan. 6, 2006, 119 Stat. 3317; Pub. L. 111–84, div. A, title X, §1073(a)(15), Oct. 28, 2009, 123 Stat. 2473.)

#### REFERENCES IN TEXT

The Social Security Act, referred to in subsecs. (a)(1)(D) and (d)(1), is act Aug. 14, 1935, ch. 531, 49 Stat. 620. Part D of title IV of the Act is classified generally to part D (§651 et seq.) of subchapter IV of chapter 7 of Title 42, The Public Health and Welfare. Section 454B of the Act is classified to section 654b of Title 42. Section 408(a)(3) of the Act is classified to section 608(a)(3) of Title 42. For complete classification of this Act to the Code, see section 1305 of Title 42 and Tables.

The Servicemembers Civil Relief Act, referred to in subsec. (b)(1)(D), is act Oct. 17, 1940, ch. 888, 54 Stat. 1178, as amended, which is classified to section 501 et seq. of Title 50, Appendix, War and National Defense. For complete classification of this Act to the Code, see section 501 of Title 50, Appendix and Tables.

#### AMENDMENTS

2009—Subsec. (h)(2)(A). Pub. L. 111–84 struck out "and" at end.

2006—Subsec. (h)(1). Pub. L. 109–163, §665(a)(1), designated existing provisions as subpar. (A) and added subpar. (B).

Subsec. (h)(2). Pub. L. 109–163, §665(a)(2)(A), inserted ", or a dependent child," after "former spouse" in introductory provisions.

Subsec. (h)(2)(B). Pub. L. 109–163, §665(a)(2)(B)(i), inserted "in the case of eligibility of a spouse or former spouse under paragraph (1)(A)," after "(B)".

Subsec. (h)(2)(C). Pub. L. 109–163, §665(a)(2)(B)(ii), (C), added subpar. (C).

Subsec. (h)(4). Pub. L. 109–163, §665(a)(3), inserted ", or an eligible dependent child," after "former spouse" in introductory provisions.

Subsec. (h)(5). Pub. L. 109–163, §665(a)(4), inserted ", or the dependent child," after "former spouse".

Subsec. (h)(6). Pub. L. 109–163, §665(a)(5), inserted ", or to a dependent child," after "former spouse".

2003—Subsec. (b)(1)(D). Pub. L. 108–189 substituted "Servicemembers Civil Relief Act" for "Soldiers' and Sailors' Civil Relief Act of 1940".

2002—Subsec. (h)(2)(A), (8). Pub. L. 107–296 substituted "of Homeland Security" for "of Transportation".

2001—Subsec. (d)(6). Pub. L. 107–107 substituted "August 22, 1996," for "the date of the enactment of this paragraph".

1997—Subsec. (d). Pub. L. 105–85, §1073(a)(24)(A), substituted "to" for "To" in heading.

Subsec. (d)(6). Pub. L. 105–85, §1073(a)(24)(B), redesignated par. (6), relating to court order which is out-of-State modification, as (7).

Subsec. (d)(7). Pub. L. 105–85, §1073(a)(24)(B), redesignated par. (6), relating to court order which is out-of-State modification, as (7).

Subsec. (d)(7)(A). Pub. L. 105–85, §1073(a)(24)(C), substituted "out-of-State" for "out-of State".

Subsec. (g). Pub. L. 105–85, §1073(a)(25), in heading, substituted "to" for "To" and "on" for "On".

1996—Subsec. (a)(1)(D). Pub. L. 104–193, §362(c)(1), added subpar. (D).

Subsec. (a)(2). Pub. L. 104–193, §362(c)(2)(A), inserted "or a support order, as defined in section 453(p) of the Social Security Act (42 U.S.C. 653(p))," before "which—".

Subsec. (a)(2)(B)(i). Pub. L. 104–193, §362(c)(2)(B), substituted "(as defined in section 459(i)(2) of the Social Security Act (42 U.S.C. 659(i)(2)))" for "(as defined in

section 462(b) of the Social Security Act (42 U.S.C. 662(b)))".

Subsec. (a)(2)(B)(ii). Pub. L. 104–193, §362(c)(2)(C), substituted "(as defined in section 459(i)(3) of the Social Security Act (42 U.S.C. 659(i)(3)))" for "(as defined in section 462(c) of the Social Security Act (42 U.S.C. 662(c)))".

Subsec. (a)(5). Pub. L. 104–106 substituted "section 12731" for "section 1331".

Subsec. (b)(1)(A). Pub. L. 104–201, §636(a), substituted "facsimile or electronic transmission or by mail" for "certified or registered mail, return receipt requested".

Subsec. (d). Pub. L. 104–193, §362(c)(3)(A), inserted "(or for benefit of)" before "Spouse or" in heading.

Subsec. (d)(1). Pub. L. 104–193, §363(c)(2), inserted after first sentence "In the case of a spouse or former spouse who, pursuant to section 408(a)(3) of the Social Security Act (42 U.S.C. 608(a)(4)), assigns to a State the rights of the spouse or former spouse to receive support, the Secretary concerned may make the child support payments referred to in the preceding sentence to that State in amounts consistent with that assignment of rights."

Pub. L. 104–193, §362(c)(3)(B), in first sentence, inserted "(or for the benefit of such spouse or former spouse to a State disbursement unit established pursuant to section 454B of the Social Security Act or other public payee designated by a State, in accordance with part D of title IV of the Social Security Act, as directed by court order, or as otherwise directed in accordance with such part D)" before "in an amount sufficient".

Subsec. (d)(6). Pub. L. 104–201, §636(b), added par. (6) relating to court order which is out-of-State modification.

Pub. L. 104–193, §363(c)(3), added par. (6) relating to use of disposable retired pay of member to satisfy amount of child support set forth in court order.

Subsec. (i). Pub. L. 104–193, §363(c)(1), added subsec. (i). Former subsec. (i) redesignated (j).

Subsec. (j). Pub. L. 104–193, §363(c)(1), redesignated subsec. (j) as (k).

Pub. L. 104–193, §362(c)(4), added subsec. (j).

Subsec. (k). Pub. L. 104–193, §363(c)(1), redesignated subsec. (j) as (k).

1993—Subsecs. (b)(1)(A), (f)(1), (2). Pub. L. 103–160, §1182(a)(2)(A), substituted "subsection (i)" for "subsection (h)".

Subsec. (h)(2)(A). Pub. L. 103–160, §555(b)(1), inserted "or, for the Coast Guard when it is not operating as a service in the Navy, by the Secretary of Transportation" after "Secretary of Defense".

Subsec. (h)(4)(B). Pub. L. 103–160, §1182(a)(2)(B), inserted "of" after "of that termination".

Subsec. (h)(8). Pub. L. 103–160, §555(b)(2), inserted before period at end "or, in the case of the Coast Guard, out of funds appropriated to the Department of Transportation for payment of retired pay for the Coast Guard".

Subsec. (h)(10), (11). Pub. L. 103–160, §555(a), added par. (10) and redesignated former par. (10) as (11).

1992—Subsecs. (h), (i). Pub. L. 102–484 added subsec. (h) and redesignated former subsec. (h) as (i).

1991—Pub. L. 102–190 inserted "or retainer" after "retired" in section catchline.

1990—Pub. L. 101–510, §555(f)(2), substituted "retired pay" for "retired or retainer pay" in section catchline.

Subsec. (a). Pub. L. 101–510, §555(g)(1), inserted heading.

Subsec. (a)(2)(C). Pub. L. 101–510, §555(f)(2), substituted "retired pay" for "retired or retainer pay" wherever appearing.

Subsec. (a)(4). Pub. L. 101–510, §555(f)(2), substituted "retired pay" for "retired or retainer pay" wherever appearing in introductory provisions and in subpar. (D).

Subsec. (a)(4)(A). Pub. L. 101–510, §555(b)(1), inserted before semicolon at end "for previous overpayments of retired pay and for recoupments required by law resulting from entitlement to retired pay".

Subsec. (a)(4)(B). Pub. L. 101–510, §555(b)(2), added subpar. (B) and struck out former subpar. (B) which read

as follows: "are required by law to be and are deducted from the retired or retainer pay of such member, including fines and forfeitures ordered by courts-martial, Federal employment taxes, and amounts waived in order to receive compensation under title 5 or title 38;".

Subsec. (a)(4)(C) to (F). Pub. L. 101–510, §555(b)(3), (4), redesignated subpars. (E) and (F) as (C) and (D), respectively, and struck out former subpars. (C) and (D) which read as follows:

"(C) are properly withheld for Federal, State, or local income tax purposes, if the withholding of such amounts is authorized or required by law and to the extent such amounts withheld are not greater than would be authorized if such member claimed all dependents to which he was entitled;

"(D) are withheld under section 3402(i) of the Internal Revenue Code of 1986 if such member presents evidence of a tax obligation which supports such withholding;".

Subsec. (a)(7). Pub. L. 101–510, §555(f)(1), added par. (7).

Subsec. (b). Pub. L. 101–510, §555(g)(2), inserted heading.

Subsec. (c). Pub. L. 101–510, §555(g)(3), inserted heading.

Subsec. (c)(1). Pub. L. 101–510, §555(f)(2), substituted "retired pay" for "retired or retainer pay".

Pub. L. 101–510, §555(a), inserted at end "A court may not treat retired pay as property in any proceeding to divide or partition any amount of retired pay of a member as the property of the member and the member's spouse or former spouse if a final decree of divorce, dissolution, annulment, or legal separation (including a court ordered, ratified, or approved property settlement incident to such decree) affecting the member and the member's spouse or former spouse (A) was issued before June 25, 1981, and (B) did not treat (or reserve jurisdiction to treat) any amount of retired pay of the member as property of the member and the member's spouse or former spouse."

Subsec. (c)(2). Pub. L. 101–510, §555(c), inserted at end "Payments by the Secretary concerned under subsection (d) to a spouse or former spouse with respect to a division of retired pay as the property of a member and the member's spouse under this subsection may not be treated as amounts received as retired pay for service in the uniformed services."

Subsec. (c)(4). Pub. L. 101–510, §555(f)(2), substituted "retired pay" for "retired or retainer pay".

Subsec. (d). Pub. L. 101–510, §555(g)(4), inserted heading.

Pub. L. 101–510, §555(f)(2), substituted "retired pay" for "retired or retainer pay" wherever appearing.

Subsec. (e). Pub. L. 101–510, §555(g)(5), inserted heading.

Pub. L. 101–510, §555(f)(2), substituted "retired pay" for "retired or retainer pay" wherever appearing.

Subsec. (e)(1). Pub. L. 101–510, §555(d)(1), substituted "payable under all court orders pursuant to subsection (c)" for "payable under subsection (d)".

Subsec. (e)(4)(B). Pub. L. 101–510, §555(d)(2), substituted "the amount of the retired pay payable to such member that is considered under section 462 of the Social Security Act (42 U.S.C. 662) to be remuneration for employment that is payable by the United States" for "the disposable retired or retainer pay payable to such member".

Subsec. (f). Pub. L. 101–510, §555(g)(6), inserted heading.

Subsec. (f)(1). Pub. L. 101–510, §555(f)(2), substituted "retired pay" for "retired or retainer pay".

Subsec. (g). Pub. L. 101–510, §555(g)(7), inserted heading.

Subsec. (h). Pub. L. 101–510, §555(g)(8), inserted heading.

1989—Subsec. (a)(1), (2). Pub. L. 101–189, §1622(e)(6), substituted "The term 'court'" for "'Court'" in introductory provisions.

Subsec. (a)(3). Pub. L. 101–189, §1622(e)(6), substituted "The term 'final'" for "'Final'".

Subsec. (a)(4). Pub. L. 101–189, § 1622(e)(6), substituted "The term 'disposable'" for "'Disposable'" in introductory provisions.

Subsec. (a)(4)(D). Pub. L. 101–189, § 653(a)(5)(A), struck out "(26 U.S.C. 3402(i))" after "Code of 1986".

Subsec. (a)(5). Pub. L. 101–189, §§ 653(a)(5)(B), 1622(e)(6), substituted "The term 'member'" for "'Member'" and inserted "entitled to retired pay under section 1331 of this title" after "a former member".

Subsec. (a)(6). Pub. L. 101–189, § 1622(e)(6), substituted "The term 'spouse'" for "'Spouse'".

1987—Subsec. (a)(4). Pub. L. 100–26, § 3(3), made technical amendment to directory language of Pub. L. 99–661, § 644(a). See 1986 Amendment note below.

Subsec. (a)(4)(D). Pub. L. 100–26, § 7(h)(1), substituted "Internal Revenue Code of 1986" for "Internal Revenue Code of 1954".

1986—Subsec. (a)(4). Pub. L. 99–661, § 644(a), as amended by Pub. L. 100–26, § 3(3), struck out "(other than the retired pay of a member retired for disability under chapter 61 of this title)" before "less amounts" in introductory text, added subpar. (E), and struck out former subpar. (E) which read as follows: "are deducted as Government life insurance premiums (not including amounts deducted for supplemental coverage); or".

1984—Subsec. (a)(2)(C). Pub. L. 98–525, § 643(a), inserted "in the case of a division of property,".

Subsec. (b)(1)(C). Pub. L. 98–525, § 643(b), inserted ", if possible,".

Subsec. (d)(1). Pub. L. 98–525, § 643(c)(1), substituted "After effective service on the Secretary concerned of a court order providing for the payment of child support or alimony or, with respect to a division of property, specifically providing for the payment of an amount of the disposable retired or retainer pay from a member to the spouse or a former spouse of the member, the Secretary shall make payments (subject to the limitations of this section) from the disposable retired or retainer pay of the member to the spouse or former spouse in an amount sufficient to satisfy the amount of child support and alimony set forth in the court order and, with respect to a division of property, in the amount of disposable retired or retainer pay specifically provided for in the court order" for "After effective service on the Secretary concerned of a court order with respect to the payment of a portion of the retired or retainer pay of a member to the spouse or a former spouse of the member, the Secretary shall, subject to the limitations of this section, make payments to the spouse or former spouse in the amount of the disposable retired or retainer pay of the member specifically provided for in the court order".

Subsec. (d)(5). Pub. L. 98–525, § 643(c)(2), substituted "child support or alimony or the payment of an amount of disposable retired or retainer pay as the result of the court's treatment of such pay under subsection (c) as property of the member and his spouse, the Secretary concerned shall pay (subject to the limitations of this section) from the disposable retired or retainer pay of the member to the spouse or former spouse of the member, any part" for "disposable retired or retainer pay, the Secretary concerned shall, subject to the limitations of this section, pay to the spouse or former spouse of the member, from the disposable retired or retainer pay of the member, any part".

Subsec. (e)(2). Pub. L. 98–525, § 643(d)(1), substituted ", the disposable retired or retainer pay of the member" for "from the disposable retired or retainer pay of a member, such pay" before "shall be used to satisfy".

Subsec. (e)(3)(A). Pub. L. 98–525, § 643(d)(2)(A), struck out "from the disposable retired or retainer pay" before "of the same member".

Subsec. (e)(3)(A)(i). Pub. L. 98–525, § 643(d)(2)(B), substituted "from the member's disposable retired or retainer pay the least amount" for "the least amount of disposable retired or retainer pay" before "directed to be paid".

Subsec. (e)(2)(A)(ii)(I). Pub. L. 98–525, § 643(d)(2)(C), struck out "of retired or retainer pay" before "required by any conflicting".

Subsec. (e)(4)(A). Pub. L. 98–525, § 643(d)(3), struck out "the retired or retainer pay of" before "the same member" and substituted "satisfaction of such court orders and legal process from the retired or retainer pay of the members shall be" for "such court orders and legal process shall be satisfied".

Subsec. (e)(5). Pub. L. 98–525, § 643(d)(4), struck out "of disposable retired or retainer pay" after "payment of an amount" in two places and substituted "disposable retired or retainer pay" for "such pay" before "available for payment".

#### EFFECTIVE DATE OF 2006 AMENDMENT

Pub. L. 109–163, div. A, title VI, § 665(b), Jan. 6, 2006, 119 Stat. 3318, provided that: "A court order authorized by the amendments made by this section [amending this section] may not provide for a payment attributable to any period before the date of the enactment of this Act [Jan. 6, 2006], or the date of the court order, whichever is later."

#### EFFECTIVE DATE OF 2002 AMENDMENT

Amendment by Pub. L. 107–296 effective on the date of transfer of the Coast Guard to the Department of Homeland Security, see section 1704(g) of Pub. L. 107–296, set out as a note under section 101 of this title.

#### EFFECTIVE DATE OF 1996 AMENDMENTS

Amendment by section 362(c) of Pub. L. 104–193 effective six months after Aug. 22, 1996, see section 362(d) of Pub. L. 104–193, set out as a note under section 659 of Title 42, The Public Health and Welfare.

For effective date of amendment by section 363(c)(1)–(3) of Pub. L. 104–193, see section 395(a)–(c) of Pub. L. 104–193, set out as a note under section 654 of Title 42.

Section 1501(c) of Pub. L. 104–106 provided that the amendment made by that section is effective as of Dec. 1, 1994, and as if included as an amendment made by the Reserve Officer Personnel Management Act, title XVI of Pub. L. 103–337, as originally enacted.

#### EFFECTIVE DATE OF 1993 AMENDMENT

Section 555(c) of Pub. L. 103–160 provided that: "The amendments made by this section [amending this section] shall take effect as of October 23, 1992, and shall apply as if the provisions of the paragraph (10) of section 1408(h) of title 10, United States Code, added by such subsection were included in the amendment made by section 653(a)(2) of Public Law 102–484 (106 Stat. 2426) [amending this section]."

#### EFFECTIVE DATE OF 1990 AMENDMENT

Section 555(e) of Pub. L. 101–510, as amended by Pub. L. 102–190, div. A, title X, § 1062(a)(1), Dec. 5, 1991, 105 Stat. 1475, provided that:

"(1) The amendment made by subsection (a) [amending this section] shall apply with respect to judgments issued before, on, or after the date of the enactment of this Act [Nov. 5, 1990]. In the case of a judgment issued before the date of the enactment of this Act, such amendment shall not relieve any obligation, otherwise valid, to make a payment that is due to be made before the end of the two-year period beginning on the date of the enactment of this Act.

"(2) The amendments made by subsections (b), (c), and (d) [amending this section] apply with only respect to divorces, dissolutions of marriage, annulments, and legal separations that become effective after the end of the 90-day period beginning on the date of the enactment of this Act."

#### EFFECTIVE DATE OF 1987 AMENDMENT

Amendment by section 3(3) of Pub. L. 100–26 applicable as if included in Pub. L. 99–661 when enacted on Nov. 14, 1986, see section 12(a) of Pub. L. 100–26, set out as a note under section 776 of this title.

#### EFFECTIVE DATE OF 1986 AMENDMENT

Section 644(b) of Pub. L. 99–661 provided that: "The amendments made by subsection (a) [amending this

section] shall apply with respect to court orders issued after the date of the enactment of this Act [Nov. 14, 1986]."

EFFECTIVE DATE OF 1984 AMENDMENT

Section 643(e) of Pub. L. 98–525 provided that: "The amendments made by this section [amending this section] shall apply with respect to court orders for which effective service (as described in section 1408(b)(1) of title 10, United States Code, as amended by subsection (b) of this section) is made on or after the date of the enactment of this Act [Oct. 19, 1984]."

EFFECTIVE DATE; TRANSITION PROVISIONS

Section 1006 of title X of Pub. L. 97–252, as amended by Pub. L. 98–94, title IX, § 941(c)(4), Sept. 24, 1983, 97 Stat. 654; Pub. L. 98–525, title VI, § 645(b), Oct. 19, 1984, 98 Stat. 2549, provided that:

"(a) The amendments made by this title [amending this section and sections 1072, 1076, 1086, 1447, 1448, and 1450 of this title and enacting provisions set out as notes under this section and section 1401 of this title] shall take effect on the first day of the first month [February 1983] which begins more than one hundred and twenty days after the date of the enactment of this title [Sept. 8, 1982].

"(b) Subsection (d) of section 1408 of title 10, United States Code, as added by section 1002(a), shall apply only with respect to payments of retired or retainer pay for periods beginning on or after the effective date of this title [Feb. 1, 1983, provided in subsec. (a)], but without regard to the date of any court order. However, in the case of a court order that became final before June 26, 1981, payments under such subsection may only be made in accordance with such order as in effect on such date and without regard to any subsequent modifications.

"(c) The amendments made by section 1003 of this title [amending sections 1447, 1448, and 1450 of this title] shall apply to persons who become eligible to participate in the Survivor Benefit Plan provided for in subchapter II of chapter 73 of title 10, United States Code [section 1447 et seq. of this title], before, on, or after the effective date of such amendments.

"(d) The amendments made by section 1004 of this title [amending sections 1072, 1076, and 1086 of this title] and the provisions of section 1005 of this title [formerly set out as a note under this section] shall apply in the case of any former spouse of a member or former member of the uniformed services whether the final decree of divorce, dissolution, or annulment of the marriage of the former spouse and such member or former member is dated before, on, or after February 1, 1983.

"(e) For the purposes of this section—

"(1) the term 'court order' has the same meaning as provided in section 1408(a)(2) of title 10, United States Code (as added by section 1002 of this title);

"(2) the term 'former spouse' has the same meaning as provided in section 1408(a)(6) of such title (as added by section 1002 of this title); and

"(3) the term 'uniformed services' has the same meaning as provided in section 1072 of title 10, United States Code."

TERMINATION OF TRUST TERRITORY OF THE PACIFIC ISLANDS

For termination of Trust Territory of the Pacific Islands, see note set out preceding section 1681 of Title 48, Territories and Insular Possessions.

REVIEW OF FEDERAL FORMER SPOUSE PROTECTION LAWS

Pub. L. 105–85, div. A, title VI, § 643, Nov. 18, 1997, 111 Stat. 1799, directed the Secretary of Defense to carry out a comprehensive review of the protections, benefits, and treatment afforded under Federal law to members and former members of the uniformed services and former spouses of such persons and to employees and former employees of the Government and former

spouses of such persons and to submit to committees of Congress a report on the results of such review not later than Sept. 30, 1999.

PAYROLL DEDUCTIONS FOR ENFORCEMENT OF CHILD SUPPORT OBLIGATIONS

Section 363(c)(4) of Pub. L. 104–193 provided that: "The Secretary of Defense shall begin payroll deductions within 30 days after receiving notice of withholding, or for the first pay period that begins after such 30-day period."

ACCRUAL OF PAYMENTS; PROSPECTIVE APPLICABILITY

Section 653(c) of Pub. L. 102–484 provided that: "No payments under subsection (h) of section 1408 of title 10, United States Code (as added by subsection (a)), shall accrue for periods before the date of the enactment of this Act [Oct. 23, 1992]."

STUDY CONCERNING BENEFITS FOR DEPENDENTS WHO ARE VICTIMS OF ABUSE

Pub L. 102–484, div. A, title VI, § 653(e), Oct. 23, 1992, 106 Stat. 2429, directed the Secretary of Defense to conduct a study in order to estimate the number of persons who would become eligible to receive payments under subsec. (h) of this section during each of fiscal years 1993 through 2000 and the number of members of the Armed Forces who would be approved in each of fiscal years 1993 through 2000 for separation from the Armed Forces as a result of having abused a spouse or dependent child, and to submit to Congress a report on the results of such study not later than one year after Oct. 23, 1992.

COMMISSARY AND EXCHANGE PRIVILEGES

Section 1005 of Pub. L. 97–252, which directed Secretary of Defense to prescribe regulations to provide that an unremarried former spouse described in 10 U.S.C. 1072(2)(F)(i) is entitled to commissary and post exchange privileges to the same extent and on the same basis as the surviving spouse of a retired member of the uniformed services, was repealed and restated in section 1062 of this title by Pub. L. 100–370, § 1(c)(1), (5).

## § 1409. Retired pay multiplier

(a) RETIRED PAY MULTIPLIER FOR REGULAR-SERVICE NONDISABILITY RETIREMENT.—In computing—

(1) the retired pay of a member of a uniformed service who is entitled to that pay under any provision of law other than—

(A) chapter 61 of this title (relating to retirement or separation for physical disability); or

(B) chapter 1223 of this title (relating to retirement for non-regular service); or

(2) the retainer pay of a member who is transferred to the Fleet Reserve or the Fleet Marine Corps Reserve under section 6330 of this title,

the retired pay multiplier (or retainer pay multiplier) is the percentage determined under subsection (b).

(b) PERCENTAGE.—

(1) GENERAL RULE.—Subject to paragraphs (2) and (3), the percentage to be used under subsection (a) is the product (stated as a percentage) of—

(A) 2½, and

(B) the member's years of creditable service (as defined in subsection (c)).

(2) REDUCTION APPLICABLE TO CERTAIN NEW-RETIREMENT MEMBERS WITH LESS THAN 30 YEARS